CLOSED, DISCMAG, JURY, PATENT

## U.S. District Court [LIVE]
## Eastern District of TEXAS LIVE (Marshall)
## CIVIL DOCKET FOR CASE #: 2:06-cv-00224-TJW-CE

Rembrandt Technologies, LP v. Time Warner Cable Inc.,

Assigned to: Judge T. John Ward

Referred to: Magistrate Judge Charles Everingham

Cause: 35:271 Patent Infringement

Date Filed: 06/01/2006

Jury Demand: Plaintiff

Nature of Suit: 830 Patent

Jurisdiction: Federal Question

### Plaintiff

**Rembrandt Technologies, LP**                represented by **Samuel Franklin Baxter**
McKool Smith - Marshall
P O Box O
Marshall, TX 75671
US
903/927-2111
Fax: 903/927-2622
Email: sbaxter@mckoolsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Wesley Spangler**
Brown McCarroll - Longview
1127 Judson Rd - Ste 220
PO Box 3999
Longview, TX 75606-3999
903-236-9800
Fax: 19032368787
Email: aspangler@mailbmc.com
*ATTORNEY TO BE NOTICED*

**Bradley Wayne Caldwell**
McKool Smith
300 Crescent Court
Suite 1500
Dallas, TX 75201
214/978-4000
Fax: 2149784044
Email:
bcaldwell@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Charles Ainsworth**
Parker Bunt & Ainsworth
100 E Ferguson
Suite 1114
Tyler, TX 75702
US
903/531-3535
Fax: 903/533-9687
Email: charley@pbatyler.com
*ATTORNEY TO BE NOTICED*

**Collin Michael Maloney**
Ireland Carroll & Kelley
6101 S Broadway
Suite 500
Tyler, TX 75703
903/561-1600
Fax: 9035811071
Email: fedserv@icklaw.com
*ATTORNEY TO BE NOTICED*

**Elizabeth L DeRieux**
Brown McCarroll
1127 Judson Rd - Ste 220
PO Box 3999
Longview, TX 75606-3999
903/236-9800
Fax: 9032368787
Email: ederieux@mailbmc.com
*ATTORNEY TO BE NOTICED*

**Franklin Jones, Jr**
Jones & Jones - Marshall
201 W Houston St
PO Drawer 1249
Marshall, TX 75670
903/938-4395
Fax: 9039383360
Email: maizieh@millerfirm.com
*ATTORNEY TO BE NOTICED*

**James Patrick Kelley**
Ireland Carroll & Kelley
6101 S Broadway

Suite 500
Tyler, TX 75703
903/561-1600
Fax: 9035811071
Email: patkelley@icklaw.com
*ATTORNEY TO BE NOTICED*

**Jeffrey A Carter**
McKool Smith - Dallas
300 Crescent Court
Suite 1200
Dallas, TX 75201
214/978-4006
Fax: 12149784044
Email: jcarter@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**John Franklin Garvish, II**
McKool Smith - Austin
300 W 6th St
Ste 1700
Austin, TX 78701
512/692-8731
Fax: 512/692-8744
Email: jgarvish@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Otis W Carroll, Jr**
Ireland Carroll & Kelley
6101 S Broadway
Suite 500
Tyler, TX 75703
903/561-1600
Fax: 9035811071
Email: Fedserv@icklaw.com
*ATTORNEY TO BE NOTICED*

**Robert Christopher Bunt**
Parker, Bunt & Ainsworth, P.C.
100 East Ferguson, Ste. 1114
Tyler, TX 75702
903/531-3535
Fax: 903/533-9687
Email: rcbunt@pbatyler.com
*ATTORNEY TO BE NOTICED*

**Robert M Parker**
Parker, Bunt & Ainsworth, P.C.
100 E Ferguson
Suite 1114
Tyler, TX 75702
903/531-3535
Fax: 9035339687
Email: rmparker@pbatyler.com
*ATTORNEY TO BE NOTICED*

**Sidney Calvin Capshaw, III**
Brown McCarroll - Longview
1127 Judson Rd - Ste 220
PO Box 3999
Longview, TX 75606-3999
903/236-9800
Fax: 19032368787
Email: ccapshaw@mailbmc.com
*ATTORNEY TO BE NOTICED*

**Thomas Guy Fasone, III**
McKool Smith
300 Crescent Court
Suite 1500
Dallas, TX 75201
214/978-4000
Email: tfasone@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

**Travis Gordon White**
McKool Smith
300 W 6th St
Ste 1700
Austin, TX 78701
512/692-8701
Email: gwhite@mckoolsmith.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Time Warner Cable Inc.,**                    represented by **Michael Edwin Jones**
                                               Potter Minton PC
                                               110 N College

Suite 500
PO Box 359
Tyler, TX 75710-0359
903/597/8311
Fax: 9035930846
Email:
mikejones@potterminton.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allen Franklin Gardner**
Potter Minton PC
110 N College
Suite 500
PO Box 359
Tyler, TX 75710-0359
903/597-8311
Email:
allengardner@potterminton.com
*ATTORNEY TO BE NOTICED*

**Daniel Reisner**
Kaye Scholer - New York
425 Park Avenue
New York, NY 10022
212/836-8132
Fax: 212/836-6432
Email: dreisner@kayescholer.com
*ATTORNEY TO BE NOTICED*

**David S Benyacar**
Kaye Scholer - New York
425 Park Avenue
New York, NY 10022
212/836-8000
Fax: 212/836-8689
Email: dbenyacar@kayescholer.com

*ATTORNEY TO BE NOTICED*

**Diane DeVasto**
Potter Minton
110 N. College Street, Suite 500
Tyler, Tx 75702
US

.

.

903-597-8311
Fax: 903-593-0846
Email:
dianedevasto@potterminton.com
*ATTORNEY TO BE NOTICED*

**Michael A Rogoff**
Kaye Scholer - New York
425 Park Avenue
New York, NY 10022
212/836-8000
Fax: 212/836-8689
Email: mrogoff@kayescholer.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Time Warner Cable LLC**                    represented by **Daniel Reisner**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Time Warner Entertainment**                represented by **Daniel Reisner**
**Company, L.P.**                             (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Time Warner Entertainment-**               represented by **Daniel Reisner**
**Advance/Newhouse Partnership**             (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Time Warner New York Cable**               represented by **Daniel Reisner**
**LLC**                                       (See above for address)
                                              *ATTORNEY TO BE NOTICED*

**Movant**

**Coxcom, Inc.,**

**Movant**

**Comcast Cable Communications,
LLC**

**Movant**

**Comcast Corporation**

**Movant**

**Comcast of Plano, LP**

**Counter Claimant**

**Time Warner Cable Inc.,**                     represented by **Daniel Reisner**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*


V.

**Counter Defendant**

**Rembrandt Technologies, LP**

**Counter Claimant**

**Time Warner Cable LLC**                       represented by **Allen Franklin Gardner**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Daniel Reisner**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Time Warner Entertainment**                   represented by **Allen Franklin Gardner**
**Company, L.P.**                               (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Daniel Reisner**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Time Warner Entertainment-**                  represented by **Allen Franklin Gardner**
**Advance/Newhouse Partnership**                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Daniel Reisner**
                                                (See above for address)
                                                *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Time Warner New York Cable**                  represented by **Allen Franklin Gardner**
**LLC**                                         (See above for address)
                                                *ATTORNEY TO BE NOTICED*

                                                **Daniel Reisner**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Time Warner Cable Inc.,**                  represented by **Daniel Reisner**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Rembrandt Technologies, LP**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 06/01/2006 | 1 | COMPLAINT against Time Warner Cable Inc., (Filing fee $ 350.) , filed by Rembrandt Technologies, LP. (Attachments: # 1 Civil Cover Sheet # 2)(ehs, ) (Entered: 06/02/2006) |
| 06/01/2006 |   | DEMAND for Trial by Jury by Rembrandt Technologies, LP. (ehs, ) (Entered: 06/02/2006) |
| 06/01/2006 |   | Filing fee: $ 350.00, receipt number 6-1-5390 (ehs, ) (Entered: 06/02/2006) |
| 06/01/2006 | 2 | Form mailed to Commissioner of Patents and Trademarks. (ehs, ) (Entered: 06/02/2006) |
| 06/28/2006 |   | Summons Issued as to Time Warner Cable Inc. (ehs, ) (Entered: 07/13/2006) |
| 07/06/2006 | 3 | NOTICE of Attorney Appearance by Otis W Carroll, Jr on behalf of Rembrandt Technologies, LP (Carroll, Otis) (Entered: 07/06/2006) |
| 07/07/2006 | 4 | E-GOV SEALED SUMMONS Returned Executed Certified mail by Rembrandt Technologies, LP. Time Warner Cable Inc., served on 7/3/2006, answer due 7/24/2006. (ch, ) (Entered: 07/12/2006) |
| 07/14/2006 | 5 | NOTICE of Attorney Appearance by Sidney Calvin Capshaw, III on behalf of Rembrandt Technologies, LP (Capshaw, Sidney) (Entered: 07/14/2006) |
| 07/14/2006 | 6 | NOTICE of Attorney Appearance by Elizabeth L DeRieux on behalf of Rembrandt Technologies, LP (DeRieux, Elizabeth) (Entered: 07/14/2006) |
| 07/19/2006 | 7 | NOTICE of Designation of Attorney in Charge to Samuel Franklin Baxter on behalf of Rembrandt Technologies, LP (Baxter, Samuel) |

| | | (Entered: 07/19/2006) |
|---|---|---|
| 07/19/2006 | 8 | NOTICE of Attorney Appearance by Bradley Wayne Caldwell on behalf of Rembrandt Technologies, LP (Caldwell, Bradley) (Entered: 07/19/2006) |
| 07/19/2006 | 9 | NOTICE of Attorney Appearance by Jeffrey A Carter on behalf of Rembrandt Technologies, LP (Carter, Jeffrey) (Entered: 07/19/2006) |
| 07/19/2006 | 10 | NOTICE of Attorney Appearance by Travis Gordon White on behalf of Rembrandt Technologies, LP (White, Travis) (Entered: 07/19/2006) |
| 07/19/2006 | 11 | NOTICE of Attorney Appearance by John Franklin Garvish, II on behalf of Rembrandt Technologies, LP (Garvish, John) (Entered: 07/19/2006) |
| 07/21/2006 | 12 | NOTICE of Attorney Appearance by Collin Michael Maloney on behalf of Rembrandt Technologies, LP (Maloney, Collin) (Entered: 07/21/2006) |
| 07/25/2006 | 13 | NOTICE of Attorney Appearance by James Patrick Kelley on behalf of Rembrandt Technologies, LP (Kelley, James) (Entered: 07/25/2006) |
| 07/27/2006 | 14 | MOTION for Extension of Time to File Answer re 1 Complaint *[Unopposed]* by Time Warner Cable Inc.,. (Attachments: # 1 Text of Proposed Order)(Jones, Michael) (Entered: 07/27/2006) |
| 07/28/2006 | 15 | ORDER granting 14 Motion for Extension of Time to Answer or otherwise respond. The deadline for Warner Cable Inc to answer or otherwise respond to pla's complaint is extended and including 8/23/06 . Signed by Judge Leonard Davis on 7/28/06. (djh, ) (Entered: 07/31/2006) |
| 08/21/2006 | 16 | NOTICE of Attorney Appearance by Andrew Wesley Spangler on behalf of Rembrandt Technologies, LP (Spangler, Andrew) (Entered: 08/21/2006) |
| 08/23/2006 | 17 | ANSWER to Complaint *and*, COUNTERCLAIM against Rembrandt Technologies, LP by Time Warner Cable Inc.,.(Jones, Michael) (Entered: 08/23/2006) |
| 08/23/2006 | 18 | CORPORATE DISCLOSURE STATEMENT filed by Time Warner Cable Inc., identifying Adelphia Communications Corporation and Time Warner Inc. as Corporate Parent. (Jones, Michael) (Entered: 08/23/2006) |
| 09/01/2006 | 19 | Notice of Scheduling Conference, Proposed Discovery Order and Proposed Dates for Docket Control Order Scheduling Conference set |

| | | |
|---|---|---|
| . | | for 9/20/2006 10:30 AM in (Tyler) before Judge Leonard Davis.. Signed by Judge Leonard Davis on 9/1/06. (ch, ) (Entered: 09/01/2006) |
| 09/06/2006 | 20 | MOTION to Continue *Rule 26(f) Conference (Agreed)* by Rembrandt Technologies, LP, Time Warner Cable Inc.,. (Attachments: # 1 Text of Proposed Order)(DeVasto, Diane) (Entered: 09/06/2006) |
| 09/07/2006 | 21 | ORDER granting 20 Agreed Motion to Continue Rule 26(f) Conference by plaintiff & defendant. ORDER that the Rule 26(f) Conference is hereby rescheduled to September 14, 2006. Signed by Judge Leonard Davis on 9/7/06. (poa, ) Modified on 9/7/2006 (poa, ). (Entered: 09/07/2006) |
| 09/08/2006 | 22 | CORPORATE DISCLOSURE STATEMENT filed by Rembrandt Technologies, LP (Baxter, Samuel) (Entered: 09/08/2006) |
| 09/11/2006 | 23 | ANSWER to Counterclaim by Rembrandt Technologies, LP.(Baxter, Samuel) (Entered: 09/11/2006) |
| 09/15/2006 | 24 | ***WITHDRAWN PER ORDER # 36**** MOTION to Consolidate Cases *pursuant to FRCP 42 and CV 42*, MOTION to Continue *September 20, 2006 Scheduling Conference* by Time Warner Cable Inc.,. (Attachments: # 1 Text of Proposed Order) (DeVasto, Diane) Modified on 9/26/2006 (ch, ). (Entered: 09/15/2006) |
| 09/15/2006 | 25 | NOTICE by Rembrandt Technologies, LP *JOINT NOTICE OF CONFERENCE REGARDING PROPOSED DISCOVERY ORDER* (Attachments: # 1 Text of Proposed Order)(Baxter, Samuel) (Entered: 09/15/2006) |
| 09/15/2006 | 26 | NOTICE by Rembrandt Technologies, LP *JOINT NOTICE OF CONFERENCE REGARDING PROPOSED DOCKET CONTROL ORDER* (Attachments: # 1 Text of Proposed Order)(Baxter, Samuel) (Entered: 09/15/2006) |
| 09/18/2006 | 27 | ***ORDER VACATED PER ORDER 32***ORDER - The court orders Rembrandt Technologies to respond to Time Warner Cable Inc's Motion to Consolidate with 2:06-cv-223 24 by 5 p.m. Friday, 9/22/06. Time Warner may file a reply no later than noon on Tuesday, 9/26/06. The court will hear this motion at 9 a.m. 9/27/06. The court also Reschedules the scheduling conference for that time. Signed by Judge Leonard Davis on 9/18/06. (ch, ) Modified on 9/22/2006 (ch, ). (Entered: 09/18/2006) |
| 09/18/2006 | | Set Deadlines/Hearings: Scheduling Conference set for 9/27/2006 9:00 AM before Judge Leonard Davis. (ch, ) (Entered: 09/18/2006) |

| 09/20/2006 | 28 | ORDER - the court transfers this case to the Honorable T. John Ward. Signed by Judge Leonard Davis on 9/20/06. (ch, ) (Entered: 09/20/2006) |
|---|---|---|
| 09/20/2006 | 33 | APPLICATION to Appear Pro Hac Vice by Attorney Michael A Rogoff for Time Warner Cable Inc.. (ch, ) (Entered: 09/25/2006) |
| 09/20/2006 | | Pro Hac Vice Filing fee paid by Rogoff; Fee: $25, receipt number: 2-1-1886 (ch, ) (Entered: 09/25/2006) |
| 09/20/2006 | 34 | APPLICATION to Appear Pro Hac Vice by Attorney David S Benyacar for Time Warner Cable Inc.. (ch, ) (Entered: 09/25/2006) |
| 09/20/2006 | | Pro Hac Vice Filing fee paid by Benyacar; Fee: $25, receipt number: 2-1-1886 (ch, ) (Entered: 09/25/2006) |
| 09/21/2006 | 29 | NOTICE of Attorney Appearance by Robert Christopher Bunt on behalf of Rembrandt Technologies, LP (Bunt, Robert) (Entered: 09/21/2006) |
| 09/21/2006 | 30 | NOTICE of Attorney Appearance by Charles Ainsworth on behalf of Rembrandt Technologies, LP (Ainsworth, Charles) (Entered: 09/21/2006) |
| 09/21/2006 | 31 | Consent MOTION to Vacate 19 Order, Set Deadlines/Hearings *UNOPPOSED MOTION TO VACATE ORDER SETTING SCHEDULING CONFERENCE AND EXPEDITED BRIEFING ON MOTION TO CONSOLIDATE* by Rembrandt Technologies, LP. (Attachments: # 1 Text of Proposed Order)(Baxter, Samuel) (Entered: 09/21/2006) |
| 09/22/2006 | 32 | ORDER - the court vacates Judge Davis 9/18/06 order 27, as a result of the transfer of case to Judge Ward. The hearing set for 9/27/06 on Time Warner Cable Inc Motion to consolidate and the scheduling conference is hereby canceled. The response to Time Warner Cable, Inc. motion to consolidate 24 will be due in accordance with the local rules. Signed by Judge T. John Ward on 9/22/06. (ch, ) (Entered: 09/22/2006) |
| 09/25/2006 | 35 | MOTION to Withdraw 24 MOTION to Consolidate Cases *pursuant to FRCP 42 and CV 42* MOTION to Continue *September 20, 2006 Scheduling Conference (Unopposed)* by Time Warner Cable Inc.,. (Attachments: # 1 Text of Proposed Order)(DeVasto, Diane) (Entered: 09/25/2006) |
| 09/26/2006 | 36 | ORDER granting 35 Time Warner Cable Inc. Unopposed Motion to Withdrawn its motion to Consolidate this action with No. 2:06-cv-223 Pursuant to FRCP 42 and CV 42 and Motion to Continue the September 20, 2006 Scheduling Conference . Signed by Judge T. |

| | | |
|---|---|---|
| . | | John Ward on 9/26/06. (ch, ) (Entered: 09/26/2006) |
| 09/29/2006 | 37 | NOTICE of Attorney Appearance by Franklin Jones, Jr on behalf of Rembrandt Technologies, LP (Jones, Franklin) (Entered: 09/29/2006) |
| 02/23/2007 | 38 | MOTION to Amend/Correct 1 Complaint by Rembrandt Technologies, LP. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Text of Proposed Order)(Baxter, Samuel) (Entered: 02/23/2007) |
| 03/02/2007 | 39 | MOTION to Consolidate Cases by Time Warner Cable Inc.,. (Attachments: # 1 Text of Proposed Order)(DeVasto, Diane) (Entered: 03/02/2007) |
| 03/08/2007 | 40 | NOTICE of Hearing: Scheduling Conference set for 4/3/2007 at 2:30 PM in Ctrm 106 (Marshall) before Judge T. John Ward. (shd, ) (Entered: 03/08/2007) |
| 03/09/2007 | 41 | NOTICE by Coxcom, Inc., *of Filing Motion for Transfer and Consolidation of Rembrandt Technologies, LP Patent Litigation Pursuant to 28 U.S.C. 1407* (Attachments: # 1 MDL Motion for Transfer and Consolidation# 2 Motion Exhibit A# 3 Motion Ex. B# 4 MDL Memorandum# 5 MDL Exhibit List# 6 MDL Notice of Appearance# 7 MDL Corporate Disclosure# 8 MDL Certificate of Service)(Stockwell, Mitchell) (Entered: 03/09/2007) |
| 03/09/2007 | 42 | Additional Attachments to Main Document: 41 Notice (Other), Notice (Other).. (Attachments: # 1 MDL Ex. 1# 2 MDL Ex. 2# 3 MDL Ex. 3# 4 MDL Ex. 4# 5 MDL Ex. 5# 6 MDL Ex. 6# 7 MDL Ex. 7# 8 MDL Ex. 8# 9 MDL Ex. 9# 10 MDl Ex. 10# 11 MDL Ex. 11# 12 MDL Ex. 12# 13 MDL Ex. 13# 14 MDL Ex. 14# 15 MDL Ex. 15# 16 MDL Ex. 16# 17 MDL Ex. 17# 18 MDl Ex. 18# 19 MDL Ex. 19# 20 MDL Ex. 20# 21 MDL EX. 21# 22 MDL Ex. 22# 23 MDL Ex. 23# 24 MDL EX. 24# 25 MDl Ex. 25# 26 MDL Ex. 26# 27 MDL Ex. 27# 28 MDL Ex. 28# 29 MDL Ex. 29# 30 MDL Ex. 30# 31 MDL Ex. 31# 32 MDL Ex. 32# 33 MDL Ex. 33# 34 MDL Ex. 34# 35 MDL Ex. 35# 36 MDL Ex. 36# 37 MDL Ex. 37# 38 MDL Ex. 38# 39 MDL Ex. 38# 40 MDL Ex. 40# 41 MDL Ex. 41# 42 MDL. Ex. 42# 43 MDL Ex. 43)(Stockwell, Mitchell) (Entered: 03/09/2007) |
| 03/12/2007 | 43 | NOTICE OF NON-OPPOSITION by Time Warner Cable Inc., re 38 MOTION to Amend/Correct 1 Complaint (DeVasto, Diane) Modified on 3/12/2007 (sm, ). (Entered: 03/12/2007) |
| 03/14/2007 | 44 | ORDER granting 38 Motion for leave to Amend Original Complaint.. Signed by Judge T. John Ward on 3/14/07. (poa, ) (Entered: 03/14/2007) |

| 03/14/2007 | 45 | NOTICE of scheduling conference, proposed deadlines for docket control order and discovery order. Scheduling Conference set for 4/3/2007 02:30 PM before Judge T. John Ward in Marshall, Tx. (djh, ) (Entered: 03/14/2007) |
|---|---|---|
| 03/14/2007 | 46 | AMENDED COMPLAINT against Time Warner Cable LLC, Time Warner Entertainment Company, L.P., Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner New York Cable LLC, Time Warner Cable Inc.,, filed by Rembrandt Technologies, LP.(Baxter, Samuel) (Entered: 03/14/2007) |
| 03/19/2007 | 47 | RESPONSE in Opposition re 39 MOTION to Consolidate Cases *filed by Rembrandt Technologies, LP.* (Baxter, Samuel) (Entered: 03/19/2007) |
| 03/19/2007 | | E-GOV SEALED SUMMONS Issued as to Time Warner Cable LLC, Time Warner Entertainment Company, L.P., Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner New York Cable LLC. (ehs, ) (Entered: 03/20/2007) |
| 03/26/2007 | 48 | Consent MOTION for Leave to File Excess Pages by Time Warner Cable Inc.,. (Attachments: # 1 Text of Proposed Order # 2 Exhibit 1) (DeVasto, Diane) (Entered: 03/26/2007) |
| 03/28/2007 | 49 | ORDER granting 48 Unopposed Motion for leave to exceed page limit concerning Dft's Reply Memorandum in Support of Motion to Consolidate Cases for Pretrial Proceedings . Signed by Judge T. John Ward on 3/28/07. (ch, ) (Entered: 03/28/2007) |
| 03/28/2007 | 50 | REPLY to Response to Motion re 39 MOTION to Consolidate Cases *filed by Time Warner Cable Inc.,*. (DeVasto, Diane) (Entered: 03/28/2007) |
| 03/29/2007 | 51 | NOTICE by Time Warner Cable Inc., *of Developments in Related Cases* (Attachments: # 1 Order Staying Civil Actions)(Jones, Michael) (Entered: 03/29/2007) |
| 03/30/2007 | 52 | NOTICE by Rembrandt Technologies, LP *Joint Notice of Conference Regarding Proposed Discovery Order and Docket Control Order* (Attachments: # 1 Text of Proposed Order Discovery Order and Docket Control Order)(Carter, Jeffrey) (Entered: 03/30/2007) |
| 04/02/2007 | 53 | Consent MOTION for Extension of Time to File Answer re 46 Amended Complaint, *or Otherwise Respond* by Time Warner Cable Inc.,. (Attachments: # 1 Text of Proposed Order)(DeVasto, Diane) (Entered: 04/02/2007) |
| 04/02/2007 | 54 | ORDER REFERRING CASE to Magistrate Judge Charles |

| | | Everingham to conduct pre-trial proceedings pursuant to 28 USC 636. Signed by Judge T. John Ward on 4/2/07. (djh, ) (Entered: 04/03/2007) |
|---|---|---|
| 04/03/2007 | 55 | ORDER granting 53 Motion for Extension of Time to Answer. Deadline for Time Warner Cable Inc. is 4/9/07 . Signed by Judge T. John Ward on 4/3/07. (ch, ) (Entered: 04/03/2007) |
| 04/03/2007 | | Answer Due Deadline Updated for Time Warner Cable Inc., to 4/9/2007. (ch, ) (Entered: 04/03/2007) |
| 04/03/2007 | 56 | E-GOV SEALED SUMMONS Returned Executed by Rembrandt Technologies, LP. Time Warner Entertainment-Advance/Newhouse Partnership served by Process Server on 3/21/2007, answer due 4/10/2007. (ch, ) (Entered: 04/04/2007) |
| 04/03/2007 | 57 | E-GOV SEALED SUMMONS Returned Executed by Rembrandt Technologies, LP. Time Warner New York Cable LLC served by Process Server on 3/21/2007, answer due 4/10/2007. (ch, ) (Entered: 04/04/2007) |
| 04/03/2007 | 58 | E-GOV SEALED SUMMONS Returned Executed by Rembrandt Technologies, LP. Time Warner Entertainment Company, L.P. served by Process Server on 3/21/2007, answer due 4/10/2007. (ch, ) (Entered: 04/04/2007) |
| 04/03/2007 | 59 | E-GOV SEALED SUMMONS Returned Executed by Rembrandt Technologies, LP. Time Warner Cable Inc., served by Process Server on 3/21/2007, answer due 4/10/2007. (ch, ) (Entered: 04/04/2007) |
| 04/05/2007 | 60 | NOTICE by Rembrandt Technologies, LP *NOTICE OF FILING OPPOSITION TO COXCOM'S MOTION FOR TRANSFER AND CONSOLIDATION OF REMBRANDT TECHNOLOGIES, LP PATENT LITIGATION* (Attachments: # 1 Reasons Why Oral Argument Should be Heard in Opposition to CoxCom's Motion for Transfer and Consolidation# 2 Response to CoxCom's Motion to Transfer and Consolidation# 3 Rembrandt's Brief in Opposition to CoxCom's Motion for Transfer and Consolidation# 4 Exhibit List# 5 Exhibit 1# 6 Exhibit 2# 7 Exhibit 3# 8 Exhibit 4# 9 Exhibit 5# 10 Exhibit 6# 11 Exhibit 7# 12 Exhibit 8# 13 Exhibit 9# 14 Exhibit 10# 15 Exhibit 11# 16 Exhibit 12# 17 Exhibit 13# 18 Proof of Service) (Baxter, Samuel) (Entered: 04/05/2007) |
| 04/06/2007 | 61 | MOTION for Extension of Time to File Answer *Time Warner Cable Defendants' Unopposed Motion for Extension of Time to Answer or Otherwise Respond to Plaintiff's First Amended Complaint* by Time Warner Cable LLC, Time Warner Entertainment Company, L.P., Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner New York Cable LLC, Time Warner Cable Inc.,, Time |

| | | |
|---|---|---|
| • | | Warner Cable Inc.,. (Attachments: # 1 Text of Proposed Order) (Gardner, Allen) (Entered: 04/06/2007) |
| 04/09/2007 | 62 | ***FILED IN ERROR. WRONG DOCUMENT ATTACHED. PLEASE IGNORE*** <br><br> Consent MOTION for Extension of Time to File Response/Reply as to 39 MOTION to Consolidate Cases by Rembrandt Technologies, LP. (Attachments: # 1 Text of Proposed Order)(Baxter, Samuel) Modified on 4/9/2007 (ch, ). (Entered: 04/09/2007) |
| 04/09/2007 | 63 | Consent MOTION for Extension of Time to File Response/Reply as to 39 MOTION to Consolidate Cases by Rembrandt Technologies, LP. (Attachments: # 1 Text of Proposed Order)(Baxter, Samuel) (Entered: 04/09/2007) |
| 04/10/2007 | 64 | NOTICE of Attorney Appearance by Allen Franklin Gardner on behalf of Time Warner Cable Inc., (Gardner, Allen) (Entered: 04/10/2007) |
| 04/12/2007 | 65 | RESPONSE to 41 Notice (Other), Notice (Other) *Response to the Motion to Consolidate Cases* by Comcast Cable Communications, LLC, Comcast Corporation, Comcast of Plano, LP. (Doan, Jennifer) Amended Certificate of Service added on 4/13/2007 (mpv, ). Modified on 4/13/2007 (mpv, ). (Entered: 04/12/2007) |
| 04/12/2007 | 66 | SUR-REPLY to Reply to Response to Motion re 39 MOTION to Consolidate Cases *filed by Rembrandt Technologies, LP*. (Baxter, Samuel) (Entered: 04/12/2007) |
| 04/18/2007 | 67 | NOTICE by Coxcom, Inc.,, Time Warner Cable Inc., *Notice of Development* (Attachments: # 1 Notice of Hearing)(Gardner, Allen) (Entered: 04/18/2007) |
| 04/19/2007 | 68 | ORDER - REGARDING THE PROTECTIVE ORDER AND DOCUMENT PRODUCTION. Signed by Judge Charles Everingham on 4/19/07. (ch, ) (Entered: 04/19/2007) |
| 04/19/2007 | 69 | DOCKET CONTROL ORDER Respond to Amended Pleadings 11/30/07. Amended Pleadings due by 11/16/2007. Discovery due by 5/14/2008. Joinder of Parties due by 5/3/2007. Claims Construction Hearing set for 2/13/2008 - 2/14/08 9:00 AM before Judge T. John Ward. Motions in limine due by 7/21/2008. Proposed Pretrial Order due by 7/21/2008. Jury Selection set for 8/4/2008 9:00AM before Judge T. John Ward. Pretrial Conference set for 7/24/2008 9:30 AM before Judge T. John Ward. Privilege Logs to be exchanged by parties 6/4/07. All other deadlines are set forth herein. Signed by Judge Charles Everingham on 4/19/07. (ch, ) (Entered: 04/19/2007) |
| | | |

| 04/24/2007 | 70 | NOTICE by Rembrandt Technologies, LP *NOTICE REGARDING THE PROTECTIVE ORDER* (Attachments: # 1 Attachment A) (Baxter, Samuel) CORRECTED PROPOSED PROTECTIVE ORDER added on 4/25/2007 (mpv, ). Modified on 4/25/2007 (mpv, ). (Entered: 04/24/2007) |
| --- | --- | --- |
| 04/24/2007 | 71 | NOTICE by Rembrandt Technologies, LP *NOTICE REGARDING ELECTRONIC PRODUCTION* (Baxter, Samuel) (Entered: 04/24/2007) |
| 04/25/2007 | | NOTICE re 70 Notice (Other) CORRECTED PROPOSED PROTECTIVE ORDER NOW ATTACHED BY CLERK (mpv, ) (Entered: 04/25/2007) |
| 04/30/2007 | 72 | Minute Entry for proceedings held before Judge Charles Everingham : Scheduling Conference held on 4/30/2007. (Court Reporter Debbie Latham.)(delat, ) (Entered: 04/30/2007) |
| 05/03/2007 | 74 | NOTICE by Rembrandt Technologies, LP *PLAINTIFF REMBRANDT TECHNOLOGIES, LP'S NOTICE OF COMPLIANCE WITH PATENT RULES 3-1 AND 3-2* (Baxter, Samuel) (Entered: 05/03/2007) |
| 05/03/2007 | | TRANSCRIPT of Proceedings held on 4/3/07 before Judge Chad Everingham. Court Reporter: Transcriber/Susan Simmons. (lss) (Entered: 05/03/2007) |
| 05/03/2007 | 75 | NOTICE by Time Warner Cable LLC, Time Warner Entertainment Company, L.P., Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner New York Cable LLC, Time Warner Cable Inc., *of Initial Disclosures* (Gardner, Allen) (Entered: 05/03/2007) |
| 05/04/2007 | 76 | NOTICE of Disclosure by Rembrandt Technologies, LP (Baxter, Samuel) (Entered: 05/04/2007) |
| 05/04/2007 | 77 | PROTECTIVE ORDER. Signed by Judge Charles Everingham on 5/4/07. (ehs, ) (Entered: 05/04/2007) |
| 05/16/2007 | 78 | *TWC's* ANSWER to Amended Complaint *and*, COUNTERCLAIM against Rembrandt Technologies, LP by Time Warner Cable LLC, Time Warner Entertainment Company, L.P., Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner New York Cable LLC, Time Warner Cable Inc.,.(Gardner, Allen) (Entered: 05/16/2007) |
| 05/16/2007 | 79 | CORPORATE DISCLOSURE STATEMENT filed by Time Warner Cable LLC, Time Warner Entertainment Company, L.P., Time Warner Entertainment-Advance/Newhouse Partnership, Time |

| | | Warner New York Cable LLC, Time Warner Cable Inc., identifying Time Warner Cable Inc. and Time Warner Inc. as Corporate Parent. (Gardner, Allen) (Entered: 05/16/2007) |
|---|---|---|
| 05/18/2007 | 80 | NOTICE of Disclosure by Rembrandt Technologies, LP (Baxter, Samuel) (Entered: 05/18/2007) |
| 06/04/2007 | 81 | Joint MOTION to Amend/Correct *the Docket Control Order to Move the Date for Exchanging Privilege Logs* by Rembrandt Technologies, LP. (Attachments: # 1 Text of Proposed Order)(Carter, Jeffrey) (Entered: 06/04/2007) |
| 06/06/2007 | 82 | ORDER granting 81 Motion to Amend/Correct. Docket Control Order is amended to move date for parties to exchange privilege logs to 7/10/07. Signed by Judge Charles Everingham on 6/5/07. (ch, ) (Entered: 06/06/2007) |
| 06/08/2007 | 83 | NOTICE of Attorney Appearance by Thomas Guy Fasone, III on behalf of Rembrandt Technologies, LP (Fasone, Thomas) (Entered: 06/08/2007) |
| 06/08/2007 | 84 | ANSWER to Counterclaim by Rembrandt Technologies, LP.(Baxter, Samuel) (Entered: 06/08/2007) |
| 06/12/2007 | 85 | NOTICE of Disclosure by Rembrandt Technologies, LP (Baxter, Samuel) (Entered: 06/12/2007) |
| 06/14/2007 | 86 | NOTICE of Disclosure by Time Warner Cable LLC, Time Warner Entertainment Company, L.P., Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner New York Cable LLC, Time Warner Cable Inc., (Attachments: # 1 Exhibit A) (Gardner, Allen) (Entered: 06/14/2007) |
| 06/15/2007 | 87 | APPLICATION to Appear Pro Hac Vice by Attorney Daniel Reisner for Time Warner Entertainment-Advance/Newhouse Partnership, Time Warner New York Cable LLC, Time Warner Cable LLC, Time Warner Entertainment Company, L.P., Time Warner Cable Inc.,. (FEE PAID) 6-1-10082 (ehs, ) (Entered: 06/15/2007) |
| 06/21/2007 | 88 | NOTICE by Time Warner Cable Inc., *of Multi-District Litigation Developments Pursuant to Local Rule CV-42* (Attachments: # 1 Exhibit A)(Gardner, Allen) (Entered: 06/21/2007) |
| 06/25/2007 | 89 | Interdistrict transfer to the District of Delaware, Wilmington, DE. Pursuant to letter Elizabeth Dinan was notified. Certified copy of Docket Sheet, Complaint, Transfer Order and letter were mailed to the Federal Blding, Lockbox 18, 844 N. King Street Wilmington, DE (ch, ) Additional attachment(s) added on 6/28/2007 (ch, ). Modified on 6/28/2007 (ch, ). (Entered: 06/27/2007) |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil Action No. 2:06cv224 [LED]** |
| **v.** | § | **JURY DEMANDED** |
| | § | |
| **TIME WARNER CABLE INC.,** | § | |
| | § | |
| **Defendant.** | § | |

### JOINT NOTICE OF CONFERENCE REGARDING
### PROPOSED DOCKET CONTROL ORDER

Rembrandt Technologies, LP ("Rembrandt") and Time Warner Cable Inc. ("Time Warner") hereby file this Joint Notice of Conference Regarding Proposed Docket Control Order to inform the Court of the results of the parties' conference under Federal Rule of Civil Procedure 26(f) and P.R. § 2-1.

**Plaintiff's Submission**

Rembrandt has proposed that Rembrandt and Time Warner agree to the proposed Docket Control Order attached hereto as Exhibit A.[1]  Rembrandt opposes the motion for consolidation. Further, Rembrandt agrees to a trial in Tyler, Texas.  It is Rembrandt's understanding that Time Warner does not agree to any terms in the proposed Docket Control Order because Time Warner intends to file a motion for consolidation.

---

[1]This proposed Docket Control Order follows the Court's deadlines except where dates are marked by an asterisk.  The Court's deadlines for the *Markman* hearing, trial, and dispositive motion remain unchanged, and any other changes to any deadlines are unintended.  Rembrandt understands that a trial in Tyler, Texas could result in an earlier trial date.

**JOINT NOTICE OF CONFERENCE REGARDING**
**PROPOSED DOCKET CONTROL ORDER - PAGE 1**

Dallas 225605v1

**Defendant's Submission**

Time Warner Cable Inc. has filed a Motion to Consolidate Civil Action No. 2:06-cv-224 with Civil Action No. 2:06-cv-223 pursuant to FRCP 42 and CV 42 and included within said motion, a Motion to Continue the September 20, 2006 Scheduling Conference. In that motion, Time Warner Cable Inc. shows why this matter should be consolidated with Cause No. 2:06-cv-223 and that a scheduling conference in this matter and appropriate docket control orders and discovery orders should only occur after said consolidation and after defendants in both of those cases are involved. This motion is hereby fully incorporated and by reference into this Joint Conference Report. Due to the fact this matter should be consolidated with said other action, Time Warner Cable Inc. does not agree to the proposed schedule and other discovery matters set forth by Rembrandt Technologies, LP.

Despite this lack of agreement, Time Warner Cable Inc. has discussed at the appropriate Rule 26(f) conference the proposals with regard to schedule and discovery matters set forth in Plaintiff's recommendations. Time Warner Cable Inc. respectfully disagrees with selected matters set forth in Rembrandt Technologies, LP's proposals.

DATED: September 15, 2006

Respectfully submitted,

  /s/ Sam Baxter
Sam Baxter
State Bar No. 01938000
**McKOOL SMITH, P.C.**
505 E. Travis, Suite 105
Marshall, Texas  75670
Telephone:  (903) 927-2111
Telecopier:  (903) 927-2622
sbaxter@mckoolsmith.com

Jeffrey A. Carter
State Bar No. 03919400
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas  75201
Telephone:  (214) 978-4006
Telecopier:  (214) 978-4044
jcarter@mckoolsmith.com

Travis Gordon White
State Bar No. 21333000
**McKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas  78701
Telephone:  (512) 692-8700
Telecopier:  (512) 692-8744
gwhite@mckoolsmith.com

Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No. 00787165
**PARKER & BUNT, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Telephone:  (903) 531-3535
Telecopier:  (903) 533-9687
cbunt@cox-internet.com
rmparker@cox-internet.com

**JOINT NOTICE OF CONFERENCE REGARDING
PROPOSED DOCKET CONTROL ORDER - PAGE 3**

Otis Carroll
State Bar No. 03895700
Patrick Kelley
State Bar No. 11202500
**IRELAND, CARROLL & KELLEY, P.C.**
6101 S. Broadway, Suite 500
Tyler, Texas  75703
Telephone:  (903) 561-1600
Telecopier:  (903) 581-1071
Fedserv@icklaw.com

Calvin Capshaw
State Bar No. 03783900
Andrew W. Spangler
State Bar No. 24041960
**BROWN McCARROLL LLP**
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas  75601-5157
Telephone:  (903) 236-9800
Telecopier:  (903) 236-8787
ccapshaw@mailbmc.com
aspangler@mailbmc.com

**ATTORNEYS FOR PLAINTIFF
REMBRANDT TECHNOLOGIES, LP**


  _/s/ Michael E. Jones (w-perm CJH)_____
Michael E. Jones
State Bar No. 10929400
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, Texas 75710
Telephone:  (903) 597-8311
Telecopier:  (903) 593-0846
mikejones@potterminton.com

**ATTORNEYS FOR TIME WARNER
CABLE INC.**


**JOINT NOTICE OF CONFERENCE REGARDING
PROPOSED DOCKET CONTROL ORDER - PAGE 4**

Dallas 225605v1

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this the 15th day of September, 2006.


  /s/ Sam Baxter_____

**JOINT NOTICE OF CONFERENCE REGARDING PROPOSED DOCKET CONTROL ORDER - PAGE 5**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | Civil Action No. 2:06cv224 [LED] |
| **v.** | § | **JURY DEMANDED** |
| | § | |
| TIME WARNER CABLE INC., | § | |
| | § | |
| **Defendant.** | § | |

## DOCKET CONTROL ORDER

| **February 11, 2008**<br><br>Court designated date - not flexible without good cause - Motion Required | **9:00 a.m. JURY TRIAL as reached at the United States District Court, Visiting Judge/Magistrate Courtroom, 100 East Houston, Marshall, Texas.** |
|---|---|
| *Day of Trial* | EXHIBITS & EXHIBIT LISTS: Each party is requested to provide the Court with an original and two courtesy copies of exhibits and exhibit lists. The Court's preferred format for Exhibit Lists is available on the Court's website at www.txed.uscourts.gov under "Judges' Orders & Information."<br><br>If exhibits are voluminous, provide only specific pages that pertain to the issues on the two courtesy copies. The original exhibits that are agreed upon by the parties, should be ready to be tendered to the Clerk of the Court at the beginning of trial. Other exhibits that are admitted during trial should be tendered to the Clerk of the Court immediately after admission.<br><br>The parties are further requested to have all exhibits labeled with the following information on each label: Designation of Plaintiffs or Defendant's Exhibit Number and Case Number. For example: |

<table>
<tr><td></td><td colspan="2">
<table>
<tr><td><strong>Plaintiff's Exhibit</strong></td><td><strong>Defendant's Exhibit</strong></td></tr>
<tr><td>Exhibit No. _____<br>Case No. _____</td><td>Exhibit No. _____<br>Case No. _____</td></tr>
</table>
</td></tr>
</table>

|  |  |
|---|---|
| **February 5, 2008**<br><br>Court designated date - not flexible without good cause - Motion Required | **9:00 a.m. JURY SELECTION at the United States District Court, Visiting Judge/Magistrate Courtroom, 100 East Houston Street, Marshall, Texas.** |
| **January 24, 2008**<br><br>Court designated date - not flexible without good cause - Motion Required | **9:00 a.m. PRETRIAL CONFERENCE at the United States District Court, 211 W. Ferguson, 3rd Floor, Courtroom of Judge Leonard Davis, Tyler, Texas. (Tyler trial)** |
| **Tuesday**<br>**January 22, 2008** | Parties to file estimates of the amount of time they request at jury selection and trial for (1) voir dire, (2) opening statements, (3) direct and cross examinations, and (4) closing arguments. |
| **Friday \***<br>**January 18, 2008** | Motions in Limine due. The parties are directed to confer and advise the Court on or before 3:00 o'clock p.m. the day before the pre-trial conference which paragraphs are agreed to and those that need to be addressed at the pre-trial conference. |
| **Friday**<br>**January 18, 2008** | Pretrial Objections due. |
| **Friday \***<br>**January 18, 2008** | Objections to Rebuttal Deposition Testimony due. |
| **Monday \***<br>**January 7, 2008** | Rebuttal Designations and Objections to Deposition Testimony due. Cross examination line and page numbers to be included. In video depositions, each party is responsible for preparation of the final edited video in accordance with their parties' designations and the Court's rulings on objections. |
| **Thursday**<br>**December 20, 2007** | Pretrial Disclosures due.<br>Video and Stenographic Deposition Designation due. Each party who proposes to offer deposition testimony shall file a disclosure identifying the line and page numbers to be offered. |

**DOCKET CONTROL ORDER - PAGE 2**

Dallas 225235v1

| | |
|---|---|
| **Friday November 30, 2007** | **Joint Pretrial Order, Joint Proposed Jury Instructions with citation to authority and Form of the Verdict for jury trials due.** Proposed Findings of Fact and Conclusions of Law with citation to authority for bench trials. <br><br> Notice of Request for Daily Transcript or Real Time Reporting of Court Proceedings due. If a daily transcript or real time reporting of court proceedings is requested for trial or hearings, the party or parties making said request shall file a notice with the Court and email the Court Reporter, Shea Sloan, at shea_sloan@txed.uscourts.gov. |
| **Tuesday September 4, 2007** | **Response to Dispositive Motions (including *Daubert* motions) due.** Responses to dispositive motions filed prior to the dispositive motion deadline, including *Daubert* motions, shall be due in accordance with Local Rule CV-7(e). |
| **August 20, 2007** <br><br> Court designated date - not flexible without good cause - Motion Required | **Dispositive Motions due from all parties and any other motions that may require a hearing (including *Daubert* motions);** Motions for Summary Judgment shall comply with Local Rule CV-56 (Marshall trial). |
| **Friday August 17, 2007** | Parties to Identify Rebuttal Trial Witnesses. |
| **Monday August 6, 2007** | Parties to Identify Trial Witnesses; Amend Pleadings (after *Markman* Hearing). It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings. It is necessary to file a Motion for Leave to Amend after the deadline. However, except as provided in Patent Rule 3-6, if the amendment would effect preliminary or final infringement contentions or preliminary or final invalidity contentions, a motion must be made pursuant to Patent Rule 3-7 irrespective of whether the amendment is made prior to this deadline. |
| **Monday July 23, 2007** | **Discovery Deadline.** |
| **Monday July 9, 2007** | Defendant designates rebuttal damages expert witness. Rebuttal damages expert report due. Refer to Local Rule for required information. |
| **The later of Monday June, 25, 2007 or 14 days after the "burden of proof" expert reports are exchanged.** | Plaintiff designates damage expert. Parties designate rebuttal expert witnesses except for rebuttal damages expert (non-construction issues). Damage and rebuttal expert witness reports due except for rebuttal damages report. Refer to Local Rules for required information. |

**DOCKET CONTROL ORDER - PAGE 3**

| | |
|---|---|
| **\* The later of Monday June 11, 2007 or 30 days after the Court issues its Markman ruling.** | Parties with burden of proof designate expert witnesses except for damages (non-construction issues).  Expert witness reports due except on damages. Refer to Local Rules for required information. |
| **Monday June 11, 2007** | Comply with P.R.3-8 - Furnishing documents and privilege logs pertaining to willful infringement. |
| **April 19, 2007** | ***Markman* Hearing at 9:00 a.m. at the United States District Court, 211 West Ferguson, 3rd Floor, Courtroom of Judge Leonard Davis, Tyler, Texas.** |
| **Friday \* April 13, 2007** | Parties shall jointly submit a claim construction chart on computer disk in Word Perfect format or in such other format as the Court may direct in accordance with P.R. 4-5(d). |
| **Thursday April 5, 2007** | Parties to file a notice with the Court stating the estimated amount of time requested for the *Markman* Hearing. The Court will notify the parties if it is unable to accommodate this request.<br><br>**Comply with P.R 4-5(c)** - Reply brief and supporting evidence due re response to claim construction. The moving party is to provide the Court with 2 binders containing their reply brief and exhibits appropriately tabbed. If a technical advisor has been appointed the moving party is to provide their brief on disk or CD along with a hard copy, tabbed and bound in notebook format with exhibits to the advisor. |
| **Thursday March 29, 2007** | **Comply with P.R. 4-5(b)** - Responsive brief and supporting evidence due to party claiming patent infringement. The moving party is to provide the Court with 2 binders containing their *Markman* brief and exhibits appropriately tabbed. If a technical advisor has been appointed the moving party is to provide their *Markman* brief on disk or CD along with a hard copy, tabbed and bound in notebook format with exhibits to the advisor. |
| **Thursday March 15, 2007** | **Comply with P.R. 4-5(a)** - The party claiming patent infringement shall serve and file an opening brief and any evidence supporting its claim construction. The moving party is to provide the Court with 2 binders containing their *Markman* brief and exhibits appropriately tabbed. If a technical advisor has been appointed the moving party is to provide their *Markman* brief on disk or CD along with a hard copy, tabbed and bound in notebook format with exhibits to the advisor. |

| Thursday<br>March 8, 2007 | Deadline for parties, if they desire, to provide Court with tutorials concerning technology involved in patent. If a technical advisor has been appointed, each party that provides a tutorial shall provide a copy to the advisor. |
|---|---|
| Thursday<br>March 1, 2007 | **Discovery Deadline - Claim Construction Issues.** |
| Thursday<br>February 15, 2007 | Respond to Amended Pleadings. |
| Thursday<br>February 8, 2007 | Parties to provide name, address, phone number, and curriculum vitae for three (3) agreed technical advisors and information regarding the nominees' availability for *Markman* hearing or a statement that they could not reach an agreement as to any potential technical advisor. |
| Thursday<br>February 1, 2007 | Amended Pleadings (pre-claim construction) due from all parties. It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings. It is necessary to file a Motion for Leave to Amend after the deadline. However, if the amendment would affect preliminary infringement contentions or preliminary invalidity contentions, a motion must be made pursuant to Patent Rule 3-7 irrespective of whether the amendment is made prior to this deadline. |
| Monday<br>January 29, 2007 | **Comply with P.R. 4-3 - Filing of Joint Claim Construction and Prehearing Statement.** |
| Friday *<br>January 5, 2007 | Comply with P.R. 4-2 - Exchange of Preliminary Claim Constructions and Extrinsic Evidence. Privilege Logs to be exchanged by parties (or a letter to the Court stating that there are no disputes as to claims of privileged documents). |
| Friday *<br>December 1, 2006 | Comply with P.R. 4- 1 - Exchange Proposed Terms and Claim Elements for Construction. |
| Tuesday<br>November 14, 2006 | Comply with P.R. 3-3 and P.R. 3-4 - Preliminary Invalidity Contentions due. Thereafter, it is necessary to obtain leave of Court to add and/or amend invalidity contentions, pursuant to Patent Rule 3-7.<br>Add any inequitable conduct allegations to pleadings. It is not necessary to file a motion for leave to add inequitable conduct allegations to pleadings prior to this date. Thereafter, it is necessary to obtain leave of Court to add inequitable conduct allegations to pleadings. |

| Monday October 2, 2006 | Comply with P.R. 3-1 and P.R. 3-2 - Disclosure of Asserted Claims and Preliminary Infringement Contentions due. Thereafter, it is necessary to obtain leave of Court to add and/or amend infringement contentions, pursuant to Patent Rule 3-7. <br> Join Additional Parties. It is not necessary to file a motion to join additional parties prior to this date. Thereafter, it is necessary to obtain leave of Court to join additional parties. <br> Add new patents and/or claims for patents-in-suit. It is not necessary to file a motion to add additional patents or claims prior to this date. Thereafter, it is necessary to obtain leave of Court to add patents or claims. |
|---|---|
|  | Mediation. The Court refers most cases to mediation. The parties should discuss proposed mediators and timing of mediation prior to the Scheduling Conference and be prepared with a recommendation for the Court. |
| April 13, 2007 | **Mediation to be completed. (Name), (address), and (phone number)** is appointed as mediator in this cause. The mediator shall be deemed to have agreed to the terms of Court Ordered Mediation Plan of the United States District Court of the Eastern District of Texas by going forth with the mediation in accordance with this order. General Order 99-2. |
| **7 days** | **EXPECTED LENGTH OF TRIAL** |

In the event that any of these dates fall on a weekend or Court holiday, the deadline is modified to be the next Court business day.

The parties are directed to Local Rule CV-7(d), which provides in part that "[i]n the event a party fails to oppose a motion in the manner prescribed herein the Court will assume that the party has no opposition." Local Rule CV-7(e) provides that a party opposing a motion has 15 days in which to serve and file supporting documents and briefs after which the Court will consider the submitted motion for decision.

## OTHER LIMITATIONS

(a)    All depositions to be read into evidence as part of the parties' case-in-chief shall be EDITED so as to exclude all unnecessary, repetitious, and irrelevant testimony; ONLY those portions which are relevant to the issues in controversy shall be read into evidence.

(b)    The Court will refuse to entertain any motion to compel discovery filed after the date of this Order unless the movant advises the Court within the body of the motion that

counsel for the parties have first conferred in a good faith attempt to resolve the matter. See Eastern District of Texas Local Rule CV-7(h).

(c)     The following excuses will not warrant a continuance nor justify a failure to comply with the discovery deadline:

(i)     The fact that there are motions for summary judgment or motions to dismiss pending;

(ii)    The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

(iii)   The failure to complete discovery prior to trial, unless the parties can demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

REMBRANDT TECHNOLOGIES, LP §
§
    Plaintiff §
§
vs. §    CASE NO.  2:06 CV 224
§    PATENT CASE
TIME WARNER CABLE INC. §
§
    Defendant

## ORDER

Before the Court is Time Warner Cable Inc.'s Motion to Consolidate this action with 2:06cv223 (Docket No. 24).  The Court **ORDERS** Rembrandt Technologies to respond to this motion by 5 p.m. on Friday, September 22, 2006.  Time Warner may file a reply no later than noon on Tuesday, September 26.  The Court will hear this motion at 9 a.m., Wednesday, September 27, 2006.  The Court also **RESCHEDULES** the scheduling conference for that time.

    **So ORDERED and SIGNED this 18th day of September, 2006.**



    **LEONARD DAVIS**
    **UNITED STATES DISTRICT JUDGE**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CASE NO.  2:06 CV 224 |
| | § | PATENT CASE |
| TIME WARNER CABLE INC. | § | |
| | § | |
| Defendant | | |

## ORDER

The Court **TRANSFERS** this case to the Honorable T. John Ward.


**So ORDERED and SIGNED this 20th day of September, 2006.**


_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | **Civil Action No. 2:06-cv-00224-TJW** |
| **v.** | |
| **TIME WARNER CABLE, INC.** | |

## NOTICE OF APPEARANCE

Notice is hereby given that attorney Robert Christopher Bunt enters his appearance in this matter as additional counsel for Plaintiff Rembrandt Technologies, LP for the purpose of receiving notices from the Court.

Dated: September 21, 2006        Respectfully submitted,

*/s/ Robert Christopher Bunt*
Robert Christopher Bunt
State Bar No. 00787165
Robert M. Parker
State Bar No. 15498000
Charles Ainsworth
State Bar No. 00783521
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
903/531-3535
903/533-9687 - Facsimile
E-mail: rmparker@pbatyler.com
E-mail: rcbunt@pbatyler.com
E-mail: charley@pbatyler.com

CERTIFICATE OF SERVICE

I hereby certify that the all counsel of record, who are deemed to have consented to electronic service are being served this September 21, 2006, with a copy of this document via the Court's CM/ECF system per Local Rule CD-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Robert Christopher Bunt
Robert Christopher Bunt

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | **Civil Action No. 2:06-cv-00224-TJW** |
| **v.** | |
| **TIME WARNER CABLE, INC.** | |

## NOTICE OF APPEARANCE

Notice is hereby given that attorney Charles Ainsworth enters his appearance in this matter as additional counsel for Plaintiff Rembrandt Technologies, LP for the purpose of receiving notices from the Court.


Dated: September 21, 2006        Respectfully submitted,

*/s/ Charles Ainsworth*
Charles Ainsworth
State Bar No. 00783521
Robert Christopher Bunt
State Bar No.  00787165
Robert M. Parker
State Bar No. 15498000
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
903/531-3535
903/533-9687 - Facsimile
E-mail: rmparker@pbatyler.com
E-mail: rcbunt@pbatyler.com
E-mail: charley@pbatyler.com

Attorneys for Plaintiff
Rembrandt Technologies, LP

## CERTIFICATE OF SERVICE

I hereby certify that the all counsel of record, who are deemed to have consented to electronic service are being served this September 21, 2006, with a copy of this document via the Court's CM/ECF system per Local Rule CD-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/ Charles Ainsworth*
Charles Ainsworth

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CASE NO. 2:06-CV-224 [TJW] |
| | § | Jury Demanded |
| TIME WARNER CABLE INC. | § | |
| | § | |
| Defendant. | § | |

**UNOPPOSED MOTION TO VACATE ORDER SETTING SCHEDULING
CONFERENCE AND EXPEDITED BRIEFING ON MOTION TO CONSOLIDATE**

Plaintiff Rembrandt Technologies LP ("Rembrandt") files this Motion to Vacate Order Setting Scheduling Conference and Expedited Briefing on Motion to Consolidate.

By this Motion, Rembrandt seeks to vacate the scheduling conference and expedited briefing schedule that Judge Davis ordered in Case No. 2:06-CV-224 ("the Time Warner case") prior to Judge Davis' decision to transfer both the Time Warner Case and Case No. 2:06-CV-223 ("the Charter case") to Judge Ward. Upon the granting of this Motion, the briefing on Time Warner's Motion to Consolidate will occur pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court, rather than on the expedited schedule set by the Order of Judge Davis.

# I.

On September 15, 2006, Time Warner filed its "Motion to Consolidate This Action With No. 2:06-CV-223 Pursuant to FRCP 42 and CV 42 and Motion to Continue the September 20, 2006 Scheduling Conference" (Docket Number 24). Time Warner requested that the Scheduling Conference be continued due to unavailability of its counsel.

On September 18th, Judge Davis issued an Order resetting the Scheduling Conference to Wednesday, September 27, 2006. In order to complete briefing on Time Warner's Motion to Consolidate in advance of that scheduling conference, Judge Davis also ordered that Rembrandt's Opposition to Time Warner's Motion to Consolidate be filed by 5:00 P.M., Friday, September 22, 2006.

On Wednesday, September 20, 2006, Judge Davis issued two Orders transferring the Time Warner and Charter Cases to Judge Ward (Docket Nos. 28 and 41 respectively).

In light of this transfer, Rembrandt believes that the September 18, 2006 Order setting a Scheduling Conference and Expedited Briefing is now moot, and requests that this Order be vacated. Defendant Time Warner does not oppose this motion.

WHEREFORE, Rembrandt requests that the Court grant this Motion to Vacate Order Setting Scheduling Conference and Expedited Briefing on Motion to Consolidate.

Austin 31141v1

Dated:  September 21, 2006              Respectfully submitted,

/s/ Sam Baxter_____
Sam Baxter
State Bar No. 01938000
**McKOOL SMITH, P.C.**
505 E. Travis, Suite 105
Marshall, Texas  75670
Telephone:  (903) 927-2111
Telecopier:  (903) 927-2622
sbaxter@mckoolsmith.com

Jeffrey A. Carter
State Bar No. 03919400
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas  75201
Telephone:  (214) 978-4006
Telecopier:  (214) 978-4044
jcarter@mckoolsmith.com

Travis Gordon White
State Bar No. 21333000
**McKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas  78701
Telephone:  (512) 692-8700
Telecopier:  (512) 692-8744
gwhite@mckoolsmith.com

Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No. 00787165
**PARKER & BUNT, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Telephone:  (903) 531-3535
Telecopier:  (903) 533-9687
cbunt@cox-internet.com
rmparker@cox-internet.com

3

Otis Carroll
State Bar No. 03895700
Patrick Kelley
State Bar No. 11202500
Collin Maloney
State Bar No. 00794219
**IRELAND, CARROLL & KELLEY, P.C.**
6101 S. Broadway, Suite 500
Tyler, Texas  75703
Telephone:  (903) 561-1600
Telecopier:  (903) 581-1071
Fedserv@icklaw.com

Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Andrew W. Spangler
State Bar No. 24041960
**BROWN McCARROLL LLP**
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas  75601-5157
Telephone:  (903) 236-9800
Telecopier:  (903) 236-8787
ccapshaw@mailbmc.com
ederieux@mailbmc.com
aspangler@mailbmc.com

**ATTORNEYS FOR PLAINTIFF
REMBRANDT TECHNOLOGIES, LP**

4

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this the 21st day of September, 2006.


/s/ Sam Baxter_____
Sam Baxter

5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 2:06-CV-224 (TJW) |
| | § | |
| TIME WARNER CABLE INC. | § | |
|     Defendant. | § | |
| | § | |
| | § | |

## ORDER

The Court vacates Judge Davis' September 18, 2006 order (#27) as a result of the transfer of this case to Judge Ward. The hearing set for September 27, 2006 on Time Warner Cable, Inc.'s motion to consolidate and the scheduling conference is hereby canceled. The response to Time Warner Cable, Inc.'s motion to consolidate (#24) will be due in accordance with the local rules.

SIGNED this 22nd day of September, 2006.

_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

2-1-1886

**Appendix K**

Revised: 12/3/03

FILED-CLERK
U.S. DISTRICT COURT

06 SEP 20 AM 9: 57

TX EASTERN-MARSHALL

BY

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### Marshall DIVISION
#### APPLICATION TO APPEAR PRO HAC VICE

1. This application is being made for the following: Case # _2:06-cv-224 (LED)_

Style: _Rembrandt Technologies LP v. Time Warner Cable Inc._

2. Applicant is representing the following party/ies:

_Time Warner Cable Inc._

3. Applicant was admitted to practice in _NY_ (state) on _June 1988_ (date).

4. Applicant is in good standing and is otherwise eligible to practice law before this court.

5. Applicant is not currently suspended or disbarred in any other court.

6. Applicant has/has not had an application for admission to practice before another court denied (please circle appropriate language). If so, give complete information on a separate page.

7. Applicant has/has not ever had the privilege to practice before another court suspended (please circle). If so, give complete information on a separate page.

8. Applicant has/has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle). If so, give complete information on a separate page.

9. Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you. Omit minor traffic offenses.

10. There are no pending grievances or criminal matters pending against the applicant.

11. Applicant has been admitted to practice in the following courts: **New York, Eastern and Southern Districts of N.Y., the Court of Appeals for the Second Circuit.**

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13. Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14. Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

I, _Michael A. Rogoff_ do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States

Date _9/18/06_          Signature

Name (please print) Michael A. Rogoff

State Bar Number 2209179

Firm Name: Kaye Scholer LLP

Address/P.O. Box: 425 Park Avenue

City/State/Zip: New York, NY 10022

Telephone #: (212)836-8000

Fax #: (212)836-8689

E-mail Address: mrogoff@kayescholer.com

Secondary E-Mail Address: _____

Applicant is authorized to enter an appearance as counsel for the party/parties listed above   This application has been approved for the court this 2O day of _____, 20O6

David J  Maland, Clerk

U S  District Court, Eastern District of Texas

By _____

Deputy Clerk

**Appendix K**

FILED-CLERK
U.S. DISTRICT COURT

06 SEP 20  AM 9: 58

TX EASTERN-MARSHALL

BY _____

Revised: 12/3/03

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
__Marshall__  **DIVISION**
### APPLICATION TO APPEAR PRO HAC VICE

1. This application is being made for the following: Case # _2:06-cv-224(LED)_

Style: _Rembrandt Technologies, LP v. Time Warner Cable Inc._

2. Applicant is representing the following party/ies:

_Time Warner Cable Inc._

3. Applicant was admitted to practice in ___NY___ (state) on _____ May 1992 _____ (date).

4. Applicant is in good standing and is otherwise eligible to practice law before this court

5. Applicant is not currently suspended or disbarred in any other court

6. Applicant has/has not had an application for admission to practice before another court denied (please circle appropriate language). If so, give complete information on a separate page.

7. Applicant has/has not ever had the privilege to practice before another court suspended (please circle). If so, give complete information on a separate page.

8. Applicant has/has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle). If so, give complete information on a separate page.

9. Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you. Omit minor traffic offenses.

10. There are no pending grievances or criminal matters pending against the applicant.

11. Applicant has been admitted to practice in the following courts: New York, Eastern and Southern Districts of N.Y.

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AI-3, the "Standards of Practice to be Observed by Attorneys."

13. Applicant has included the requisite $25 fee (see Local Rule AI-1(d))

14. Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only

**Application Oath:**

I, _David S. Benyacar_ do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Date **9/18/06**              Signature _____

Name (please print) David S. Benyacar

State Bar Number   2481794

Firm Name:   Kaye Scholer LLP

Address/P.O. Box:   425 Park Avenue

City/State/Zip: New York, NY 10022

Telephone #:  (212)836-8000

Fax #:   (212)836-8689

E-mail Address:  dbenyacar@kayescholer.com

Secondary E-Mail Address:

Applicant is authorized to enter an appearance as counsel for the party/parties listed above. This
application has been approved for the court this 70 day of _____, 20 06

David J. Maland, Clerk

U.S. District Court, Eastern District of Texas

By _____

Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | CASE NO. 2:06-cv-224 [TJW] |
| | § | JURY DEMANDED |
| TIME WARNER CABLE INC. | § | |

**TIME WARNER CABLE INC.'S UNOPPOSED MOTION TO WITHDRAW ITS
MOTION TO CONSOLIDATE THIS ACTION WITH NO. 2:06-CV-223 PURSUANT TO
FRCP 42 and CV 42 AND MOTION TO CONTINUE THE
SEPTEMBER 20, 2006 SCHEDULING CONFERENCE**

COMES NOW Time Warner Cable Inc. ("TWC") and files this, its Unopposed Motion to

Withdraw its Motion to Consolidate this Action with No. 2:06-cv-223 pursuant to FRCP 42 and

CV 42 and Motion to Continue the September 20, 2006 Scheduling Conference, and in support,

presents to the Court the following:

1. TWC filed said Motion on September 15, 2006 [Dkt. 24]. Plaintiff opposed said

Motion.

2. Since the filing of said Motion, the Honorable Leonard E. Davis has entered an

Order transferring this action to this Honorable Court [Dkt. 28].

3. An Unopposed Motion to Vacate Order Setting Scheduling Conference and

Expedited Briefing on Motion to Consolidate was filed by Plaintiff on September 21, 2006 [Dkt.

31].

4. An Order vacating Judge Davis's Order [Dkt. 27] was entered by this Honorable

Court on September 22, 2006 [Dkt. 32].

5. TWC hereby moves to withdraw its Motion to Consolidate this Action with No.

2:06-cv-223 pursuant to FRCP 42 and CV 42 and Motion to Continue the September 20, 2006

Scheduling Conference without prejudice to refile at a later time in these proceedings.

Dated: September 25, 2006

Respectfully submitted,

/s/ Diane V. DeVasto
Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Diane V. DeVasto
State Bar No. 05784100
dianedevasto@potterminton.com

Michael A. Rogoff
David S. Benyacar
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689

POTTER MINTON, P.C.
110 North College
500 Plaza Tower
Tyler, Texas 75702
Telephone:  (903) 597-8311
Facsimile:  (903) 593-0846

**ATTORNEYS FOR
TIME WARNER CABLE INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 25th day of September 2006. Any other counsel of record will be served by first class mail on this same date.

/s/ Diane V. DeVasto

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| v. | § | CASE NO. 2:06-cv-224 [TJW] |
| | § | JURY DEMANDED |
| TIME WARNER CABLE INC. | § | |

**ORDER GRANTING TIME WARNER CABLE INC.'S UNOPPOSED MOTION
TO WITHDRAW ITS MOTION TO CONSOLIDATE THIS ACTION WITH NO.
2:06-CV-223 PURSUANT TO FRCP 42 and CV 42 AND MOTION TO
CONTINUE THE SEPTEMBER 20, 2006 SCHEDULING CONFERENCE**

Having read and considered the foregoing Unopposed Motion to Withdraw its

Motion to Consolidate this Action with No. 2:06-cv-223 pursuant to FRCP 42 and CV 42

and Motion to Continue the September 20, 2006 Scheduling Conference, it is hereby

**ORDERED** that said Motion is **GRANTED** and Time Warner Cable Inc.'s

Motion to Consolidate this Action with No. 2:06-cv-223 pursuant to FRCP 42 and CV 42

and Motion to Continue the September 20, 2006 Scheduling Conference is withdrawn

without prejudice to refile said Motion.

SIGNED this 26th day of September, 2006.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | CASE No. 2:06CV-224 |
| | § | |
| PLAINTIFF, | § | Case No. 2:06-CV-224 Davis |
| | § | |
| | § | JURY TRIAL DEMANDED |
| TIME WARNER CABLE INC. | § | |
| | § | |
| DEFENDANT | § | |

NOTICE OF APPEARANCE

NOTICE is hereby given that Franklin Jones, Jr. is entering his appearance as counsel for

Plaintiff, Rembrandt Technologies, LP,  for purposes of receiving notices from the Court.

Dated this 29th day of September, 2006.

BY: /s/ Franklin Jones, Jr.
Franklin Jones, Jr.
State Bar No.  00000055
JONES & JONES, Inc.
P. O. Drawer 1249
Marshall, Texas 75671-1249
Telephone: (903)9338-43395
Facsimile: (903) 938-3360
Email: maizieh@millerfirm.com

CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September, 2006, a true and correct copy of the
foregoing document was sent to all counsel of record via the Court's electronic filing system.

/s/ Franklin Jones, Jr.
Franklin Jones, Jr.

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:06-CV-224 [TJW] |
| | § | |
| TIME WARNER CABLE, INC., | § | JURY TRIAL REQUESTED |
| | § | |
| Defendant. | § | |

## MOTION FOR LEAVE TO AMEND
## THE ORIGINAL COMPLAINT

Plaintiff Rembrandt Technologies, LP ("Rembrandt") moves for leave to amend the Original Complaint to add four subsidiaries of Defendant Time Warner Cable, Inc. ("TWC") as defendants. In support of this motion, Rembrandt would show the Court the following:

1. Prior to March 2003, TWI Cable ("TWI"), a wholly owned subsidiary of Time Warner Inc., and Time Warner Entertainment Company, L.P.("TWE") owned all of Time Warner's cable systems.[1] In March 2003, Time Warner created TWC as a majority owned subsidiary, and consolidated the assets and liabilities of Time Warner's cable operations under TWC.[2] After the consolidation, TWI ceased to exist, but TWE continued to own cable systems under TWC.

---

[1] AOL Time Warner, Inc. 2001 Form 10K at 8 (13) (excerpts attached hereto as Exhibit B). The excerpt pages in Exhibits B, C, D, and E contain two page numbers: (i) a page number that appears in the text of the page about one-third of the way in from the left hand margin which number reflects the page number in the actual document and (ii) a page number in the upper right hand corner of the page which reflects the page number of the source from which Rembrandt obtained the document. The citations herein cite first to the page number in the actual document, the page number that appears in the text of the page. The numbers in the parentheticals refer to the numbers in the upper right hand corner of the pages.

[2] Time Warner Inc. 2003 Form 10K at 1-2 (4-5) (excerpts attached hereto as Exhibit D); AOL Time Warner Inc. 2002 10K at 1 & 7 (5 & 13-14) (excerpts attached hereto as Exhibit C) (All of Time Warner's cable interests,

**MOTION FOR LEAVE TO AMEND THE ORIGINAL COMPLAINT - PAGE 1**
Dallas 232716v2

2.      Today, TWC is the second largest cable operator in the United States with over 14 million cable subscribers.[3]  In a recent filing with the Securities and Exchange Commission, TWC identified four entities as owning the cable systems that serve TWC's subscribers: Time Warner Cable LLC ("TWCL") which owns cable systems that serve approximately 1.0 million subscribers; Time Warner New York Cable LLC ("TWNY") which owns cable systems that serve approximately 4.4 million subscribers; TWE which owns cable systems that serve approximately 3.4 million subscribers; and Time Warner Entertainment-Advance/Newhouse Partnership ("TWE-A/N") which own cable systems that serve approximately 4.7 million subscribers.[4]  Each of TWCL, TWNY, TWE, and TWE-A/N is a direct or indirect subsidiary of TWC.[5]  The four subsidiaries have owned cable systems that provided, and continue to own cable systems that provide, services to residents of Texas and elsewhere that Rembrandt contends infringed and continue to infringe the patents-in-suit.

3.      Based on TWC's public statements, Rembrandt seeks to add the four subsidiaries, TWCL, TWNY, TWE, and TWE-A/N, as defendants to ensure that Rembrandt has the proper parties before the Court in order to reach all of TWC's cable operations during the infringing period.

4.      Rembrandt seeks leave to amend, pursuant to Rule 15 of the Federal Rules of Civil Procedure, because TWC has answered.  Granting Rembrandt leave to add the four subsidiaries will not prejudice either TWC or the four subsidiaries.  The case is not yet set for a

---

including those wholly owned and those that were held through Time Warner Entertainment Company, L.P., are now controlled by TWC).

[3]  December 7, 2006 Amendment No. 1 to Form S-1 Registration Statement of Time Warner Cable, Inc. at 1 (7-8) (excerpts attached hereto as Exhibit E).

[4] Id. at 5 (16) (Exhibit E).

[5] Id. at Exhibit 21.1 (Exhibit F attached hereto).

**MOTION FOR LEAVE TO AMEND THE ORIGINAL COMPLAINT - PAGE 2**
Dallas 232716v2

scheduling conference.  Moreover, at the scheduling conference or shortly thereafter, the Court

enters a Docket Control Order which typically grants the parties a certain period of time in which

to add additional parties without the need to seek leave of this Court.  Rembrandt is seeking to

add the four subsidiaries before the time for freely adding parties has commenced.

Rembrandt moves for leave of this Court to amend its Original Complaint, as attached

hereto as Exhibit A, to add Time Warner Cable LLC, Time Warner NY Cable LLC, Time

Warner Entertainment Company, L.P., and Time Warner Entertainment-Advance/Newhouse

Partnership as named defendants.

DATED:  February 23, 2007                     Respectfully submitted,


  /s/ Sam Baxter                     
Sam Baxter
State Bar No. 01938000
**McKOOL SMITH, P.C.**
505 E. Travis, Suite 105
Marshall, Texas  75670
Telephone:  (903) 927-2111
Telecopier:  (903) 927-2622
sbaxter@mckoolsmith.com

Jeffrey A. Carter
State Bar No. 03919400
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas  75201
Telephone:  (214) 978-4006
Telecopier:  (214) 978-4044
jcarter@mckoolsmith.com

Travis Gordon White
State Bar No. 21333000
**McKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas  78701
Telephone:  (512) 692-8700
Telecopier:  (512) 692-8744
gwhite@mckoolsmith.com

**MOTION FOR LEAVE TO AMEND THE ORIGINAL COMPLAINT - PAGE 3**
Dallas 232716v2

Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No. 00787165
**PARKER & BUNT, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Telephone:  (903) 531-3535
Telecopier:  (903) 533-9687
cbunt@cox-internet.com
rmparker@cox-internet.com

Otis Carroll
State Bar No. 03895700
Patrick Kelley
State Bar No. 11202500
Collin Maloney
State Bar No. 00794219
**IRELAND, CARROLL & KELLEY, P.C.**
6101 S. Broadway, Suite 500
Tyler, Texas  75703
Telephone:  (903) 561-1600
Telecopier:  (903) 581-1071
Fedserv@icklaw.com

Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Andrew W. Spangler
State Bar No. 24041960
**BROWN McCARROLL LLP**
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas  75601-5157
Telephone:  (903) 236-9800
Telecopier:  (903) 236-8787
ccapshaw@mailbmc.com
ederieux@mailbmc.com
aspangler@mailbmc.com

**ATTORNEYS FOR PLAINTIFF
REMBRANDT TECHNOLOGIES, LP**

# CERTIFICATE OF CONFERENCE

Counsel for Rembrandt Technologies, L.P. contacted Mr. Michael E. Jones, counsel for Time Warner Cable, Inc., on February 23, 2007 regarding the motion. Counsel for TWC stated that he was unable to respond at this time.

_/s/ Jeffrey A. Carter_____
Jeffrey A. Carter

# CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this the 23rd day of February, 2007.

_/s/ Sam Baxter_____
Sam Baxter

**First Amended Complaint**

# EXHIBIT A

**to**

**Motion for Leave to Amend the Original Complaint in**
*Rembrandt Technologies, LP v. Time Warner Cable, Inc.*
**Case No. 2:06cv224[TJW]**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:06-CV-224 [TJW] |
| | § | |
| TIME WARNER CABLE, INC., | § | **JURY TRIAL REQUESTED** |
| | § | |
| Defendant. | § | |

## FIRST AMENDED COMPLAINT

Rembrandt Technologies, LP ("Rembrandt") files this First Amended Complaint for infringement of United States Patent Nos. 5,243,627; 5,852,631; 5,719,858; and 4,937,819 under 35 U.S.C. § 271, and in support thereof would respectfully show the Court the following:

## THE PARTIES

1.      Plaintiff Rembrandt is a limited partnership organized under the laws of the state of New Jersey with its principal place of business at 401 City Avenue, Suite 815, Bala Cynwyd, PA  19004.

2.      Defendant Time Warner Cable Inc. ("TWC") is a corporation organized under the laws of the state of Delaware with its principal place of business at 290 Harbor Drive, Stamford, Connecticut 06092.  TWC's registered agent for service of process in Texas is CT Corporation System, 350 North St. Paul Street, Dallas, Texas  75201.   TWC answered the original Complaint and asserted counterclaims.

3.      Defendant Time Warner Cable LLC ("TWCL"), is a corporation organized under the laws of the state of Delaware with its principal place of business at 290 Harbor Drive,

1

Stamford, Connecticut 06902. TWCL's registered agent for service of process is the

Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington,

Delaware 19801.

4.      Defendant Time Warner New York Cable LLC ("TWNY") is a corporation

organized under the laws of the state of Delaware with its principal place of business at 290

Harbor Drive, Stamford, Connecticut 06902. TWNY's registered agent for service of process in

Texas is CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

5.      Defendant Time Warner Entertainment Company, L.P. ("TWE") is a limited

partnership organized under the laws of the state of Delaware with its principal place of business

at 290 Harbor Drive, Stamford, Connecticut 06902 in care of Time Warner Cable. TWE's

registered agent for service of process in Texas is CT Corporation System, 1021 Main Street,

Suite 1150, Houston, Texas 77002.

6.      Defendant Time Warner Entertainment-Advance/Newhouse Partnership

("TWE/AN") is a partnership organized under the laws of the state of New York with its

principal place of business at 290 Harbor Drive, Stamford, Connecticut 06902 in care of Time

Warner Cable. TWE/AN's registered agent for service of process in Texas is CT Corporation

System, 350 N. St. Paul Street, Dallas, Texas 75201.

7.      TWC is the direct or indirect parent of each of TWCL, TWNY, TWE, and TWE-

A/N. Through one or more of its subsidiaries, affiliates, partners, or other related parties, TWC

owns and/or operates cable systems throughout the United States and in the State of Texas (as

Time Warner Cable and/or Road Runner). TWCL, TWNY, TWE, and TWE-A/N, each directly

or through one or more subsidiaries, affiliates, partners, or other related parties own and operate

2

cable systems in Texas and elsewhere (as Time Warner Cable and/or Road Runner). TWC, TWCL, TWNY, TWE, and TWE-A/N (collectively, the "Defendants"), directly or through one or more subsidiaries, affiliates, partners, or other related parties, as set forth herein, have each committed and continue to commit tortuous acts of patent infringement within and outside of Texas and within this judicial district.

## JURISDICTION AND VENUE

8.  This is an action for patent infringement, arising under the patent laws of the United States, Title 35, United States Code. This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a).

9.  This Court has personal jurisdiction over all named Defendants. Defendants have conducted and continue to conduct business in the State of Texas and within this district. Defendants, directly or through subsidiaries or intermediaries, offer for sale, sell, advertise, and market products and services that infringe the patents-in-suit as described more specifically below. Therefore, because Defendants have committed acts of patent infringement in this state and district, or are otherwise present or doing business in this state and district, this Court has personal jurisdiction over Defendants.

10.  Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), and 1400(b).

## COUNT I -- INFRINGEMENT OF U.S. PATENT NO. 5,243,627

11.  Rembrandt refers to and incorporates herein the allegations of Paragraphs 1-10 above.

3

12.     Rembrandt is the owner of all right, title and interest, including the right to sue, enforce and recover damages for all infringements, in U.S. Patent No. 5,243,627, entitled "Signal Point Interleaving Technique" ("the '627 patent").

13.     The '627 patent was duly and legally issued by the United States Patent and Trademark Office on September 7, 1993, after full and fair examination.

14.     Defendants operate cable television systems throughout the United States and in Texas.

15.     Defendants have directly or indirectly infringed, and are continuing to infringe, directly or indirectly, the '627 patent by practicing or causing others to practice (by inducement and contributorily) the inventions claimed in the '627 patent, in this district or otherwise within the United States.  For example, Defendants have infringed and continue to infringe the '627 patent by their receipt and retransmission over their cable television systems of digital terrestrial broadcast signals that comply with the ATSC Digital Television Standard.

16.     Upon information and belief, Defendants will continue to infringe the '627 patent unless enjoined by this Court.  Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT II -- INFRINGEMENT OF U.S. PATENT NO. 5,852,631

17.     Rembrandt refers to and incorporates herein the allegations of Paragraphs 1-16 above.

4

18.     Rembrandt is the owner of all right, title and interest, including the right to sue, enforce and recover damages for all infringements, in U.S. Patent No. 5,852,631, entitled "System and Method for Establishing Link Layer Parameters Based on Physical Layer Modulation ("the '631 patent").

19.     The '631 patent was duly and legally issued by the United Stats Patent and Trademark Office on December 22, 1998, after full and fair examination.

20.     Defendants operate cable systems and provide Internet service throughout the United States and in Texas.

21.     Defendants have directly or indirectly infringed, and are continuing to infringe, directly or indirectly, the '631 patent by practicing or causing others to practice (by inducement and contributorily) the inventions claimed in the '631 patent, in this district or otherwise within the United States.  For example, Defendants have infringed and continue to infringe the '631 patent by providing high speed internet service to subscribers.

22.     Upon information and belief, Defendants will continue to infringe the '631 patent unless enjoined by this Court.  Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT III -- INFRINGEMENT OF U.S. PATENT NO. 5,719,858

23.     Rembrandt refers to and incorporates herein the allegations of Paragraphs 1-22 above.

24. Rembrandt is the owner of all right, title and interest, including the right to sue, enforce and recover damages for all infringements, in U.S. Patent No. 5,719,858, entitled "Time-Division Multiple-Access Method for Packet Transmission on Shared Synchronous Serial Busses" (the '858 patent").

25. The '858 patent was duly and legally issued by the United Stats Patent and Trademark Office on February 17, 1998, after full and fair examination.

26. Defendants operate cable systems and provide Internet service throughout the United States and in Texas.

27. Defendants have directly or indirectly infringed, and are continuing to infringe directly or indirectly, the '858 patent by practicing or causing others to practice (by inducement and contributorily) the inventions claimed in the '858 patent, in this district or otherwise within the United States. For example, Defendants have infringed and continue to infringe the '858 patent by provision of high speed internet services, including such services as Voice over IP (VoIP) to subscribers.

28. Upon information and belief, Defendants will continue to infringe the '858 patent unless enjoined by this Court. Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## COUNT IV -- INFRINGEMENT OF U.S. PATENT NO. 4,937,819

29. Rembrandt refers to and incorporates herein the allegations of Paragraphs 1-28 above.

6

30.    Rembrandt is the owner of all right, title and interest, including the right to sue, enforce and recover damages for all infringements, in U.S. Patent No. 4,937,819, entitled "Time Orthogonal Multiple Virtual DCE for Use in Analog and Digital Networks" (the '819 patent").

31.    The '819 patent was duly and legally issued by the United Stats Patent and Trademark Office on June 26, 1990, after full and fair examination.

32.    Defendants operate cable systems and provide Internet service throughout the United States and in Texas.

33.    Defendants have directly or indirectly infringed, and are continuing to infringe directly or indirectly, the '819 patent by practicing or causing others to practice (by inducement and contributorily) the inventions claimed in the '819 patent, in this district or otherwise within the United States.  For example, Defendants have infringed and continue to infringe the '819 patent by provision of high speed internet services, such as Voice over IP (VoIP) services, to cable television subscribers.

34.    Upon information and belief, Defendants will continue to infringe the '819 patent unless enjoined by this Court.  Upon information and belief, such infringement has been, and will continue to be, willful, making this an exceptional case and entitling Rembrandt to increased damages and reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285.

## PRAYER FOR RELIEF

WHEREFORE, Rembrandt prays that it have judgment against Defendants TWC, TWCL, TWNY, TWE, and TWE-A/N  for the following:

(1)    An order that each Defendant has infringed the patents-in-suit;

7

(2)     A permanent injunction enjoining and restraining each Defendant and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association therewith, from making, using, offering to sell, selling, and importing into the United States any product, or using, offering to sell, or selling any service, which falls within the scope of any claim of the patents-in-suit;

(3)     An award of damages;

(4)     An award of increased damages pursuant to 35 U.S.C. § 284;

(5)     An award of all costs of this action, including attorneys' fees and interest; and

(6)     Such other and further relief, at law or in equity, to which Rembrandt is justly entitled.

## JURY DEMAND

Rembrandt hereby demands a jury trial on all issues appropriately triable by a jury.

DATED:  February ___, 2007                    Respectfully submitted,

 

_____

Sam Baxter
State Bar No. 01938000
**McKOOL SMITH, P.C.**
505 E. Travis, Suite 105
Marshall, Texas  75670
Telephone:  (903) 927-2111
Telecopier:  (903) 927-2622
sbaxter@mckoolsmith.com

Jeffrey A. Carter
State Bar No. 03919400
**McKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas  75201
Telephone:  (214) 978-4006
Telecopier:  (214) 978-4044
jcarter@mckoolsmith.com

8

Travis Gordon White
State Bar No. 21333000
**McKOOL SMITH, P.C.**
300 W. 6th Street, Suite 1700
Austin, Texas  78701
Telephone:  (512) 692-8700
Telecopier:  (512) 692-8744
gwhite@mckoolsmith.com

Robert M. Parker
State Bar No. 15498000
Robert Christopher Bunt
State Bar No. 00787165
**PARKER & BUNT, P.C.**
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Telephone:  (903) 531-3535
Telecopier:  (903) 533-9687
cbunt@cox-internet.com
rmparker@cox-internet.com

Otis Carroll
State Bar No. 03895700
Patrick Kelley
State Bar No. 11202500
Collin Maloney
State Bar No. 00794219
**IRELAND, CARROLL & KELLEY, P.C.**
6101 S. Broadway, Suite 500
Tyler, Texas  75703
Telephone:  (903) 561-1600
Telecopier:  (903) 581-1071
Fedserv@icklaw.com

Dallas 232443v2

Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Andrew W. Spangler
State Bar No. 24041960
**BROWN McCARROLL LLP**
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas  75601-5157
Telephone:  (903) 236-9800
Telecopier:  (903) 236-8787
ccapshaw@mailbmc.com
ederieux@mailbmc.com
aspangler@mailbmc.com

**ATTORNEYS FOR PLAINTIFF
REMBRANDT TECHNOLOGIES, LP**

10

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by U.S. mail, on this the _____ day of February, 2007.


_____
Sam Baxter

11

Excerpts from
AOL Time Warner, Inc.
2001 Form 10K

# EXHIBIT B

to

**Motion for Leave to Amend the Original Complaint in**
*Rembrandt Technologies, LP v. Time Warner Cable, Inc.*
**Case No. 2:06cv224[TJW]**

10 of 13 DOCUMENTS

Copyright 2002 Disclosure Incorporated EDGARPlus(R)

COMPANY: AOL TIME WARNER INC TICKER: AOL EXCHANGE: NYS

FORM-TYPE: 10-K

DOCUMENT-DATE: December 31, 2001 FILING-DATE: March 25, 2002

Full text Company info Contents Other Return

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* **TEXT OF FILING** \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

---

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

---

FORM 10-K

---

ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d)
OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2001

Commission file number 001-15062

---

AOL TIME WARNER INC.
(Exact name of Registrant as specified in its charter)

---

Delaware                    13-4099534
(State or other             (I.R.S. Employer
jurisdiction of             Identification No.)
incorporation or
organization)

75 Rockefeller Plaza
New York, NY 10019
(Address of Principal Executive Offices)

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 25, 2002

(212) 484-8000
(Registrant's Telephone Number, Including Area Code)

----------------

Securities registered pursuant to Section 12(b) of the Act:

|                          | Name of each exchange   |
| Title of each class      | on which registered     |
| ------------             | ------------            |
| Common Stock, $.01 par   | New York Stock Exchange |
| value                    |                         |

Securities registered pursuant to Section 12(g) of the Act:
None

Indicate by check mark whether the registrant (1) has filed all reports
required to be filed by Section 13 or 15(d) of the Securities Exchange Act
of 1934 during the preceding 12 months, and (2) has been subject to such
filing requirements for the past 90 days.    Yes x         No

Indicate by check mark if disclosure of delinquent filers pursuant to Item
405 of Regulation S-K is not contained herein, and will not be contained,
to the best of registrant's knowledge, in definitive proxy or information
statements incorporated by reference in Part III of this Form 10-K or any
amendment to this Form 10-K.   x

As of the close of business on February 28, 2002, there were 4,270,919,209
shares of registrant's Common Stock and 171,185,826 shares of registrant's
Series LMCN-V Common Stock outstanding. The aggregate market value of the
registrant's voting securities held by non-affiliates of the registrant
(based upon the closing price of such shares on the New York Stock Exchange
Composite Tape on February 28, 2002) was approximately $101.71 billion.

Documents Incorporated by Reference:

| Description of document    | Part of the Form 10-K            |
| -----------------          | --------------                   |
| Portions of the Definitive Proxy | Part III (Item 10 through Item 13) |
| Statement to be used in connection |                          |
| with the registrant's 2002 Annual  |                          |
| Meeting of Stockholders.           |                          |

---------------------------------------------------------------------

---------------------------------------------------------------------

LOGO

---------------------------------------------------------------------

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 25, 2002

## PART I

### Item 1.  Business

AOL Time Warner Inc. (the "Company" or "AOL Time Warner") is the world's first fully integrated, Internet-powered media and communications company. The Company was formed in connection with the merger of America Online, Inc. ("America Online") and Time Warner Inc. ("Time Warner") which was consummated on January 11, 2001 (the "Merger" or the "AOL-Time Warner merger"). As a result of the Merger, America Online and Time Warner each became wholly owned subsidiaries of AOL Time Warner.

The Company classifies its business interests into the following fundamental areas:

. America Online, consisting principally of interactive services, Web properties, Internet technologies and electronic commerce services;

. Cable, consisting principally of interests in cable television systems;

. Filmed Entertainment, consisting principally of interests in filmed entertainment and television production;

. Networks, consisting principally of interests in cable television and broadcast network programming;

. Music, consisting principally of interests in recorded music and music publishing; and

. Publishing, consisting principally of interests in magazine publishing, book publishing and direct marketing.

The Company has undertaken a number of business initiatives to advance cross-divisional activities, including shared infrastructures and cross-promotions of the Company's various businesses, and cross-divisional and cross-platform advertising and marketing opportunities for significant advertisers. The Company's integrated Global Marketing Solutions Group develops individualized advertising programs through which major brands can reach customers over a combination of the Company's print, television and Internet media. The Company expects to continue and expand such arrangements.

For convenience, the terms the "Registrant," "Company" and "AOL Time Warner" are used in this report to refer to both the parent company and collectively to the parent company and the subsidiaries through which its various businesses are conducted, unless the context otherwise requires.

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 25, 2002

TWE and TWE-A/N

Time Warner Entertainment Company, L.P. ("TWE") is a Delaware limited partnership that was formed in 1992. TWE owns Warner Bros., Home Box Office, a majority of The WB and substantially all of AOL Time Warner's cable television business. Currently, the Company, through its wholly owned subsidiaries, owns general and limited partnership interests in 74.49% of the pro rata priority capital ("Series A Capital") and residual equity capital of TWE and 100% of the junior priority capital. The remaining 25.51% limited partnership interests in the Series A Capital and residual equity capital of TWE are held by MediaOne TWE Holdings, Inc., a subsidiary of AT&T Corp. ("AT&T"). In addition, AT&T has an option to increase its Series A Capital and residual equity capital by up to 6.33% on a fully-diluted basis, depending on the performance of the Time Warner Cable division and subject to certain adjustments. TWE's financial results are consolidated with those of AOL Time Warner. For additional information with respect to TWE and AT&T's option to acquire additional interests in TWE, see "Description of Certain Provisions of the TWE Partnership Agreement" at pages 29 through 32 herein, and Note 7, "Investment in TWE," to the Company's consolidated financial statements set forth at pages F-49 through F-51 herein.

In February 2001, AT&T delivered to TWE its request that TWE reconstitute itself as a corporation and register AT&T's entire interest for public sale in accordance with its registration rights under the TWE Partnership Agreement. The parties are currently in discussions regarding the registration rights process. In April 2001, AT&T delivered its request to initiate the process for determination of certain valuations in connection

1

----------------------------------------------------------------------

with its option to acquire additional interests in TWE. In February 2002, AT&T and TWE jointly engaged an investment banking firm to make the valuation determinations. If AT&T exercises its option in 2002, it would increase its interest in the Series A Capital and residual equity capital of TWE by a maximum of approximately 3.7% on a fully-diluted basis, assuming the exercise price is paid in cash. If either party elects to have the exercise price paid with partnership interests rather than cash, the amount by which AT&T's interest in TWE would increase would be significantly less. The Company cannot at this time predict the outcome, if any, of the foregoing.

TWE holds 64.8% of the residual equity capital of the Time Warner Entertainment-Advance/Newhouse Partnership ("TWE-A/N"), and a wholly owned subsidiary of AOL Time Warner holds 1.9% of TWE-A/N's residual equity capital. The remaining 33.3% of TWE-A/N's residual equity capital is held by the Advance/Newhouse Partnership ("A/N"). TWE-A/N's financial results are consolidated with those of TWE and AOL Time Warner. Under the TWE-A/N Partnership Agreement, TWE or A/N can each deliver notice on or after March 31, 2002 of its intent to cause a restructuring of TWE-A/N, and the Company and A/N are currently engaged in discussions regarding the future structure of TWE-A/N. The discussions between the Company and A/N include discussions with respect to the future structure of the Road Runner joint venture. The Company cannot at this time predict the ultimate outcome of these

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 25, 2002

discussions. See "Description of Certain Provisions of the TWE-A/N
Partnership Agreement--Restructuring Rights of the Partners" at page 34
herein, and Note 4, "Cable-Related Transactions and Investments," to the
Company's consolidated financial statements set forth at pages F-46 to
F-48 herein.

Caution Concerning Forward-Looking Statements

This Annual Report on Form 10-K includes certain "forward-looking
statements" within the meaning of the Private Securities Litigation Reform
Act of 1995. These statements are based on management's current
expectations and are naturally subject to uncertainty and changes in
circumstances. Actual results may vary materially from the expectations
contained herein due to changes in economic, business, competitive,
technological and/or regulatory factors. More detailed information about
those factors is set forth on pages F-24 through F-26 herein. AOL Time
Warner is under no obligation to (and expressly disclaims any such
obligation to) update or alter its forward-looking statements whether as a
result of new information, future events or otherwise.

## AMERICA ONLINE

America Online, Inc., a wholly owned subsidiary of the Company based in
Dulles, Virginia, is the world's leader in interactive services, Web
properties, Internet technologies and electronic commerce services. America
Online's operations include: two worldwide Internet services, the AOL
service and the CompuServe service; America Online's music properties such
as AOL Music Channel and Winamp; AOL High Speed Broadband service; "AOL
Anywhere" services; and America Online's Web properties, such as Netscape,
Moviefone, MapQuest, AOL Instant Messenger and ICQ.

### The AOL Service

The flagship AOL service, a subscription-based service with 34 million
world-wide members at March 12, 2002, provides members with a global,
interactive community offering a wide variety of content, features and
tools. The range of content, features and tools offered on the AOL service
includes the following:

. Online Community--The AOL service promotes interactive community
through electronic mail services, message boards, the Buddy List
feature (for instant messaging), public and private "chat rooms,"
and "You've Got Pictures."

. Content--Content on the AOL service is organized in a variety of
ways for easy access by members, including channels, toolbar icons,
customization tools and Favorite Places, which allows members to
mark particular Web sites or AOL areas. Channels such as Autos,
Health, Local Guide, Sports, Travel,

2

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 25, 2002

-------------------------------------------------------------------------

Careers and Work, Personal Finance and News offer informational
content and commerce and community opportunities. Content on the
AOL service is both internally generated and provided by diverse
external sources, including CBS News, Time Inc., and Business Week.

. Customization and Control Features--Members can customize their
experience on the AOL service through features and tools, such as
Radio@AOL, a built-in radio service; AOL Box Office, a service that
enables members to order tickets for a variety of entertainment
events; an interactive calendar; customization of the Welcome
Screen; a reminder service; and mail controls. Parental controls
help parents form their children's online experience and include
tools that limit access to particular AOL areas, Web sites or to
certain features.

. Shopping--Shop@AOL channel allows members to shop for a wide variety
of products from retailers such as Nordstrom, Banana Republic,
Blockbuster and CompUSA, while remaining in the AOL service.
Shop@AOL's shopping tools and resources include a search function,
electronic shopping lists, and AOL's Quick Checkout "wallet." AOL
provides a customer satisfaction guarantee for all merchandise
purchased through an AOL Certified Merchant on Shop@AOL.

Members on the AOL service are charged subscription fees based on the level
of service selected by the member. The primary price plan for U.S. members
of the AOL service is an unlimited usage plan for $23.90 per month that
includes both the AOL service and dial-up telephone access to the Internet.
Members can also prepay on an annual basis at a lower rate or enroll in
limited usage plans that provide a limited number of hours of usage with
additional time charged at an hourly rate. Under the "Bring Your Own
Access" program, members with Internet access from other providers can
subscribe to the AOL service without Internet access at a lower monthly
price. Premium services available to members, such as certain of the AOL
Anywhere services described below and the AOL High Speed Broadband service
and features such as advanced games, are available at additional monthly
charges or rates based on usage.

AOL International

AOL International oversees the AOL and CompuServe services and operations
outside the United States. As of December 31, 2001, the AOL service had
nearly 8 million members outside the United States. America Online has
formed strategic alliances with strong local and regional partners to
provide its international services. The AOL, CompuServe and/or Netscape
branded services are offered through joint ventures or distribution
arrangements in Argentina, Australia, Brazil, Canada, Hong Kong, Japan,
Mexico and Puerto Rico. AOL Europe, S.A., a subsidiary of America Online,
provides these services to consumers in Austria, France, Germany, the
Netherlands, Switzerland, Sweden and the United Kingdom (U.K.). In each of
these countries, local language content, marketing and community are
offered. Members are able to access the U.S. and local country services in

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 25, 2002

over 100 countries. In addition, U.S. and global subscribers to AOL services can access selected content and communities offered on the other global AOL services.

In Europe, the services initially were offered through a joint venture with Bertelsmann AG. In January 2002, pursuant to a restructuring agreement entered into in March 2000, America Online purchased 80% of Bertelsmann's 49.5% interest in AOL Europe for $5.3 billion and will purchase its remaining interest in AOL Europe for $1.45 billion in July 2002. For further information on the restructuring, see Note 6, "AOL Europe," to the Company's consolidated financial statements set forth at pages F-48 and F-49 herein.

America Online continues to develop or enhance services in existing markets. In June 2001, America Online announced a joint venture with Legend Holdings Limited, the leading Chinese PC manufacturer and a provider of interactive services in China, to develop consumer interactive services for the Chinese market.

AOL Music

AOL Music offers a variety of programming, products and services that enable consumers to discover, listen to and buy music on the Web. AOL's music offerings include AOL's Music Channel; online radio products such as Radio@AOL; the Winamp audio jukebox player and SHOUTcast, a streaming audio service and Internet music directory.

3

---

AOL Broadband

America Online provides high-speed access to its members through its AOL High Speed Broadband service using broadband technologies such as cable, digital subscriber lines (DSL) and satellite. America Online has formed strategic alliances with Qwest Communications, BellSouth, Verizon Communications and SBC Communications to use DSL technology to make available a high-speed upgrade connection to subscribers and has an agreement with Hughes Electronic Corporation that provides for the delivery of the AOL High Speed Broadband service to members via Hughes' DirectPC satellite Internet network. As of December 31, 2001, the AOL High Speed Broadband service was available on the Time Warner Cable system in the cable company's 20 largest markets. In addition, members can also access the AOL High Speed Broadband service using their own broadband connection.

A feature of the AOL High Speed Broadband services is that members have "always on" access and do not have to dial an access number to begin each session. Members connecting to the AOL service through broadband technologies have access to expanded multimedia content, including streaming music and other audio, full- motion video, games and online catalogue shopping features. The AOL service can determine the bandwidth the member is using to access the AOL service and automatically makes the high speed content available to members connecting with high speed technologies.

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 25, 2002

AOL Anywhere

Under its "AOL Anywhere" strategy, America Online has taken steps to make
certain services, features and content of the AOL service and other
properties available through multiple connections and devices in addition
to personal computers, such as wireless telephones, hand-held and pocket
devices specialized Internet appliances and televisions.

The AOL Anywhere Web site (http://www.aol.com) offers AOL members content,
features and tools from the AOL service, including AOL Mail, AOL Search,
the AOL Instant Messenger service, My News, a personalized news service,
and My Calendar, a personalized calendar service. Other Internet users can
also access a number of the tools and features on the site.

The AOL Mobile services deliver a variety of the AOL service's features and
content to users of wireless devices, such as mobile phones, pagers and
other handheld devices. The content and services include wireless access to
e-mail, news, weather, sports and stock quotes, as well as content from
America Online's other properties. The AOL Mobile Communicator service
offers wireless access to e-mail and instant messaging using pager-sized
two-way wireless devices for an additional fee.

America Online also provides text entry solutions for wireless devices
through its subsidiary, Tegic Communications, Inc. Tegic's leading product,
the T9 Text Input software, enables individuals to send e-mail, short
messaging services and instant messages, as well as perform other
text-based functions and access the Internet, using the standard telephone
keypad to enter words or sentences.

AOLbyPhone allows subscribers to this service to access AOL services such
as e-mail, news, restaurant reviews and movie listings over the telephone
for an additional fee. During the past year, the service was upgraded to
provide new features such as e-mail voice response, which allows members to
respond to e-mails over the phone.

The AOLTV service allows subscribers to this service to watch television
using their existing signal and activate and simultaneously use a range of
additional interactive features, such as e-mail, instant messaging and
chat, utilizing a set-top box and a wireless keyboard or universal remote
control. AOLTV offers additional content provided by partners that
complements the television programming and a program guide that organizes
the television channels into different categories.

4

--------------------------------------------------------------------

CompuServe and Web Properties

America Online's Web properties serve as an online network of AOL brands on
the Internet, offering a variety of content and applications.

CompuServe

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 25, 2002

The CompuServe service, with approximately 3 million members at December
31, 2001, targets the value-oriented portion of the U.S. market and the
professional business-oriented market outside of the U.S. CompuServe's
Custom Solutions group seeks opportunities to develop and operate
co-branded and custom versions of the CompuServe software. This group
operates the Wal-Mart Connect Internet Service Provider and the Gateway.net
Internet portal site and offers private label Internet solutions for
strategic partners.

Members on the CompuServe service are charged subscription fees under
pricing plans based on the level of service selected by the member,
including an unlimited usage plan that can be paid monthly or annually in
advance, a lower monthly rate providing for up to a set number of hours
usage (with additional usage charged at an hourly rate) and a "Bring Your
Own Access" plan for members with Internet access from another provider.
Certain premium services are available on the CompuServe service at
additional fees.

Netscape.com

The Netscape portal (http://www.netscape.com) offers a variety of products
and services, including news, entertainment and information, opportunities
to purchase goods and services, Internet site directories, software,
software downloads, and product and technical support information. Almost
50 million users have registered with Netscape as of December 31, 2001.
Netscape's services also include search and navigation services, such as
SmartBrowsing; programming channels; communications and community services
such as e-mail and message board services; personalization services, and
opportunities for electronic commerce. Netscape also includes a co-branded
version of the AOL Instant Messenger service and local content. Netscape
Netbusiness (http://netbusiness.netscape.com/), an Internet site targeted
to owners of small businesses, offers easy-to-use and fully customizable
information resources, productivity and communications tools.

Netscape Browsers

The Netscape 6.2 browser, powered by Netscape's Gecko technology, allows
individual developers to tailor the browser software to their own use, and
it is designed to operate across multiple platforms so that it can be
deployed on a range of Internet devices and run on multiple computing
systems, including LINUX, Mac OS and Windows. Netscape also offers Netscape
Communicator, a suite of HTML-based client software that integrates
browsing, e-mail, Web-based word processing and group scheduling that
enables users to communicate, share and access information.

Moviefone

Moviefone is the largest movie guide and ticketing service in the United
States in terms of the number of users and tickets sold remotely. Through
its interactive telephone service (777-FILM), its online service
(Moviefone.com), and its wireless services, Moviefone provides millions of
moviegoers each week with a free directory of movies, show times and
theater locations, and also provides the ability to purchase tickets via
multiple devices and platforms for a per-ticket service charge.

MapQuest

MapQuest is a leader in destination solutions online for consumers and businesses worldwide. MapQuest provides customized maps, destination information and driving directions to consumers through its Web site (MapQuest.com) and its wireless partners. Through licensing agreements with more than 1,400 business partners,

5

------------------------------------------------------------------------

MapQuest helps businesses integrate maps and driving directions into their Internet, intranet and call center applications for improved marketing and customer service functions. Additionally, MapQuest provides offline map solutions for textbook and directory manufacturers and other businesses requiring more traditional mapping needs.

AOL Instant Messenger

AOL Instant Messenger is a Web-based communications service that allows Internet users to know when other users of the service are online and to send and receive instant messages in real time. AOL Instant Messenger had approximately 130 million registered users worldwide as of December 31, 2001. AOL Instant Messenger is free and available for downloading on the AOL Anywhere Web site and on America Online's other brands and services, on a co-branded basis, including the CompuServe service and Netscape. America Online has also developed co-branded versions of the AOL Instant Messenger service for numerous other companies.

ICQ

ICQ Ltd., is an Internet-based real-time communications service that utilizes the ICQ ("I seek you") instant communications and chat technology with a constant desktop presence. ICQ also has a Web site (ICQ.com) that offers community and content products and services. At December 31, 2001, ICQ had over 120 million registered users, approximately two-thirds of whom were outside the U.S.

Technologies

AOLnet

America Online employs a multiple vendor strategy in designing, structuring and operating the network services utilized in its interactive online services. AOLnet, a transfer control protocol/Internet protocol (TCP/IP) network of third-party network service providers, including Sprint Communications Company, Genuity Inc., WorldCom, Inc., Level 3 Communications and Qwest Communications International Inc., is used for the AOL service and certain versions of the CompuServe service in North America, including CompuServe 2000. America Online anticipates continuing to build AOLnet in order to increase its network capacity, provide members of its online services with higher speed access and reduce data network costs on a per-hour basis. As of December 31, 2001, the AOL service reached peak usage of almost 2.4 million simultaneous users and the exchange of approximately 368 million e-mail messages a day.

America Online enters into multiple-year data communications agreements to support AOLnet. In connection with those agreements, America Online may commit to purchase certain minimum data communications services or to pay a fixed cost for the network services. The expansion of AOLnet requires a substantial investment in telecommunications equipment. In addition to purchasing telecommunications equipment, America Online also enters into operating leases for the use of this equipment.

Service Platforms

America Online supports a variety of software platforms and conduits for access to the interactive services and Web-based properties. Today, the vast majority of members and users of interactive services access such services through personal computers. Operating systems on which the AOL and CompuServe services are available include primarily the Windows and Macintosh operating systems. America Online has also taken steps to adopt new technology and developments in the delivery of interactive services. AOLnet supports the v. 90 standard for high-speed access at 56 kps, and is continuing to invest in the development of alternative technologies to deliver its interactive online services, including cable modems, DSL access, satellite and wireless technologies (as discussed under "AOL Anywhere" and "AOL Broadband").

6



Advertising and Commerce

An important component of America Online's business strategy is deriving revenues from advertising and commerce sources and from the direct sale of merchandise to members and users, as well as from related sources such as transaction and licensing fees. America Online offers its advertising and commerce partners a variety of customized programs, which may include premier placement, sponsorship of particular content offerings for designated time periods, or the opportunity to target users with specified interests. America Online also sells selected merchants preferred rights to market particular goods or services within one or more of the online services and properties. In those arrangements, America Online provides its advertising and commerce partners certain marketing and promotional opportunities and in return receives cash payments, the opportunity for revenue sharing, cross-promotion, competitive pricing and online conveniences for subscribers.

During 2001, America Online expanded the scope, range and types of businesses involved in advertising and commerce relationships and as a result, many of its advertising and commerce contracts are now with industry leaders such as Coca-Cola, Kodak, Sears, General Motors and Citigroup. America Online frequently enters into advertising arrangements that encompass multiple services and properties within America Online. In addition, in 2001 AOL Time Warner started selling advertising and marketing programs through the Company's Global Marketing Solutions Group that allow major brands, such as Burger King, Motorola, DaimlerChrysler, Kraft and Kellogg's, to reach customers through a combination of the Company's print,

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 25, 2002

television and Internet media.

### Marketing

America Online utilizes a common marketing infrastructure for its multiple brands of interactive services and Web properties. To support its goals of attracting and retaining members or users, as applicable, and developing and differentiating the family of brands, America Online markets its products, services and brands through a broad array of programs and strategies, including broadcast television and radio advertising campaigns, direct mail, magazine inserts (including magazines published by the Company's publishing division) and advertisements, co-marketing, retail distribution, bundling agreements, Web advertising and alternate media. Other marketing strategies include extensive online and offline cross-promotion and co-branding with a wide variety of partners, promotional bundling programs with computer manufacturers pursuant to which consumers receive AOL subscriptions for a period of time in connection with their purchase of a computer, and the sale of bulk subscriptions at discounted rates to strategic partners for distribution to their employees. Additionally, through multi-year bundling agreements, the interactive online services and products are installed on a range of computers made by personal computer manufacturers and are available to consumers by clicking on an icon during the computer's initial setup process or on the desk top. America Online also utilizes targeted or limited promotions, marketing programs and pricing plans designed to appeal to particular groups of potential users of its interactive online services and to distinguish and develop its different brands.

### Competition

America Online competes for subscription revenues and members' usage with multiple companies providing Internet access, including online services such as the Microsoft Network and AT&T Worldnet, local and national Internet service providers such as Earthlink, cable Internet access providers, and telephone companies and other companies that provide Internet access among other services. It also competes more broadly for subscription revenues and members' usage with cable, information, entertainment and media companies. America Online competes for advertising and commerce revenues with a wide range of companies, including those that focus on the Internet, such as online services, Internet access companies, Web-based portals, and individual Web sites providing content, commerce, community and similar features, and media companies, such as those with newspaper or magazine publications, radio stations and broadcast stations or networks.

America Online faces competition in developing technologies and risks from potential new developments in distribution technologies and equipment in Internet access. In particular, America Online faces competition from

7

--------------------------------------------------------------------

developments in the following types of Internet access distribution technologies or equipment and must keep pace with these developments and also ensure that it either has comparable and compatible technology or

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 25, 2002

access to distribution technologies developed or owned by third parties:

. broadband distribution technologies used in cable Internet access
  services;

. advanced personal computer-based access services offered through
  DSL technologies offered by local telecommunications companies;

. other advanced digital services offered by satellite and wireless
  companies;

. television-based interactive services;

. personal digital assistants or handheld computers;

. enhanced mobile phones;

. other equipment offering functional equivalents to the AOL Anywhere
  services.

### CABLE

The Company's Cable business consists principally of interests in cable
television systems. Of the approximately 12.8 million subscribers served by
the Company at December 31, 2001, approximately 1.7 million are in systems
owned by TWI Cable Inc. ("TWI Cable"), a wholly owned subsidiary of the
Company, and approximately 11.1 million are in systems owned or managed by
TWE. TWE's cable systems include approximately 7 million subscribers in the
TWE-A/N joint venture; 1.1 million of these TWE-A/N subscribers are part of
the Texas Cable Partners 50-50 joint venture with AT&T. Time Warner Cable,
a division of TWE, generally manages all such systems and receives a fee
for management of the systems owned by TWI Cable and TWE-A/N. For
additional information with respect to TWE-A/N, see "Description of Certain
Provisions of the TWE-A/N Partnership Agreement" at pages 32 through 34
below, and Note 4, "Cable-Related Transactions and Investments," to the
Company's consolidated financial statements set forth at pages F-46 through
F-48 herein.

### Systems Operations

Time Warner Cable is one of the largest operators of cable television
systems in the United States with more than 91% of its customers served by
clustered cable systems with 100,000 subscribers or more. As of
December 31, 2001, Time Warner Cable had 36 distinct geographic system
groupings serving more than 100,000 subscribers. This clustering strategy
has enabled, among other things, significant cost and marketing
efficiencies, more effective pursuit of local and regional cable

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 25, 2002

advertisers, the development of local news channels, and the roll-out of advanced services over a geographically concentrated customer base.

Over the past several years, Time Warner Cable has pursued a strategy of upgrading its existing cable systems generally to 750 MHz capability, based on a hybrid fiber optic/coaxial cable architecture. By year-end 2001, Time Warner Cable had completed the upgrade of approximately 97% of its cable plant. Upgraded systems can deliver increased channel capacity and provide two-way transmission capability. Upgrading also permits Time Warner Cable to roll out new advanced services, including digital and high-definition television ("HDTV") programming, high-speed Internet service, video-on-demand (including subscription video-on-demand), telephony and other services. See "New Cable Services" below.

Franchises

Cable systems are constructed and operated under non-exclusive franchises granted by state or local governmental authorities. Franchises typically contain many conditions, such as time limitations on commencement or completion of construction; conditions of service, including number of channels; provision of

8

----------------------------------------------------------------------

free services to schools and other public institutions; and the maintenance of insurance and indemnity bonds. Cable franchises are subject to various federal, state and local regulations. See "Regulation and Legislation" below.

Programming

Programming is generally made available to customers through tiers, which are packages of different programming services provided for prescribed monthly fees. The available analog channel capacity of Time Warner Cable's systems has been expanding as system upgrades are completed. As Time Warner Cable rolls out digital services in its systems, the number of channels of video programming a customer may elect to receive are further increased such that over 150 video channels are available.

Video programming available to customers includes local and distant broadcast television stations, cable programming services like CNN, A&E and ESPN, and premium cable services like HBO, Showtime and Starz| The terms and conditions of carriage of programming services are generally established through affiliation agreements between the programmers and Time Warner Cable. Many programming services impose a monthly license fee per subscriber upon the cable operator. Programming costs generally have been increasing sharply in recent years and depending on the terms of a specific agreement, the cost of providing any cable programming service may continue to rise. Time Warner Cable sometimes has the right to cancel contracts and generally has the right not to renew them. In addition, Time Warner Cable may not always be able to renew contracts when it wishes to do so. It is unknown whether the loss of any one popular supplier would have a material adverse effect on Time Warner Cable's operations.

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 25, 2002

Cable Service Charges and Advertising

Subscribers to the Company's cable systems are charged monthly subscription
fees based on the level of service selected, which fees in some cases
include equipment charges. Subscription revenues account for most of Time
Warner Cable's revenues. A one-time installation fee is generally charged
for connecting subscribers to the cable television system. Although
regulation of certain cable programming rates ended in 1999, rates for
"basic" programming and for equipment and installation continue to be
regulated pursuant to federal law. See "Regulation and Legislation" below.

Subscribers may purchase premium programming services and, in certain
systems, other per-channel services, for an additional monthly fee for each
such service, with discounts generally available for the purchase of more
than one service. Subscribers may discontinue purchasing services at any
time. Pay-per-view programming offers movies and special events, such as
boxing, for a separate charge.

Time Warner Cable also generates revenue by selling advertising time to
national, regional and local businesses, including advertising by
programming vendors to promote their channel launches and cross-promotional
intercompany advertising by other AOL Time Warner segments. Cable
television operators receive an allocation of advertising time
availabilities on certain cable programming services into which commercials
can be inserted at the local system level. The clustering of Time Warner
Cable's systems expands the share of viewers that Time Warner Cable reaches
within a local DMA (Designated Market Area), which helps local ad sales
personnel to compete more effectively with broadcast and other media. In
addition, in many localities, contiguous cable system operators have formed
advertising interconnects to deliver locally inserted commercials across
wider geographic areas, replicating the reach of the broadcast stations as
much as possible. Sixteen of Time Warner Cable's 39 field divisions
participate in a local cable advertising interconnect.

Local News Channels

Time Warner Cable operates, alone or in partnerships, 24-hour local news
channels in New York City (NY1 News), Tampa Bay (Bay News 9), Orlando
(Central Florida News 13), Rochester, NY (R/News), and Austin (News 8
Austin). These channels have developed into successful vehicles for local
advertising. Preparations are underway to launch news channels in Houston,
San Antonio, Charlotte, Raleigh, Syracuse and Albany.

9

--------------------------------------------------------------------------

New Cable Services

Digital Cable Services

Digital Tier Service

During 2001, Time Warner Cable continued its aggressive roll-out of digital
cable service in its cable systems. As of December 31, 2001, Time Warner

# Excerpts from
# AOL Time Warner, Inc.
# 2002 Form 10K

# EXHIBIT C

**to**

**Motion for Leave to Amend the Original Complaint in**
***Rembrandt Technologies, LP v. Time Warner Cable, Inc.***
**Case No. 2:06cv224[TJW]**

9 of 13 DOCUMENTS

Copyright 2003 Disclosure Incorporated EDGARPlus(R)

COMPANY: AOL TIME WARNER INC TICKER: AOL EXCHANGE: NYS

FORM-TYPE: 10-K

DOCUMENT-DATE: December 31, 2002 FILING-DATE: March 28, 2003

Full text  Company info  Contents  Other  Return

* * * * * * * * * * * * * * * * TEXT OF FILING * * * * * * * * * * * * * * * *

Table of Contents

-------------------------------------------------------------------------
-------------------------------------------------------------------------

SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

---------------------

Form 10-K

---------------------

ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d)
OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2002

Commission file number 001-15062

---------------------

AOL TIME WARNER INC.
(Exact name of Registrant as specified in its charter)

Delaware                      13-4099534
(State or other jurisdiction of      (I.R.S. Employer
incorporation or organization)      Identification No.)

75 Rockefeller Plaza
New York, NY 10019
(Address of Principal Executive Offices)

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 28, 2003

(212) 484-8000
(Registrant's Telephone Number, Including Area Code)

---------------------

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
| --- | --- |
| Common Stock, $.01 par value | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act:
None

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months, and (2) has been subject to such filing requirements for the past 90 days. Yes x      No o

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. x

Indicate by check mark if the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2).     Yes x

As of the close of business on February 28, 2003, there were 4,312,505,667 shares of registrant's Common Stock and 171,185,826 shares of registrant's Series LMCN-V Common Stock outstanding. The aggregate market value of the registrant's voting securities held by non-affiliates of the registrant (based upon the closing price of such shares on the New York Stock Exchange on June 28, 2002) was approximately $61.24 billion.

Documents Incorporated by Reference:

| Description of document | Part of the Form 10-K |
| --- | --- |
| Portions of the Definitive Proxy Statement to be used in connection with the registrant's 2003 Annual Meeting of Stockholders | Part III (Item 10 through Item 13) |

-------------------------------------------------------------------
-------------------------------------------------------------------

-------------------------------------------------------------------

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 28, 2003

TABLE OF CONTENTS

PART I
AMERICA ONLINE
Web Properties and CompuServe
CABLE
FILMED ENTERTAINMENT
NETWORKS
MUSIC
PUBLISHING
REGULATION AND LEGISLATION
DESCRIPTION OF AGREEMENT WITH LIBERTY MEDIA CORPORATION
DESCRIPTION OF CERTAIN PROVISIONS OF THE TWE PARTNERSHIP AGREEMENT
DESCRIPTION OF CERTAIN PROVISIONS OF THE TWE-A/N PARTNERSHIP
AGREEMENT
DESCRIPTION OF CERTAIN PROVISIONS OF AGREEMENTS RELATED TO TWC INC.
CURRENCY RATES AND REGULATIONS
EMPLOYEES
  Item 2. Properties
  Item 4. Submission of Matters to a Vote of Security Holders.
EXECUTIVE OFFICERS OF THE COMPANY
PART II
PART III
PART IV
SIGNATURES
CERTIFICATIONS
INDEX TO CONSOLIDATED FINANCIAL STATEMENTS AND OTHER FINANCIAL
INFORMATION
EX-10.3 1994 STOCK OPTION PLAN
EX-10.4 CORPORATE GROUP STOCK INCENTIVE PLAN
EX-10.5 PUBLISHING GROUP STOCK INCENTIVE PLAN
EX-10.8 1999 STOCK PLAN
EX-10.9 INTERNATIONAL RESTRICTED STOCK PLAN
EX-10.10 1988 RESDTRICTED STOCK PLAN
EX-10.14 AMENDED & RESTATED EMPLOYMENT AGREEMENT
EX-10.19 AMENDMENT NO. 1 DEFERRED COMPENSATION
EX-10.20 AMENDMENT NO. 2 DEFERRED COMPENSATION
EX-10.22 EMPLOYMENT AGREEMENT
EX-10.27 AMENDED AND RESTATED EMPLOYMENT AGREEMENT
EX-10.28 EMPLOYMENT AGREEMENT
EX-21 SUBSIDIARIES OF THE REGISTRANT
EX-23 CONSENT OF ERNST & YOUNG LLP
EX-99.4 CERTIFICATION OF THE CEO AND CFO

-----------------------------------------------------------------------

Table of Contents

PART I

Item 1.   Business

    AOL Time Warner Inc. (the "Company" or "AOL Time Warner") is the

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 28, 2003

world's leading media and entertainment company. The Company was formed in connection with the merger of America Online, Inc. ("America Online") and Time Warner Inc. ("Time Warner"), which was consummated on January 11, 2001 (the "Merger" or the "AOL-Time Warner Merger"). As a result of the Merger, America Online and Time Warner each became wholly owned subsidiaries of AOL Time Warner.

The Company classifies its business interests into the following fundamental areas:

. America Online, consisting principally of interactive services, Web properties, Internet technologies and electronic commerce services;

. Cable, consisting principally of interests in cable television systems and high speed data services;

. Filmed Entertainment, consisting principally of interests in filmed entertainment and television production;

. Networks, consisting principally of interests in cable television and broadcast network programming;

. Music, consisting principally of interests in recorded music, music publishing, CD and DVD manufacturing and printing; and

. Publishing, consisting principally of interests in magazine publishing, book publishing and direct marketing.

The Company has announced that as part of its deleveraging initiatives, it is considering the sale of certain businesses or assets, including, but not necessarily limited to, the AOL Time Warner Book Group and sports teams. The Company cannot at this time predict which of such sales, if any, will be consummated, when any such sales will be completed or the terms of any such sales.

For convenience, the terms the "Registrant," "Company" and "AOL Time Warner" are used in this report to refer to both the parent company and collectively to the parent company and the subsidiaries through which its various businesses are conducted, unless the context otherwise requires.

TWE Restructuring

A significant portion of the Company's interests in its cable, networks and filmed entertainment businesses have been held through Time Warner Entertainment Company, L.P. ("TWE"), a limited partnership that was formed in 1992 in which two trusts, all of the beneficial interests of which are owned by a subsidiary of Comcast Corporation ("Comcast"), currently hold limited partnership interests. (All trusts formed by Comcast to hold its interests in TWE or Time Warner Cable Inc. will be hereinafter referred to as the "Comcast Trusts"). Among other things, TWE has owned Warner Bros., Home Box Office, a majority of The WB Network and a

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 28, 2003

significant portion of Time Warner Cable. In August 2002, the Company
entered into an agreement to restructure TWE with Comcast and AT&T Corp.
("AT&T"), which previously owned the TWE limited partnership interests. The
TWE restructuring (the "TWE Restructuring") is expected to be completed on
March 31, 2003.

The TWE Restructuring will result in the following: (i) AOL Time
Warner will acquire complete ownership of TWE's content assets (including
Warner Bros. and Home Box Office, which will become separate, wholly owned
subsidiaries of the Company); (ii) all of AOL Time Warner's directly-owned
cable television system interests will be contributed to a separate company
which will become a majority-owned subsidiary of AOL Time Warner and will
be renamed Time Warner Cable Inc. ("TWC Inc." or "TWC"); (iii) TWE will
become a subsidiary of TWC Inc. and will continue to own the cable
television system interests previously owned by it; (iv) Comcast will
receive $2.1 billion in cash and AOL Time Warner equity securities valued
at $1.5 billion; (v) a Comcast Trust will also retain a 21% economic
interest in the Company's cable business, through a 17.9% direct ownership
interest in TWC Inc. (representing a 10.7% voting interest) and a

1

--------------------------------------------------------------------------

Table of Contents

limited partnership interest in TWE representing a 4.7% residual equity
interest; and (vi) AOL Time Warner will retain an overall 79% economic
interest in the cable business, through an 82.1% ownership interest in TWC
Inc. (representing an 89.3% voting interest) and a partnership interest in
TWE representing a 1% residual equity interest and a $2.4 billion preferred
component. Subject to market and other conditions, AOL Time Warner expects
to complete an initial public offering of a portion of TWC Inc. common
stock during 2003. Following such public offering, TWC Inc.'s financial
results will continue to be consolidated with those of AOL Time Warner. For
additional information with respect to the TWE Restructuring, see
"Description of Certain Provisions of the TWE Partnership Agreement" at
pages 31 through 34 herein, Management's Discussion and Analysis of Results
of Operations and Financial Condition, "Investment in Time Warner
Entertainment Company, L.P." set forth at pages F-5 and F-6 herein and
Note 6, "Investment in TWE," to the Company's consolidated financial
statements set forth at pages F-88 to F-91 herein.

Restructuring of TWE-Advance/Newhouse Partnership and Road Runner

During 2002, TWE and Advance/Newhouse Partnership
("Advance/Newhouse") completed the restructuring of the partnership known
as the Time Warner Entertainment-Advance/Newhouse Partnership ("TWE-A/N").
As part of the TWE-A/N restructuring (the "TWE-A/N Restructuring"), cable
systems and their related assets and liabilities serving 2.1 million
subscribers as of December 31, 2002, located primarily in Florida (the "A/N
Systems"), were transferred to a subsidiary of TWE-A/N. Advance/Newhouse
has authority for the supervision of the day-to-day operations of the
subsidiary, subject to some exceptions requiring action by unanimous
consent, and TWE will continue to exercise various management functions,

including oversight of programming and certain engineering-related services. AOL Time Warner has deconsolidated the financial position and operating results of the A/N Systems for all periods. Under the new TWE-A/N Partnership Agreement, effective August 1, 2002, Advance/Newhouse's interest in TWE-A/N tracks only the economic performance of the A/N Systems, while AOL Time Warner retains the economic interests and associated liabilities in the remaining TWE-A/N cable systems.

Also, in connection with the TWE-A/N Restructuring, AOL Time Warner effectively acquired Advance/Newhouse's 17% interest in Road Runner, a high speed cable modem Internet service provider, thereby increasing the Company's ownership to approximately 82% on a fully attributed basis. As a result of the termination of Advance/Newhouse's minority rights in Road Runner, the Company has consolidated the financial position and results of operations of Road Runner with the financial position and results of operations of the Company's Cable segment, effective January 1, 2002. See Management's Discussion and Analysis of Results of Operations and Financial Condition, "Restructuring of the TWE-A/N and Road Runner Partnerships" set forth at pages F-6 and F-7 herein, and Note 4, "Cable-Related Transactions and Investments -- Restructuring of TWE-A/N and Road Runner Partnerships," to the Company's consolidated financial statements set forth at pages F-85 to F-87 herein.

For additional information with respect to TWE-A/N, See "Description of Certain Provisions of the TWE-A/N Partnership Agreement" at pages 34 through 36 herein.

Caution Concerning Forward-Looking Statements

This Annual Report on Form 10-K includes certain "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. These statements are based on management's current expectations and are subject to uncertainty and changes in circumstances. Actual results may vary materially from the expectations contained herein due to changes in economic, business, competitive, technological and/or regulatory factors. More detailed information about those factors is set forth on pages F-53 through F-58 herein. AOL Time Warner is under no obligation to (and expressly disclaims any such obligation to) update or alter its forward-looking statements, whether as a result of new information, subsequent events or otherwise.

2

-----------------------------------------------------------------------

Table of Contents

Available Information and Website

The Company's annual reports on Form 10-K, quarterly reports on Form 10-Q, current reports on Form 8-K and any amendments to such reports filed with or furnished to the Securities and Exchange Commission (SEC) pursuant to Sections 13(a) or 15(d) of the Securities Exchange Act are available free of charge on the Company's Web site at www.aoltimewarner.com as soon as reasonably practicable after

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 28, 2003

electronically filing such reports with the SEC.

## AMERICA ONLINE

America Online, Inc., a wholly owned subsidiary of the Company based in Dulles, Virginia, is the world's leader in interactive services, Web brands, Internet technologies and electronic commerce services. America Online's operations include: two worldwide Internet services, the AOL service and the CompuServe service; AOL for Broadband; America Online's music properties such as AOL Music Channel and Winamp; premium services such as MusicNet and AOL Call Alert; "AOL Mobile" services; and America Online's Web properties, such as AOL Instant Messenger, ICQ, Moviefone, MapQuest and Netscape.

### The AOL Service

The flagship AOL service, a subscription-based service with over 35 million world-wide members at December 31, 2002, provides members with a global, interactive community offering a wide variety of content, features and tools. The range of content, features and tools offered on the AOL service includes the following:

. Online Community -- The AOL service promotes interactive community through electronic mail services, message boards, the Buddy List feature (for instant messaging), public and private "chat rooms," interactive polling, AOL Hometown (personal home pages) and "You've Got Pictures."

. Content -- Content on the AOL service is organized in a variety of ways for easy access by members, including channels, toolbar icons, customization tools and Favorite Places, which allows members to mark particular Web sites or AOL areas. Channels such as Autos, Health, Local Guide, Sports, Travel, Careers and Work, Personal Finance and News offer informational content and commerce and community opportunities. AOL also provides members a service that notifies members online when tickets to pre-chosen entertainment events are available. Content on the AOL service is both internally generated and provided by diverse external sources. Part of AOL's strategy, announced in 2002, is to focus on the development of exclusive content from other AOL Time Warner divisions.

. Customization and Control Features -- Members can customize their experience on the AOL service through features and tools, such as Radio@AOL, a built-in radio service; an interactive calendar; customization of the Welcome Screen; an alerts and reminders service; and mail controls, including anti-spam features. Parental controls help parents form their children's online experience and include tools that limit access to particular AOL areas, Web sites or to certain features.

. Shopping -- Shop@AOL channel allows members to shop for a wide variety of products from various retailers, while remaining in the AOL service. Shop@AOL's shopping tools and resources include a search function, electronic shopping lists, and AOL's Quick Checkout

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 28, 2003

"wallet." AOL provides a customer satisfaction guarantee for all merchandise purchased through an AOL Certified Merchant on Shop@AOL.

. AOL Music -- AOL Music offers a variety of programming, products and services that enable consumers to discover, listen to and buy music online. AOL Music's properties include the AOL Music Channel; Web music features, including Netscape Music and AIM Today; the Winamp audio jukebox player and SHOUTcast, a streaming audio service and Internet music directory. AOL Music's franchise programming includes offerings like First Listen and First View, which allow AOL members to hear and watch world premiere songs and videos, as well as Sessions@AOL, an original music show featuring exclusive interviews and performances with artists representing a variety of music genres.

3

---

Table of Contents

Subscriber fees are charged to members of the AOL Service based on the level of service selected. The primary price plan for U.S. members of the AOL service is an unlimited usage plan for $23.90 per month that includes dial-up telephone access to both the AOL service and the Internet. Under the "Bring Your Own Access" plans, members with their own dial-up Internet access from other providers can subscribe to the AOL service at a reduced monthly price. Members can also pay for their access to the service using prepaid cards, which are available for purchase at various retailers. Additionally, America Online continues to test new price plans and payment methods.

Members of AOL may cancel their membership at any time, for any reason, by telephone, fax or mail. AOL utilizes a number of incentives and retention programs to encourage members to continue as members, as well as to bring back members who have recently canceled. In addition, AOL undertakes a wide range of marketing campaigns and promotions to attract new members. If the marketing campaigns decreased in intensity or effectiveness, the number of subscribers could be significantly affected.

America Online supports a variety of software platforms and conduits for access to its interactive services and Web-based properties. Today, the vast majority of members and users of interactive services access such services through personal computers. America Online has also taken steps to adopt new technology and developments in the delivery of interactive services.

AOL International

AOL International oversees the America Online services and operations outside the United States. As of December 31, 2002, the AOL service had 8.7 million members outside the United States, including 6.4 million in Europe. America Online has formed strategic alliances with strong local and

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 28, 2003

regional partners to provide its international services. The America Online services are offered through joint ventures or distribution arrangements in Argentina, Australia, Brazil, Canada, Japan, Mexico and Puerto Rico. AOL Europe, a business unit of America Online, markets these services to consumers in Austria, France, Germany, the Netherlands, Switzerland, and the United Kingdom (U.K.). In each of these countries, local language content, marketing and community are offered. Members are able to access the U.S. and local country services in over 100 countries.

AOL for Broadband

The AOL for Broadband service is available to members connecting to the AOL service through a high-speed broadband technology such as cable or digital services lines (DSL), either through a bundled service or through a "Bring Your Own Access" (BYOA) program. AOL for Broadband provides these members with expanded multimedia content, including streaming music, CD-quality radio and other audio, full-motion video, streaming news clips, movie trailers, games and online catalogue shopping features. As part of its business strategy, AOL is focusing on developing a broadband product with differentiated and exclusive content. A feature of broadband connections is that the members have "always on" access and do not have to dial an access number to begin each session. The AOL service can determine the bandwidth members are using to access the AOL service and automatically provides the broadband content to members connecting with broadband technologies, including members on standard dial-up plans.

To provide its bundled broadband service, America Online has formed strategic alliances with Qwest Communications, BellSouth, Verizon Communications, SBC Communications and Covad Communications Group to use DSL technology to make available a high speed connection to subscribers. AOL also provides its bundled broadband service through cable providers. As of December 31, 2002, the AOL for Broadband service was available on the Time Warner Cable system in the cable company's 39 largest divisions. AOL also reached an agreement with Comcast in 2002 to offer AOL for Broadband to Comcast cable users in certain geographic areas beginning in 2003.

In addition to purchasing AOL's bundled broadband services, members can also access the AOL for Broadband service using their own broadband connection (AOL for Broadband BYOA). Under this plan, members pay a monthly fee of $14.95, which allows them unlimited time on the AOL service via another provider's broadband connection, and includes a limited number of hours of dial-up access.

4

-------------------------------------------------------------------

Table of Contents

Premium Services

AOL has introduced a variety of premium services to its members, including AOLbyPhone, which allows members to access AOL services over the telephone, AOL Call Alert, an online call waiting service that lets members know, through a real-time alert on their computer screen, who is calling while they are online, and MusicNet, an online music subscription service. In March 2003, AOL announced the launch of AOL Voicemail, a service that allows members to listen to voicemail messages on their computer and e-mail messages on their phone. A key element of AOL's business strategy, these services, as well as the advanced games feature, are available at additional monthly charges or rates based on usage. Additional premium services, such as virus protection, are being reviewed for possible introduction in 2003.


AOL Mobile and Other Services


AOL Mobile services deliver a variety of the AOL service's features and content to users of wireless devices, such as mobile phones, PDAs, and other handheld devices. The content and services include wireless access to email, news, weather, sports and stock quotes, as well as content from America Online's other properties. AOL Instant Messenger and ICQ, two of America Online's messaging products, are also available on a variety of wireless devices.

America Online also provides text entry solutions for wireless devices through its subsidiary, Tegic Communications, Inc. Tegic's leading product, the T9 Text Input software, enables individuals to send e-mail, short messaging services and instant messages, as well as perform other text-based functions and access the Internet, using the standard telephone keypad to enter words or sentences.

The AOL Anywhere Web site (AOL.com) offers members AOL content and features, including email, AOL Instant Messenger, and personalized news and calendar services, when they are able to access the Internet, but not their AOL service.

Web Properties and CompuServe


Web Properties


America Online's Web properties serve as an online network of AOL brands on the Internet, offering a variety of content and applications.

AOL Instant Messenger is a Web-based communications service that allows Internet users to know when other users of the service are online and to send and receive instant messages in real time. ICQ Ltd. is an Internet-based real-time communications service that utilizes the ICQ ("I seek you") instant communications and chat technology with a constant desktop presence. Approximately two-thirds of ICQ users reside outside the Unites States.

Moviefone is one of the leading movie guide and ticketing services in

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 28, 2003

the United States. Through its interactive telephone service (777-FILM), its online service (Moviefone.com), and its wireless services, Moviefone provides moviegoers with a weekly, free directory of movies, show times and theater locations, and also provides the ability to purchase tickets for a per-ticket service charge.

MapQuest provides customized maps, destination information and driving directions to consumers through its Web site (MapQuest.com) and its wireless partners. Through licensing agreements, MapQuest helps businesses integrate maps and driving directions into their Internet, intranet and call center applications.

The Netscape portal (Netscape.com) offers a variety of products and services, including search services, Web-based e-mail, instant messaging and message boards, programming channels and opportunities for electronic commerce. Netscape Netbusiness (netbusiness.netscape.com/), an Internet site targeted to owners of small businesses, offers customizable information resources, productivity and communications tools. Netscape 7.02 is the latest Netscape browser suite. Powered by Netscape's Gecko technology, Netscape 7.02 allows individual developers to tailor the browser software to their own use and runs on multiple operating systems, including LINUX, Mac OS and Windows.

5

-----------------------------------------------------------------------

Table of Contents

CompuServe

The CompuServe service targets value-oriented Internet service consumers in the U.S. and professional business-oriented consumers outside of the U.S. Additionally, CompuServe's Custom Solutions group seeks opportunities to develop and operate co-branded and custom versions of the CompuServe service. This group operates the Wal-Mart Connect Internet Service Provider and offers private label Internet solutions for strategic partners, such as Hewlett-Packard. Subscriber fees are charged to CompuServe members based on the level of service selected, including an unlimited usage plan, a lower monthly rate providing for a set number of hours usage (with additional usage charged at an hourly rate) and a "Bring Your Own Access" plan for members with Internet access from another provider.

Technologies

America Online employs a multiple vendor strategy in designing, structuring and operating the network services utilized in its interactive online services. AOLnet, a transfer control protocol/Internet protocol (TCP/IP) network of third-party network service providers, is used for the AOL service and certain versions of the CompuServe service in North America. America Online anticipates continuing to review its network services in order to align its network capacity, provide members of its

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 28, 2003

online services with higher speed access and manage data network costs.

In 2002, AOL experienced significant growth in the AOL Transit Data Network (ATDN), the domestic and international network that connects AOL, CompuServe 2000 and Time Warner Cable high speed data customers to the Internet. The ATDN functions as the conduit between all of AOL Time Warner's content and the Internet, linking together facilities on four continents, with its greatest capacity in the U.S. and Europe. The ATDN Internet backbone is built from high-end routers and high-bandwidth circuits purchased under long-term agreements from third party carriers.

America Online enters into multiple-year data communications agreements to support AOLnet. In connection with those agreements, America Online may commit to purchase certain minimum data communications services or to pay a fixed cost for the network services. Improving and maintaining AOLnet requires a substantial investment in telecommunications equipment. In addition to making cash purchases of telecommunications equipment, America Online also finances purchases of this equipment by entering into capital leases for such equipment.

### Advertising and Commerce

A component of America Online's business strategy is earning revenues from advertising and commerce sources and from the direct sale of merchandise to members and users, as well as from related sources such as transaction and licensing fees. America Online offers its advertising and commerce partners a variety of customized programs, which may include premier placement, sponsorship of particular content offerings for designated time periods, or the opportunity to target users with specified interests. America Online also sells selected merchants preferred rights to market particular goods or services within one or more of the online services and properties. In those arrangements, America Online provides its advertising and commerce partners certain marketing and promotional opportunities and in return receives cash payments, the opportunity for revenue sharing, cross-promotion, competitive pricing and online conveniences for subscribers.

### Marketing

America Online utilizes a common marketing infrastructure for its multiple brands of interactive services and Web properties. To support its goals of attracting and retaining members or users, as applicable, and developing and differentiating the family of brands, America Online markets its products, services and brands through a broad array of programs and strategies, including broadcast television and radio advertising campaigns, direct mail, magazine inserts (including magazines published by the Company's publishing division) and print advertisements, retail distribution, bundling agreements, Web advertising and alternate

6

-----------------------------------------------------------------------

Table of Contents

media. Other marketing strategies include extensive online and offline cross-promotion and co-branding with a wide variety of partners and the sale of bulk subscriptions at discounted rates to strategic partners for distribution to their employees. Additionally, through multi-year bundling agreements, the interactive online services and products are installed on a range of computers made by personal computer manufacturers and are available to consumers by clicking on an icon during the computer's initial setup process or on the desktop. America Online also utilizes targeted or limited online and offline promotions, marketing programs and pricing plans designed to appeal to particular groups of potential users of its interactive online services and to distinguish and develop its different brands, products and services.

### Competition

America Online competes for subscription revenues and members' usage with multiple companies providing Internet services, such as the Microsoft Network, Earthlink and AT&T Worldnet, and discount Internet service providers such as NetZero. America Online also competes with companies that provide Internet access via narrowband and broadband technologies, such as Internet access providers, cable companies and telephone companies. Like America Online, other companies, such as Microsoft, offer broadband services to consumers, both as a bundled product and a BYOA product. America Online also competes more broadly for subscription revenues and members' time with cable, information, entertainment and media companies. America Online competes for advertising and commerce revenues with a wide range of companies, including those that focus on the Internet, such as online services, Internet access companies, Web-based portals, and individual Web sites providing content, commerce, community and similar features, and media companies, such as those with newspaper or magazine publications, radio stations and broadcast stations or networks.

America Online faces competition in developing technologies and risks from potential new developments in distribution technologies and equipment in Internet access. In particular, America Online faces competition from developments in the following types of Internet access distribution technologies or equipment and must keep pace with these developments and also ensure that it either has comparable and compatible technology or access to distribution technologies developed or owned by third parties: broadband distribution technologies used in cable Internet access services; advanced personal computer-based access services offered through DSL technologies offered by local telecommunications companies; other advanced digital services offered by wireless companies; television-based interactive services; personal digital assistants or handheld computers; enhanced mobile phones; and other equipment offering functional equivalents to the AOL Mobile services.

### CABLE

The Company's Cable business consists principally of interests in cable television systems that provide video programming and high speed data services to customers under the name Time Warner Cable. As a result of the TWE Restructuring which is expected to be completed on March 31, 2003, Time Warner Cable Inc. ("TWC Inc."), will become an 82.1%-owned subsidiary of the Company and will own or manage all of the Company's cable television

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 28, 2003

systems. Of the 10.9 million basic subscribers served by the Company at December 31, 2002, 1.7 million are in systems that will be owned by TWC Inc. directly or through wholly owned subsidiaries and 9.2 million are in systems that will continue to be owned or managed by TWE or TWE-A/N. Following the TWE Restructuring, TWE will become a 94.3%-owned subsidiary of TWC Inc. (with the Company holding a partnership interest in TWE representing a 1% residual equity interest and a $2.4 billion preferred component). All of these systems will continue to provide services under the Time Warner Cable brand name.

As a result of the TWE-A/N Restructuring, which was completed on December 31, 2002, cable systems which served 2.1 million subscribers, primarily located in Florida, were transferred to a subsidiary of TWE-A/N, and Advance/Newhouse's interest in TWE-A/N was converted into an interest that tracks the economic performance of these A/N Systems. Advance/Newhouse has authority for supervision of the day-to-day operations of the subsidiary, subject to some exceptions, including limitations on the incurrence of indebtedness, and TWE will continue to exercise various management functions, including oversight of

7

----------------------------------------------------------------------

Table of Contents

programming and certain engineering-related matters. Time Warner Cable oversees the management of, and retains the economic interests and associated liabilities in, the remaining systems owned by TWE-A/N. AOL Time Warner has deconsolidated the financial position and operating results of the A/N Systems for all periods.

Time Warner Cable's cable systems include systems serving 1.2 million subscribers that are part of Texas Cable Partners ("TCP"), a 50-50 joint venture between Comcast and TWE-A/N, and systems serving 306,000 subscribers that are part of Kansas City Cable Partners ("KCCP"), a 50-50 joint venture between Comcast and TWE. The Company's investments in these joint ventures are accounted for using the equity method. TWE receives a fee for managing the TCP and KCCP systems.

For additional information with respect to the TWE and TWE-A/N restructurings, see Management's Discussion and Analysis of Results of Operations and Financial Condition, "Restructuring of the TWE-A/N and Road Runner Partnerships" set forth at pages F-6 and F-7 herein, and Note 4, "Cable-Related Transactions and Investments -- Restructuring of TWE-A/N and Road Runner Partnerships," to the Company's consolidated financial statements set forth at pages F-85 through F-87 herein.

Systems Operations

Time Warner Cable is the second largest operator of cable television systems in the United States. As of December 31, 2002, cable systems owned or managed by Time Warner Cable passed approximately 18.5 million homes, and provided basic cable service to 10.9 million subscribers and high speed data services to 2.5 million residential and commercial subscribers. Time

Warner Cable operates large clustered and technologically advanced cable systems. As of December 31, 2002, more than 73% of its subscribers were in 19 geographic clusters, each serving more than 300,000 subscribers, and approximately 99% of its cable systems were capable of carrying two-way broadband services, with approximately 97% having been upgraded to 750MHz or higher. Time Warner Cable is an industry leader in developing and rolling-out new products and services, such as video-on-demand, subscription video-on-demand, high-definition television, home networking and set-top boxes with integrated digital video recorders. See "Advanced Cable Services" below.

Franchises

Cable systems are constructed and operated under non-exclusive franchises granted by state or local governmental authorities. Franchises typically contain many conditions, such as time limitations on commencement or completion of construction; service requirements, including number of channels; provision of free services to schools and other public institutions; and the maintenance of insurance and indemnity bonds. Cable franchises are subject to various federal, state and local regulations. See "Regulation and Legislation" below.

Video Programming

Video programming is generally made available to customers through packages of different programming services provided for prescribed monthly fees. The available analog channel capacity of Time Warner Cable's systems has expanded as system upgrades are completed, with most systems offering around 70 analog channels. Customers receiving Time Warner Cable's digital services may elect to receive up to 150 video and audio channels, including expanded pay-per-view and premium channel options as well as other programming products.

Video programming available to customers includes local and distant broadcast television stations, cable programming services like CNN, A&E and ESPN, and premium cable services like HBO, Showtime and Starz| The terms and conditions of carriage of programming services are generally established through affiliation agreements between the programmers and Time Warner Cable. Most programming services impose a monthly license fee per subscriber upon the cable operator and these fees typically increase over time. Time Warner Cable's programming costs have risen in recent years, see Management's Discussion and Analysis of Results of Operations, "Business Segment Results -- Cable". Time Warner Cable sometimes has the right to

8

--------------------------------------------------------------------------

Table of Contents

cancel contracts and generally has the right not to renew them. Time Warner Cable may not always be able to renew contracts when it wishes to do so. Time Warner Cable also must periodically obtain retransmission consent for permission to carry local broadcast stations that have so elected. Time Warner Cable cannot be assured that each station will grant such consent on

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 28, 2003

reasonable terms. It is unknown whether the loss of any one popular
supplier would have a material adverse effect on Time Warner Cable's
operations.

Video Programming Charges and Advertising

Video subscribers to the Company's cable systems are typically
charged monthly subscription fees based on the level of service selected
and, in some cases, equipment usage fees. Subscription revenues account for
most of Time Warner Cable's revenues. Although regulation of certain cable
programming rates ended in 1999, rates for "basic" programming as well as
for equipment rentals and installation services continue to be subject to
regulation pursuant to federal law. See "Regulation and Legislation" below.

Video subscribers may also elect to receive premium channels for an
additional monthly fee with discounts generally available for the purchase
of packages of more than one premium service. Pay-per-view movies and
special events are charged on a per-view basis.

Time Warner Cable also generates revenue by selling advertising time
to a variety of national, regional and local businesses. Cable television
operators receive an allocation of scheduled advertising time on certain
cable programming services into which the operator can insert commercials.
The clustering of Time Warner Cable's systems expands the share of viewers
that Time Warner Cable reaches within a local DMA (Designated Market Area),
which helps local ad sales personnel to compete more effectively with
broadcast and other media. In addition, in many locations, contiguous cable
system operators have formed advertising interconnects to deliver locally
inserted commercials across wider geographic areas, replicating the reach
of the broadcast stations as much as possible. As of December 31, 2002, 15
of Time Warner Cable's 34 divisions participated in local cable advertising
interconnects.

A portion of Time Warner Cable's advertising revenues come from sales
to other AOL Time Warner segments and from sales to programming vendors in
support of their channel launches. For the past two years, these sales to
programming vendors have represented a substantial portion of Time Warner
Cable's total advertising revenues. However, these advertising revenues
have decreased in recent periods as the number of new programming service
launches has declined. The Company expects this trend to continue and
expects sales of advertising to other AOL Time Warner segments to decline
significantly in 2003. See Management's Discussion and Analysis of Results
of Operations and Financial Condition, "Business Segment Results -- Cable."

Local News Channels

Time Warner Cable operates, alone or in partnerships, 24-hour local
news channels in New York City (NY1 News), Albany, NY (News 9 Albany),
Rochester, NY (R/News), Charlotte and Raleigh, NC (Carolina News 14),
Austin (News 8 Austin) and Houston, TX (News 24 Houston). These channels
have developed into attractive vehicles for local advertising and provide

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 28, 2003

Time Warner Cable with an important connection to the communities in which
the channels operate. Preparations are underway to launch news channels in
San Antonio, TX and Syracuse, NY.

Advanced Cable Services

Digital Programming Services

Digital Video Service

As of December 31, 2002, Time Warner Cable had more than 3.7 million
digital service subscribers and all of Time Warner Cable's 34 divisions
were upgraded to accommodate digital cable. Digital subscribers receive
significantly expanded cable network options, CD-quality audio music
services, more pay-per-view choices, more channels of multiplexed premium
services and other features such as enhanced parental control

9

-----------------------------------------------------------------------

Table of Contents

options. The digital set-top boxes delivered to subscribing customers also
offers a digital interactive program guide and access to Time Warner
Cable's video on demand offerings.

On Demand Services

As of December 31, 2002, Time Warner Cable offered video on demand
services in 32 of its 34 divisions. Video on demand enables digital
subscribers to instantaneously purchase movies and other programming, and
to utilize VCR-like functions (such as pause, rewind and fast-forward)
while watching these programs. Subscribers are charged for video on demand
on a per-use basis.

As of December 31, 2002, Time Warner Cable offered subscription video
on demand in 32 of its 34 divisions. Subscription video on demand provides
digital customers the ability to view an array of content associated with a
particular content provider. Subscription video on demand uses the same
technology and offers the same features as video on demand, but subscriber
access is charged on a monthly rather than a per-use basis. Subscription
video on demand is currently offered in connection with premium channels
such as HBO and it is expected that other programming will be available
over time.

HDTV

# Excerpts from
# Time Warner, Inc.
# 2003 Form 10K

# EXHIBIT D

## to

**Motion for Leave to Amend the Original Complaint in**
***Rembrandt Technologies, LP v. Time Warner Cable, Inc.***
**Case No. 2:06cv224[TJW]**

8 of 13 DOCUMENTS

Copyright 2004 Disclosure Incorporated EDGARPlus(R)

COMPANY: TIME WARNER INC NEW CROSS-REFERENCE: AOL TIME WARNER INC TICKER: TWX EXCHANGE: NYS

FORM-TYPE: 10-K

DOCUMENT-DATE: December 31, 2003 FILING-DATE: March 15, 2004

Full text  Company info  Contents  Other  Return

* * * * * * * * * * * * * * * * TEXT OF FILING * * * * * * * * * * * * * * * *

----------------------------------------------------------------------------

UNITED STATESSECURITIES AND EXCHANGE COMMISSIONWashington, D.C. 20549

Form 10-K

 ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d)OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2003

Commission file number 001-15062

TIME WARNER INC.(Exact name of Registrant as specified in its charter)

Delaware          13-4099534
(State or other jurisdiction of  (I.R.S. Employer
incorporation or organization)  Identification No.)

One Time Warner CenterNew York, NY 10019(Address of Principal Executive Offices)

(212) 484-8000(Registrant's Telephone Number, Including Area Code)

Securities registered pursuant to Section 12(b) of the Act:

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 15, 2004

```
                     Name of each exchange
    Title of each class       on which registered
```

--------------------------- ------------------------
Common Stock, $.01 par value New York Stock Exchange


Securities registered pursuant to Section 12(g) of the Act:None

   Indicate by check mark whether the registrant (1) has filed all reports
required to be filed by Section 13 or 15(d) of the Securities Exchange Act of
1934 during the preceding 12 months, and (2) has been subject to such filing
requirements for the past 90 days. Yes x       No o

   Indicate by check mark if disclosure of delinquent filers pursuant to Item
405 of Regulation S-K is not contained herein, and will not be contained, to
the best of registrant's knowledge, in definitive proxy or information
statements incorporated by reference in Part III of this Form 10-K or any
amendment to this Form 10-K. o

   Indicate by check mark if the registrant is an accelerated filer (as
defined in Exchange Act Rule 12b-2). Yes x

   As of the close of business on February 29, 2004, there were 4,381,685,546
shares of the registrant's Common Stock and 171,185,826 shares of the
registrant's Series LMCN-V Common Stock outstanding. The aggregate market value
of the registrant's voting and non-voting common equity securities held by
non-affiliates of the registrant (based upon the closing price of such shares
on the New York Stock Exchange on June 30, 2003) was approximately $72.30
billion.

              Documents Incorporated by Reference:


       Description of document          Part of the Form 10-K

-------------------------------------------- -----------------------------------------
Portions of the definitive Proxy Statement to be   Part III (Item 10 through Item 14)
used in connection with the registrant's 2004       (Portions of Items 10 and 12 are not
Annual Meeting of Stockholders                      incorporated by
                                   reference and are provided herein;
                                   portions of Item 11
                                   are not incorporated by reference and
                                   are provided in
                                   the registrant's definitive Proxy
                                   Statement)
```

-----------------------------------------------------------------------------

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 15, 2004

PART I

Item 1. Business.

Time Warner Inc. (the "Company" or "Time Warner") is a leading media and entertainment company. The Company was formed in connection with the merger of America Online, Inc. ("America Online") and Time Warner Inc., now known as Historic TW Inc. ("Historic TW"), which was consummated on January 11, 2001 (the "Merger" or the "America Online-Historic TW Merger"). The Company changed its name from AOL Time Warner Inc. to Time Warner Inc. on October 16, 2003.

The Company classifies its businesses into the following fundamental areas:

America Online, consisting principally of interactive services;
Cable, consisting principally of interests in cable systems providing video and high speed data services;
Filmed Entertainment, consisting principally of feature film, television and home video production and distribution;
Networks, consisting principally of cable television and broadcast networks; and
Publishing, consisting principally of magazine and book publishing.

At March 2, 2004, the Company had a total of approximately 80,000 active employees.

For convenience, the terms the "Registrant," "Company" and "Time Warner" are used in this report to refer to both the parent company and collectively to the parent company and the subsidiaries through which its various businesses are conducted, unless the context otherwise requires.

Asset Sales

In conjunction with the Company's debt reduction program announced in January 2003, during 2003 and the first quarter of 2004, the Company sold certain of its businesses and non-strategic assets, including all of the Warner Music recorded music, music publishing and CD and DVD manufacturing businesses, the Time Life Inc. direct marketing business, the Company's 50%-interest in Comedy Central and its interest in Hughes Electronics Corporation. The Company also expects to complete the sale of its winter sports teams prior to the end of the first quarter of 2004.

TWE Restructuring

On March 31, 2003, the Company completed the restructuring (the "TWE Restructuring") of Time Warner Entertainment Company, L.P. ("TWE"), a limited partnership which formerly held a substantial portion of the Company's filmed entertainment and cable television assets. Prior to the TWE Restructuring, subsidiaries of Comcast Corporation ("Comcast") held a 27.64% limited partnership interest in TWE.

As a result of the TWE Restructuring, Time Warner acquired complete ownership of TWE's content businesses, including Warner Bros., Home Box Office and TWE's interests in The WB Television Network and Courtroom Television Network ("Court TV"). Additionally, all of Time Warner's interests in cable, including those that were wholly owned and those that were held through TWE, are now controlled by a new subsidiary of Time Warner called Time Warner Cable Inc. ("TWC Inc." or "TWC"). As part of the TWE Restructuring, Time Warner received a 79% economic interest in TWC Inc.'s cable systems and TWE, which continues to own the cable system interests previously owned by it, became a subsidiary of TWC Inc. In exchange for its previous stake in TWE, Comcast (i) received Time Warner preferred stock which will be converted into $1.5 billion of Time Warner common stock; (ii) received a 21.0% economic interest in TWC Inc.'s cable systems; and (iii) was relieved of $2.1 billion of pre-existing debt which was incurred by TWC Inc. as part of the TWE Restructuring. Comcast's 21.0% economic interest in TWC Inc.'s cable business is held through a 17.9% direct common ownership interest in TWC Inc. (representing a 10.7% voting interest) and a limited partnership interest in TWE representing a 4.7% residual equity interest. Time Warner's 79%

1

economic interest in TWC Inc.'s cable business is held through an 82.1% common ownership interest in TWC Inc. (representing an 89.3% voting interest) and a partnership interest in TWE representing a 1% residual equity interest. Time Warner also holds a $2.4 billion mandatorily redeemable preferred equity interest in TWE. For additional information with respect to the TWE Restructuring, see "Description of Certain Provisions of the TWE Partnership Agreement" herein.

On December 29, 2003, TWC Inc. received a notice from Comcast requesting that TWC Inc. start the registration process under the Securities Act of 1933 for the sale in a firm underwritten offering of Comcast's 17.9% common interest in TWC Inc. The notice was delivered pursuant to a registration rights agreement related to the TWC Inc. securities. The Company cannot predict the timing of an effective registration in response to the notice. For additional information with respect to TWC Inc., see "Description of Certain Provisions of Agreements related to TWC Inc." herein.

Restructuring of TWE-Advance/Newhouse Partnership and Road Runner

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 15, 2004

During 2002, TWE and Advance/Newhouse Partnership ("Advance/Newhouse") completed the restructuring of the general partnership known as the Time Warner Entertainment-Advance/Newhouse Partnership ("TWE-A/N"). As a result of the restructuring (the "TWE-A/N Restructuring"), cable systems serving 2.1 million basic video subscribers (the "A/N Systems"), primarily located in Florida, were transferred to a subsidiary of TWE-A/N, and Advance/Newhouse's interest in TWE-A/N was converted into an interest that tracks the economic performance of these A/N Systems. Advance/Newhouse has authority for supervision of the day-to-day operations of the A/N Systems. Time Warner has deconsolidated the financial position and operating results of the A/N Systems for all periods.

Also, in connection with the TWE-A/N Restructuring, Time Warner effectively acquired Advance/Newhouse's 17% interest in Road Runner, a high speed cable modem Internet service provider, thereby increasing the Company's ownership to approximately 82% on a fully attributed basis.

Caution Concerning Forward-Looking Statements

This Annual Report on Form 10-K includes certain "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. These statements are based on management's current expectations and are subject to uncertainty and changes in circumstances. Actual results may vary materially from the expectations contained herein due to changes in economic, business, competitive, technological and/or regulatory factors. More detailed information about those factors is set forth in Management's Discussion and Analysis of Results of Operations and Financial Condition in the financial pages herein. Time Warner is under no obligation to (and expressly disclaims any such obligation to) update or alter its forward-looking statements, whether as a result of new information, subsequent events or otherwise.

Available Information and Website

The Company's annual reports on Form 10-K, quarterly reports on Form 10-Q, current reports on Form 8-K and any amendments to such reports filed with or furnished to the Securities and Exchange Commission (SEC) pursuant to Sections 13(a) or 15(d) of the Securities Exchange Act are available free of charge on the Company's website at www.timewarner.com as soon as reasonably practicable after such reports are electronically filed with the SEC.

2

AMERICA ONLINE

America Online, Inc., a wholly owned subsidiary of the Company based in

enhanced mobile phones; and other equipment offering functional equivalents to the AOL Mobile services. America Online must keep pace with these developments and also ensure that it either has comparable and compatible technology or access to distribution technologies developed or owned by third parties.

CABLE

The Company's Cable business consists principally of interests in cable systems that provide video programming and high speed data services to customers under the name Time Warner Cable. As a result of the TWE Restructuring completed on March 31, 2003, Time Warner Cable Inc. ("TWC Inc.") became an 82.1%-owned subsidiary of the Company. Of the 10.9 million basic video subscribers served by the Company at December 31, 2003, 1.6 million are in systems owned by TWC Inc. directly or through wholly-owned subsidiaries and 9.3 million are in systems that are owned or managed by TWC Inc.'s joint ventures and partnerships, which include TWE and TWE-A/N, among others. As a result of the TWE Restructuring, TWE became a 94.3%-owned subsidiary of TWC Inc. (with the Company holding a partnership interest in TWE representing a 1% residual equity interest and a $2.4 billion preferred component). All of these systems provide services under the Time Warner Cable brand name.

As a result of the TWE-A/N Restructuring in 2002, cable systems serving 2.1 million basic video subscribers (the "A/N Systems"), primarily located in Florida, were transferred to a subsidiary of TWE-A/N, and Advance/Newhouse's interest in TWE-A/N was converted into an interest that tracks the economic performance of these A/N Systems. Advance/Newhouse has authority for supervision of the day-to-day operations of the A/N Systems. Time Warner has deconsolidated the financial position and operating results of the A/N Systems for all periods and has presented these as a part of discontinued operations.

On December 1, 2003, the Company announced that Time Warner Cable would restructure two joint ventures that it manages, Kansas City Cable Partners, a 50-50 joint venture between Comcast and TWE serving approximately 304,000 basic video subscribers as of December 31, 2003, and Texas Cable Partners, a 50-50 joint venture between Comcast and TWE-A/N serving approximately 1.2 million basic video subscribers as of December 31, 2003. The Company accounts for its investment in these joint ventures using the equity method. Under the restructuring, completion of which is subject to customary conditions (including receipt of applicable regulatory approvals), Kansas City Cable Partners will be merged into Texas Cable Partners and renamed "Texas and Kansas City Cable Partners, L.P." Following the restructuring, the combined partnership will be owned 50% by Comcast, and 50% by TWE and TWE-A/N collectively. Beginning any time after the later of June 1, 2006 and the two-year anniversary of the closing of the restructuring, either Time Warner Cable or Comcast can trigger a dissolution of the partnership. If a dissolution is triggered, the non-triggering party has the right to choose and take full ownership of one of two pools of the combined partnership's systems -- one pool consisting of the Houston systems and the other consisting of the Kansas City and south Texas systems -- with an arrangement to distribute the partnership's

7

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 15, 2004

debt between the two pools. The party triggering the restructuring would own
the remaining pool of systems and any debt associated with that pool.

Systems Operations

Time Warner Cable is the second largest operator of cable systems in the
U.S. As of December 31, 2003, cable systems owned or managed by Time Warner
Cable passed approximately 18.8 million homes, provided basic video service to
10.9 million subscribers, over 4.3 million of whom also subscribe to Time
Warner Cable's digital video service, and provided high speed data services to
nearly 3.4 million residential subscribers and commercial accounts. Time Warner
Cable plans to introduce its new Internet protocol-based voice service, known
as Digital Phone, in most, if not all, of its operating systems in 2004.

Time Warner Cable operates large clustered and technologically advanced
cable systems. As of December 31, 2003, over 75% of its subscribers were in 19
geographic clusters, each serving more than 300,000 subscribers, and over 99%
of its cable systems were capable of carrying two-way broadband services, with
approximately 99% having been upgraded to 750MHz or higher. Time Warner Cable's
systems are divided among 31 regional operating divisions, all but three of
which are focused on discrete geographic areas. Time Warner Cable is an
industry leader in developing and rolling-out new products and services,
including video on demand, subscription video on demand, high-definition
television and set-top boxes with integrated digital video recorders (DVRs).
See "Video Services" below.

Franchises

Cable systems are constructed and operated under non-exclusive franchises
granted by state or local governmental authorities. Franchises typically
contain many conditions, such as time limitations on commencement or completion
of construction; service requirements, including number of channels; provision
of free services to schools and other public institutions; and the maintenance
of insurance and indemnity bonds. Cable franchises are subject to various
federal, state and local regulations. See "Regulation and Legislation" below.

Video Services

Time Warner Cable's video subscribers are typically charged monthly
subscription fees based on the level of service selected and, in some cases,
equipment usage fees. Pay-per-view and video on demand movies and special
events are charged on a per view basis. During 2003, video service revenues
accounted for approximately 75% of Time Warner Cable's revenues.

Time Warner Cable's systems typically offer two levels of analog video
service -- basic and standard, which together provide, on average,
approximately 70 channels, including local broadcast signals. The basic and

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 15, 2004

standard tiers are available for a fixed monthly fee. Subscribers to Time
Warner Cable's analog video service may purchase premium channels for an
additional monthly fee, with discounts generally available for the purchase of
packages of more than one premium service. Analog video customers who lease a
set top box from Time Warner Cable also have access to pay-per-view movies and
special events. The rates Time Warner Cable can charge for its "basic" tier, as
well as for equipment rentals and installation services, are subject to
regulation under federal law. For more information, see "Regulation and
Legislation" below.

In addition to analog video service, all of Time Warner Cable's divisions
also offer digital video services. As of December 31, 2003, nearly 40% of Time
Warner Cable's basic video subscribers also purchased digital services.
Subscribers to digital video service receive all the channels included in the
basic and standard tiers plus up to 60 additional digital cable networks, up to
45 CD-quality audio music services, more pay-per-view choices and other
features such as enhanced parental control options. Subscribers to digital
video service may also purchase mini tiers (e.g., sports tiers and Spanish
language tiers) and premium channels for an additional monthly fee, with
discounts generally available for the purchase of packages of more than one
such service. In many cases, subscribers who elect to purchase premium services
receive multiplex versions of these services at

8

no additional charge. The digital set-top boxes that subscribers receive also
offer an interactive program guide and access to video on demand and
subscription video on demand.

Video on Demand and Subscription Video on Demand

As of December 31, 2003, Time Warner Cable offered video on demand and
subscription video on demand services in all of its 31 divisions. Video on
demand enables digital subscribers to instantaneously purchase movies and other
programming, and to utilize VCR-like functions (such as pause, rewind and
fast-forward) while watching these programs. Subscribers are charged for video
on demand on a per use basis. Subscription video on demand provides digital
customers the ability to view an array of content associated with a particular
content provider. Subscription video on demand uses the same technology and
offers the same features as video on demand, but subscriber access is charged
on a monthly rather than a per use basis. Subscription video on demand is
currently offered in connection with premium channels such as HBO and it is
expected that other programming will be available over time.

High Definition Television

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 15, 2004

Pursuant to FCC regulation, television broadcast stations have been granted additional over-the-air spectrum to provide, under a prescribed rollout schedule, high definition and digital television signals to the public. To date, Time Warner Cable has agreed to carry the high definition television signals and other digital signals broadcast by numerous local television stations, including all stations owned and operated by the ABC, CBS, NBC and Fox networks and nearly all public television stations in Time Warner Cable's operating areas. Time Warner Cable is also carrying the HDTV offerings of HBO, Showtime, Discovery, HDNet and iN DEMAND, as well as high-definition sports programming from Fox's Regional Sports Networks and NBA-TV.

Digital Video Recorders

As of December 31, 2003, Time Warner Cable offered set-top boxes with integrated DVRs in 30 of its 31 divisions. DVR users can record programming on a hard drive built into the set-top box through the interactive program guide and view the recorded programming using VCR-like functions such as pause, rewind and fast-forward. DVR users can also record one show while watching another and have the ability to pause even "live" television.

Programming Rights

Time Warner Cable generally obtains the right to carry video programming services through negotiation of affiliation agreements with programmers. Most programming services impose a monthly license fee per subscriber upon the cable operator and these fees typically increase over time. Time Warner Cable's programming costs have risen in recent years (See Management's Discussion and Analysis of Results of Operations and Financial Condition, "Business Segment Results -- Cable" in the financial pages herein). Time Warner Cable obtains the right to carry local broadcast television stations either through the stations' exercise of their so-called "must carry" rights, or through negotiated retransmission consent agreements. See "Regulation and Legislation -- Communications Act and FCC Regulation -- Carriage of Broadcast Television Stations and Other Programming Regulation" below. Time Warner Cable's existing programming and retransmission consent agreements expire at various times. Time Warner Cable cannot ensure that it will be able to renew any or all of its existing agreements upon expiration or obtain the rights to any other programming services or broadcast television stations on reasonable terms or at all. It is not known whether the loss of any one popular programming supplier would have a material adverse effect on Time Warner Cable's operations.

High Speed Data Services

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 15, 2004

As of December 31, 2003, Time Warner Cable had nearly 3.4 million high speed data subscribers, consisting of 3.228 million residential subscribers and 128,000 commercial accounts. Subscribers pay a flat

9

monthly fee for high speed data service, which typically includes Internet access and email. Due to their nature, commercial and bulk subscribers are charged at different rates than residential subscribers. During 2003, high speed data revenues accounted for approximately 19% of Time Warner Cable's revenues.

Time Warner Cable's residential customers can choose from a variety of ISPs, including the Company's Road Runner and AOL for Broadband services. High speed data customers connect their personal computers (PCs) to Time Warner Cable's two-way hybrid fiber optic/coaxial plant using a cable modem. Time Warner Cable also offers networking options that allow customers to connect multiple PCs to a single cable modem.

Time Warner Cable offers its Road Runner branded, high speed data service to both residential and commercial customers in all of Time Warner Cable's 31 divisions. In connection with the TWE-A/ N Restructuring, TWE and an affiliate of the Company effectively acquired Advance/ Newhouse's 17% interest in Road Runner, thereby increasing the Company's ownership to approximately 82% on a fully attributed basis. As a result of the termination of Advance/ Newhouse's minority rights in Road Runner, the Company consolidated Road Runner with its results retroactive to January 1, 2002.

Time Warner Cable's provision of the AOL for Broadband service and its obligation to make multiple ISP services available to its residential customers are subject to compliance with the terms of the FTC Consent Decree and the FCC Order entered in connection with the regulatory clearance of the America Online-Historic TW Merger. (See "Regulation and Legislation" below, for a description of these terms.)

Voice Services

During 2003, Time Warner Cable launched its new Digital Phone service in Portland, ME, and provided the service to selected customers in Rochester, NY, Raleigh, NC and Kansas City, KS. Digital Phone utilizes voice over Internet protocol or "VoIP" technology which enables subscribers to make and receive calls using traditional telephone handsets connected to a cable modem through their existing in-home telephone wiring. Digital Phone provides unlimited local, in-state and domestic long distance calling, as well as call waiting, caller ID and enhanced "911" services, for a fixed monthly fee. Subscribers switching to Digital Phone can keep their existing landline phone numbers and retain their directory listings.

EDGARPlus(R) FORM-TYPE: 10-K FILING-DATE: March 15, 2004

Time Warner Cable intends to roll out Digital Phone service in most, if not all, of its operating divisions during 2004. In December 2003, Time Warner Cable announced that it had entered into multi-year agreements with each of MCI and Sprint pursuant to which each will assist Time Warner Cable in the provisioning of Digital Phone service to customers, termination of VoIP voice traffic to the public switched network, delivery of enhanced "911" service, local number portability and long distance traffic carriage.

Advertising

Time Warner Cable also generates revenue by selling advertising time to a variety of national, regional and local businesses. During 2003, advertising revenues accounted for approximately 6% of Time Warner Cable's revenues.

Cable operators receive an allocation of scheduled advertising time on certain cable programming services into which the operator can insert commercials. The clustering of Time Warner Cable's systems expands the share of viewers that Time Warner Cable reaches within a local DMA (Designated Market Area), which helps local ad sales personnel to compete more effectively with broadcast and other media. In addition, in many locations, contiguous cable system operators have formed advertising interconnects to deliver locally inserted commercials across wider geographic areas, replicating the reach of broadcast stations as much as possible. As of December 31, 2003, 13 of Time Warner Cable's 31 divisions participated in local cable advertising interconnects.

A portion of Time Warner Cable's advertising revenues come from sales to other Time Warner segments and from sales to programming vendors in support of their channel launches. During 2001 and 2002, these sales represented a substantial portion of Time Warner Cable's total advertising revenues. However, these advertising revenues decreased sharply during 2003 as the number of new programming service launches declined and other Time Warner segments purchased less advertising from Time Warner Cable. See

10

Management's Discussion and Analysis of Results of Operations and Financial Condition, "Business Segment Results -- Cable" in the financial pages herein.

Local News Channels

Time Warner Cable operates, alone or in partnerships, 24-hour local news channels in New York City (NY1 News and NY1 Noticias), Albany, NY (Capital News 9), Rochester, NY (R/ News), Syracuse, NY (News 10 Now), Charlotte and Raleigh, NC (Carolina News 14), Austin, TX (News 8 Austin), San Antonio, TX (News 9 San

# Excerpts from
# December 7, 2006 Amendment No. 1
# to Form S-1 Registration Statement of
# TimeWarner Cable, Inc.

# EXHIBIT E

**to**

**Motion for Leave to Amend the Original Complaint in**
***Rembrandt Technologies, LP v. Time Warner Cable, Inc.***
**Case No. 2:06cv224[TJW]**

**Table of Contents**

As filed with the Securities and Exchange Commission on December 7, 2006

Registration No. 333-138052

# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

## Amendment No. 1
## to
# FORM S-1
### REGISTRATION STATEMENT UNDER THE SECURITIES ACT OF 1933

# TIME WARNER CABLE INC.

*(Exact name of registrant as specified in its charter)*

| **Delaware** | **4841** | **84-1496755** |
|---|---|---|
| *(State or other jurisdiction of incorporation or organization)* | *(Primary Standard Industrial Classification Code Number)* | *(IRS Employer Identification Number)* |

**290 Harbor Drive**
**Stamford, CT 06902-7441**
**(203) 328-0600**

*(Address, including zip code, and telephone number,*
*including area code, of registrant's principal executive offices)*

**Marc Lawrence-Apfelbaum, Esq.**
**Executive Vice President, General Counsel and Secretary**
**Time Warner Cable Inc.**
**290 Harbor Drive**
**Stamford, CT 06902-7441**
**(203) 328-0600**

*(Name, address, including zip code, and telephone number,*
*including area code, of agent for service)*

*Copies to:*

**John C. Kennedy, Esq.**
**Robert B. Schumer, Esq.**
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
**1285 Avenue of the Americas**
**New York, NY 10019-6064**
**(212) 373-3000**

**Approximate date of commencement of proposed sale of the securities to the public:** As soon as practicable after this Registration Statement becomes effective.

If any of the securities being registered on this Form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, check the following box.  ☑

If this form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, please check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering:  ☐ _____

If this form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering:  ☐ _____

If this form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering: ☐ _____

If delivery of the prospectus is expected to be made pursuant to Rule 434, please check the following box: ☐

---

## CALCULATION OF REGISTRATION FEE

| Title of Each Class of Securities to be Registered | Proposed Maximum Aggregate Offering Price[1] | Amount of Registration Fee[2] |
|---|---|---|
| Class A common stock, $0.01 par value per share | $100,000,000 | $10,700 |

(1) Estimated solely for the purpose of calculating the registration fee pursuant to Rule 457(o) under the Securities Act of 1933.
(2) Previously paid.

---

The registrant hereby amends this Registration Statement on such date or dates as may be necessary to delay its effective date until the registrant shall file a further amendment which specifically states that this Registration Statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933, as amended, or until the Registration Statement shall become effective on such date as the Commission, acting pursuant to such Section 8(a), may determine.

Table of Contents

> The information in this preliminary prospectus is not complete and may be changed. These securities may not be sold until the registration statement filed with the Securities and Exchange Commission is effective. The preliminary prospectus is not an offer to sell nor does it seek an offer to buy these securities in any jurisdiction where the offer or sale is not permitted.

<div align="center">

**SUBJECT TO COMPLETION, DATED DECEMBER 7, 2006**

</div>

PROSPECTUS

<div align="center">

**Shares**

# Time Warner Cable Inc.

## Class A Common Stock

</div>

All of the shares of Class A common stock offered by this prospectus are being sold by Adelphia Communications Corporation, which is referred to in this prospectus as "ACC" or "the selling stockholder." We will not receive any of the proceeds from the shares of Class A common stock sold by the selling stockholder.

This is the initial public offering of our Class A common stock. Prior to this offering, there has been no public market for our common stock. We intend to apply to list our Class A common stock on the New York Stock Exchange under the symbol "TWC."

We are a consolidated subsidiary of Time Warner Inc., the common stock of which is publicly traded. Time Warner Inc. beneficially owns 82.7% of our outstanding Class A common stock and 100% of our outstanding Class B common stock. Except in the election of directors and other specified matters, the shares of Class A common stock and Class B common stock vote together as a single class on all matters submitted to our stockholders. Each share of our Class A common stock has one vote, and each share of our Class B common stock has 10 votes. As a result, Time Warner Inc. beneficially owns common stock representing 84.0% of all classes of our outstanding common stock and approximately 90.6% of the combined voting power of all classes of our outstanding common stock. Because Time Warner Inc. holds in excess of 50% of the combined voting power of all classes of our common stock, we will be a "controlled company" within the meaning of the New York Stock Exchange's rules and, as a result, we are permitted to, and we intend to, rely on exemptions from certain of the New York Stock Exchange's corporate governance requirements.

<div align="center">

———————

</div>

*Investing in our Class A common stock involves risks that are described in the "Risk Factors" section beginning on page 13 of this prospectus.*

<div align="center">

———————

</div>

In accordance with the terms of a registration rights and sale agreement between us and the selling stockholder, the selling stockholder may only sell the shares offered hereby in a single firm commitment underwritten public offering (including any shares subject to an overallotment option granted to the underwriters). We will provide more specific information about the terms of the offering of these shares in a supplement to this prospectus (or, if appropriate, a post-effective amendment to the registration statement of which this prospectus forms a part), including the names of the underwriters and any applicable commissions or discounts.

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of these securities or passed upon the adequacy or accuracy of this prospectus. Any representation to the contrary is a criminal offense.**

The date of this prospectus is          , 2006.

*You should rely only on the information contained in this prospectus or to which we have referred you, including any free writing prospectus that we file with the Securities and Exchange Commission relating to this prospectus. We have not authorized anyone to provide you with different information. We are not making an offer of these securities in any jurisdiction where the offer is not permitted. You should not assume that the information contained in this prospectus is accurate as of any date other than the date on the front of this prospectus.*

## TABLE OF CONTENTS

|                                                                                      | Page |
| ------------------------------------------------------------------------------------ | ---- |
| PROSPECTUS SUMMARY                                                                    | 1    |
| RISK FACTORS                                                                          | 13   |
| FORWARD-LOOKING STATEMENTS                                                            | 31   |
| USE OF PROCEEDS                                                                       | 33   |
| DIVIDEND POLICY                                                                       | 33   |
| CAPITALIZATION                                                                        | 34   |
| UNAUDITED PRO FORMA CONDENSED COMBINED FINANCIAL INFORMATION                          | 35   |
| SELECTED HISTORICAL CONSOLIDATED FINANCIAL AND SUBSCRIBER DATA                        | 49   |
| MANAGEMENT'S DISCUSSION AND ANALYSIS OF RESULTS OF OPERATIONS AND FINANCIAL CONDITION | 54   |
| BUSINESS                                                                              | 93   |
| THE TRANSACTIONS                                                                      | 120  |
| OUR OPERATING PARTNERSHIPS AND JOINT VENTURES                                         | 126  |
| MANAGEMENT                                                                            | 128  |
| PRINCIPAL STOCKHOLDERS AND THE SELLING STOCKHOLDER                                    | 150  |
| CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS                                        | 152  |
| DESCRIPTION OF CAPITAL STOCK                                                          | 161  |
| SHARES ELIGIBLE FOR FUTURE ISSUANCE                                                   | 165  |
| CERTAIN U.S. FEDERAL TAX CONSEQUENCES                                                 | 167  |
| PLAN OF DISTRIBUTION                                                                  | 170  |
| LEGAL MATTERS                                                                         | 172  |
| EXPERTS                                                                               | 172  |
| WHERE YOU CAN FIND MORE INFORMATION                                                   | 172  |
| INDEX TO CONSOLIDATED FINANCIAL STATEMENTS                                            | F-1  |
| EX-21.1: SUBSIDIARIES                                                                 |      |
| EX-23.1: CONSENT OF ERNST & YOUNG LLP                                                 |      |
| EX-23.2: CONSENT OF DELOITTE & TOUCHE LLP                                             |      |
| EX-23.3: CONSENT OF PRICEWATERHOUSECOOPERS LLP                                        |      |

## INDUSTRY AND MARKET DATA

Industry and market data used throughout this prospectus were obtained through company research, surveys and studies conducted by third parties, and general industry publications. The information contained in "Business—Our Industry" is based on studies, analyses and surveys of the cable television, high-speed Internet access and telephone industries and its customers prepared by the National Cable and Telecommunications Association, Forrester Research and International Data Corporation. We have not independently verified any of the data from third party sources nor have we ascertained any underlying economic assumptions relied upon therein. While we are not aware of any misstatements regarding the industry data presented herein, estimates involve risks and uncertainties and are subject to change based on various factors, including those discussed under the heading "Risk Factors."

**Table of Contents**

## PROSPECTUS SUMMARY

*This summary highlights information contained elsewhere in this prospectus. This summary does not contain all of the information that you should consider before investing in our Class A common stock. You should read the entire prospectus carefully, especially the section describing the risks of investing in our Class A common stock under the caption "Risk Factors." Except as the context otherwise requires, references in this prospectus to "TWC," the "Company," "we," "our" or "us" are to Time Warner Cable Inc. and references to "Time Warner" are to our parent corporation, Time Warner Inc. Some of the statements in this summary are forward-looking statements. For more information, please see "Forward-Looking Statements."*

*Except as the context otherwise requires, references to information being "pro forma" or "on a pro forma basis" mean after giving effect to the transactions with Adelphia Communications Corporation ("ACC" or "the selling stockholder") and its affiliates and subsidiaries (together with ACC, "Adelphia") and Comcast Corporation and its affiliates ("Comcast"), the dissolution of Texas and Kansas City Cable Partners, L.P. ("TKCCP") and the other transactions described in our unaudited pro forma condensed combined financial statements contained herein. See "Unaudited Pro Forma Condensed Combined Financial Information." References to information presented as "legacy" or "on a legacy basis," mean, for all periods presented, our operations and systems (1) excluding the systems and subscribers that we transferred to Comcast in connection with the transactions, (2) excluding the systems and subscribers that we acquired in the transactions with Adelphia and Comcast and (3) with respect to subscriber data, including our consolidated entities and only the TKCCP systems that we expect to receive in the dissolution of TKCCP. Unless otherwise specified, references to our systems and operations cover our consolidated systems and the Kansas City Pool. When we refer to revenue generating units ("RGUs"), we mean the sum of all of our analog video, digital video, high-speed data and voice subscribers. Therefore, a subscriber who purchases all four of these services would represent four RGUs.*

### Our Company

**Overview**

We are the second-largest cable operator in the United States and an industry leader in developing and launching innovative video, data and voice services. We deliver our services to customers over technologically-advanced, well-clustered cable systems that, as of September 30, 2006, passed approximately 26 million U.S. homes. Approximately 85% of these homes were located in one of five principal geographic areas: New York state, the Carolinas (i.e., North Carolina and South Carolina), Ohio, southern California and Texas. We are currently the largest cable system operator in a number of large cities, including New York City and Los Angeles. As of September 30, 2006, we had over 14.6 million customer relationships through which we provided one or more of our services.

We have a long history of leadership within our industry and were the first or among the first cable operators to offer high-speed data service, IP-based telephony service and a range of advanced digital video services, such as video-on-demand ("VOD"), high definition television ("HDTV") and set-top boxes equipped with digital video recorders ("DVRs"). We believe our ability to introduce new products and services provides an important competitive advantage and is one of the factors that has led to advanced services penetration rates and revenue growth rates that have been higher than cable industry averages over the last few years. As of September 30, 2006, approximately 7.0 million (or 52%) of our 13.5 million basic video customers subscribed to our digital video services; 6.4 million (or 25%) of our high-speed data service-ready homes subscribed to our residential high-speed data service; and 1.6 million (or nearly 11%) of our voice service-ready homes subscribed to our Digital Phone, our newest service, which we launched broadly during 2004. As of September 30, 2006, in our legacy systems, approximately 54% of our 9.5 million basic video customers subscribed to our digital video services and 29% of our high-speed data service-ready homes subscribed to a residential high-speed data service. We have been able to increase our average monthly subscription revenue (which includes video, high-speed data and voice revenues) per basic video subscriber ("subscription ARPU"), driven

in large part through the expansion of our service offerings. In the quarter ended September 30, 2006, our subscription ARPU was approximately $89, which we believe was above the cable industry average. In our legacy systems, our subscription ARPU increased to approximately $93 in the third quarter of 2006 from approximately $70 for the quarter ended March 31, 2004. This represents an increase of 33% and a compound annual growth rate of 12%. In addition to consumer subscription services, we also provide

1

Table of Contents

communications services to commercial customers and sell advertising time to a variety of national, regional and local businesses.

Our business benefits greatly from increasing the penetration of multiple services and, as a result, we continue to create and aggressively market desirable bundles of services to existing and potential customers. As of September 30, 2006, approximately 40% of our customers purchased two or more of our video, high-speed data and Digital Phone services, and approximately 8% purchased all three of these services. As of September 30, 2006, in our legacy systems, approximately 44% of our customers purchased two or more of our services and approximately 13% purchased all three. We believe that offering our customers desirable bundles of services results in greater revenue and reduced customer churn.

Consistent with our strategy of growing through disciplined and opportunistic acquisitions, on July 31, 2006, we completed a number of transactions with Adelphia and Comcast, which resulted in a net increase of 7.6 million homes passed and 3.2 million basic video subscribers served by our cable systems. As of September 30, 2006, homes passed in the systems acquired from Adelphia and Comcast represented approximately 36% of our total homes passed. These transactions provide us with increased scale and have enhanced the clustering of our already well-clustered systems. As of September 30, 2006, penetration rates for basic video services and advanced services were generally lower in the acquired systems than in our legacy systems. We believe that many of the systems we acquired will benefit from the skills of our management team and from the introduction of our advanced service offerings, including IP-based telephony service, which was not available to the subscribers in the acquired systems prior to closing. Therefore, we have an opportunity to improve the financial results of these systems.

**Our Industry**

As the marketplace for basic video services has matured, the cable industry has responded by introducing new services, including enhanced video services like HDTV and VOD, high-speed Internet access and IP-based telephony. We believe these advanced services have resulted in improved customer satisfaction, increased customer spending and retention. We expect the demand for these and other advanced services to increase.

We believe the cable industry is better-positioned than competing industries to widely offer a bundle of advanced services, including video, high-speed data and voice, over a single provider's facilities. For example:

- Direct broadcast satellite providers, currently the cable industry's most significant competitor for video customers, generally do not provide two-way data or telephony services on their own and rely on partnerships with other companies to offer "synthetic" bundles of services.
- Telephone companies, currently the cable industry's most significant competitor for telephone and high-speed data customers, do not independently provide a widely available video product.
- Independent providers of IP-based telephony services allow broadband users to make phone calls, but offer no other services.

Some telephone companies are building new fiber-to-the-node ("FTTN") or fiber-to-the-home ("FTTH") networks in an attempt to offer customers a product bundle comparable to those offered today by cable companies, but these advanced service offerings will not be broadly available for a number of years. Meanwhile, we expect the cable industry will benefit from its existing offerings while continuing to innovate and introduce new services.

**Our Strengths**

We benefit from the following competitive strengths:

*Advanced cable infrastructure.* Our advanced cable infrastructure is the foundation of our business, enabling us to provide our customers with a compelling suite of products and services, regularly introduce new services and features and pursue new business opportunities. Our infrastructure is engineered to accommodate future capacity enhancements in a cost-efficient, as-needed manner. We believe that the long-term capabilities of our network are functionally

comparable to those of proposed or emerging networks of the telephone companies, and superior to the capabilities of the legacy networks of the telephone companies and the delivery systems of direct broadcast satellite operators.

*Innovation leader.* We are a recognized leader in developing and introducing innovative new technologies and services, and creating enhancements to existing services. Our ability to deliver technological innovations that respond to our customers' needs and interests is reflected in the widespread customer adoption of these products and

2

Table of Contents

services. This leadership has enabled us to accelerate the rate at which we have introduced new services and features over the last few years, resulting in increased subscription ARPU and lowered customer churn.

*Large, well-clustered cable systems.* We operate large, well-clustered cable systems, and the recently-completed transactions with Adelphia and Comcast further enhanced our already well-clustered operations. We believe clustering provides us with significant operating and financial advantages, including the ability to: rapidly and cost-effectively introduce new services; market our services more effectively; offer advertisers a convenient geographic platform; maintain high-quality local management teams; and offer competitive proprietary local programming.

*Consistent track record.* We have established a record of financial growth and strong operating performance driven primarily by the introduction of our advanced services. For example, on a legacy basis, our RGU net additions have increased from 1.5 million for the nine months ended September 30, 2005 to 2.0 million for the nine months ended September 30, 2006, representing a 33% increase.

*Highly-experienced management team.* Our senior corporate and operating management averages more than 17 years of service with us. Over our long history in the cable business, our management team has demonstrated efficiency, discipline and speed in its execution of cable system upgrades and the introduction of new and enhanced service offerings and has also demonstrated the ability to efficiently integrate the cable systems we acquire from other cable operators into our existing systems.

*Local presence.* We believe our presence in the diverse communities we serve helps make us responsive to our customers' needs and interests, as well as to local competitive dynamics. Our locally-based employees are familiar with the services we offer in their area and are trained and motivated to promote additional services at each point of customer contact.

**Our Strategy**

Our goal is to continue to attract new customers, while at the same time deepening relationships with existing customers in order to increase the amount of revenue we earn from each home we pass and increase customer retention. We plan to achieve these goals through ongoing innovation, focused marketing, superior customer care and a disciplined acquisition strategy.

*Ongoing innovation.* We define innovation as the pairing of technology with carefully-researched insights into the services that our customers will value. We will continue to fast-track laboratory and consumer testing of promising concepts and services and rapidly deploy those that we believe will enhance our customer relationships and increase our profitability. We also seek to develop integrated offerings that combine elements of two or more services. We have a proven track record with respect to the introduction of new services.

*Marketing.* Our marketing strategy has three key components: promoting bundled services, effective merchandising and building our brand. We are focused on marketing bundles—differentiated packages of multiple services and features for a single price—as we have seen that customers who subscribe to bundles of our services are generally less likely to switch providers and are more likely to be receptive to additional services, including those that we may offer in the future. Our merchandising strategy is to offer bundles with entry-level pricing, which provides our customer care representatives with the opportunity to offer potential customers additional services or upgraded levels of existing services.

*Superior customer care.* We believe that providing superior customer care helps build customer loyalty and retention, strengthens the Time Warner Cable brand and increases demand for our services. We have implemented a range of initiatives to ensure that customers have the best possible experience with minimum inconvenience when ordering and paying for services, scheduling installations and other visits, or obtaining technical or billing information with respect to their services.

*Growth through disciplined strategic acquisitions.* We will continue to evaluate and

selectively pursue opportunistic strategic acquisitions, system swaps and joint ventures that we believe will add value to our existing business. The transactions we completed with Adelphia and Comcast on July 31, 2006 are consistent with this strategy. Our goal with respect to the systems we acquired in these transactions is to increase penetration of our basic and advanced services toward the levels enjoyed by our legacy systems, thereby increasing revenue growth and profitability. In order to achieve this goal, we will upgrade the capacity and technical performance of the newly-acquired systems to levels that will allow us to deliver all of our advanced services and features.

3

Table of Contents

**Recent Developments**

*Transactions with Adelphia and Comcast*

On July 31, 2006, we completed the following transactions with Adelphia and Comcast:

- *The Adelphia Acquisition.* We acquired certain assets and assumed certain liabilities from Adelphia, which is currently in bankruptcy, for approximately $8.9 billion in cash and 156 million shares, or 17.3%, of our Class A common stock (approximately 16% of our total common stock). We refer to the former Adelphia cable systems we acquired, after giving effect to the transactions with Adelphia and Comcast, as the "Adelphia Acquired Systems." On the same day, Comcast purchased certain assets and assumed certain liabilities from Adelphia for approximately $3.6 billion in cash. Together, we and Comcast purchased substantially all of the cable assets of Adelphia (the "Adelphia Acquisition").

- *The Redemptions.* Immediately before the Adelphia Acquisition, we redeemed Comcast's interests in our company and Time Warner Entertainment Company, L.P. ("TWE"), one of our subsidiaries, in exchange for the capital stock of a subsidiary of ours and a subsidiary of TWE, respectively, together holding an aggregate of approximately $2 billion in cash and cable systems serving approximately 751,000 basic video subscribers (the "TWC Redemption" and the "TWE Redemption," respectively, and, together, the "Redemptions").

- *The Exchange.* Immediately after the Adelphia Acquisition, we and Comcast also swapped certain cable systems, some of which were acquired from Adelphia, in order to enhance our and Comcast's respective geographic clusters of subscribers (the "Exchange"). We refer to the former Comcast cable systems we acquired from Comcast in the Exchange as the "Comcast Acquired Systems," and to the collective systems acquired from Adelphia and Comcast and subsequently retained as the "Acquired Systems."

For additional information regarding the Adelphia Acquisition, the Redemptions and the Exchange (collectively, the "Transactions"), see "The Transactions."

In connection with the Transactions, immediately after the closing of the Redemptions but prior to the closing of the Adelphia Acquisition, we paid a stock dividend to holders of record of our Class A and Class B common stock of 999,999 shares of Class A or Class B common stock, respectively, per share of Class A or Class B common stock held at that time. For additional information, see "Dividend Policy."

The Adelphia Acquisition was designed to be a taxable acquisition of assets that would result in a tax basis in the acquired assets equal to the purchase price we paid. The resulting step-up in the tax basis of the assets would increase future tax deductions, reduce future net cash tax payments and thereby increase our future cash flows. See "Management's Discussion and Analysis of Results of Operations and Financial Condition—Business Transactions and Developments—Tax Benefits from the Transactions."

*TKCCP Dissolution*

We are in the process of dissolving TKCCP, a 50-50 joint venture between us and Comcast, which, as of September 30, 2006, served approximately 1.6 million basic video subscribers throughout Houston, Kansas City, south and west Texas and New Mexico. Upon the dissolution, we will receive the cable systems in Kansas City, south and west Texas and New Mexico (referred to in this prospectus as the Kansas City Pool), which collectively served approximately 782,000 basic video subscribers as of September 30, 2006, and Comcast will receive the Houston cable systems. Comcast has refinanced the debt of TKCCP and we will not assume any debt of TKCCP upon its dissolution. See "Management's Discussion and Analysis of Results of Operations and Financial Condition—Business Transactions and Developments—Joint Venture Dissolution."

**Corporate Structure and Other Information**

Although we and our predecessors have been in the cable business for over 30 years in

various legal forms, Time Warner Cable Inc. was incorporated as a Delaware corporation on March 15, 1999. Our principal executive offices are located at 290 Harbor Drive, Stamford, CT 06902. Our telephone number is (203) 328-0600 and our corporate website is www.timewarnercable.com. The information on our website is not part of this prospectus.

4

Table of Contents

The following chart illustrates our corporate structure after giving effect to the Transactions and the dissolution of TKCCP, but before giving effect to this offering. The subscriber numbers, long-term debt and preferred equity balances presented below are approximate as of September 30, 2006. The guarantee structure reflected below gives effect to certain transactions completed during the fourth quarter of 2006. Certain intermediate entities and certain preferred interests held by us or our subsidiaries are not reflected. The subscriber counts within each entity indicate the number of basic video subscribers attributable to cable systems owned by such entity. Basic video subscriber amounts reflect billable subscribers who receive our basic video service.



(1) The principal amount of TWE's debt securities excludes an unamortized fair value adjustment of $144 million.
(2) We are also the obligor under an intercompany loan from TWE with an aggregate principal amount of $871 million.
(3) Time Warner NY Cable LLC is also the obligor under an intercompany loan from us with an aggregate principal amount of $8.7 billion.
(4) The subscribers and economic ownership interests listed in the chart for the Time Warner Entertainment-Advance/Newhouse Partnership relate only to those TWE-A/N systems in which we have an economic interest and over which we exercise day-to-day supervision. See "Our Operating Partnerships and Joint Ventures–Description of Certain Provisions of the TWE-A/N Agreement" for a more detailed description of the TWE-A/N capital structure.

5

# Exhibit 21.1 to
# December 7, 2006 Amendment No. 1
# to Form S-1 Registration Statement of
# TimeWarner Cable, Inc.

# EXHIBIT F

### to

## Motion for Leave to Amend the Original Complaint in
## *Rembrandt Technologies, LP v. Time Warner Cable, Inc.*
## Case No. 2:06cv224[TJW]

***SEC Info***   Home   Search   My Interests   Help   Sign In   *Please **Sign In***

# Time Warner Cable Inc · S-1/A · On 12/7/06 · EX-21.1

**Filed On** 12/7/06 5:14pm ET · **SEC File** 333-138052 · **Accession Number** 950123-6-14925

| 🔲 | _____ in this filing. 🔲 | Show | docs searched 🔲 | and | every "hit". 🔲 |

Help... *Wildcards:* **?** (any letter), **\*** (many). *Logic:* for Docs: **&** (and), **|** (or); for Text: **|** (anywhere), **"(&)"** (near).

| As Of | Filer | Filing | As/For/On | Docs:Pgs |
|-------|-------|--------|-----------|----------|
| 12/07/06 | Time Warner Cable Inc | S-1/A | | 5:736 |

---

### Pre-Effective Amendment to Registration Statement (General Form) · Form S-1
### Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|------------------|-------------|-------|------|
| 1: S-1/A | Amendment #1 to Form S-1 | HTML | 4,263K |
| 2: EX-21.1 | Ex-21.1: Subsidiaries | HTML | 15K |
| 3: EX-23.1 | Ex-23.1: Consent of Ernst & Young Llp | HTML | 4K |
| 4: EX-23.2 | Ex-23.2: Consent of Deloitte & Touche Llp | HTML | 5K |
| 5: EX-23.3 | Ex-23.3: Consent of Pricewaterhousecoopers Llp | HTML | 4K |

---

### EX-21.1 · Ex-21.1: Subsidiaries

---

*This is an EDGAR HTML document rendered as filed.  [ <u>Alternative Formats</u> ]*

EX-21.1

.

.

Exhibit 21.1

## SUBSIDIARIES
## OF
## TIME WARNER CABLE INC.

Time Warner Cable Inc. maintains over 100 subsidiaries. Set forth below are the names of certain controlled subsidiaries, at least 50% owned, directly or indirectly, of Time Warner Cable Inc. that own and operate cable television systems and/or provide IP-based telephony or high-speed data services. The names of various consolidated wholly owned subsidiaries that carry on the same line of business as Time Warner Cable Inc. have been omitted. None of the omitted subsidiaries, considered either alone or together with the other subsidiaries of its immediate parent, constitutes a significant subsidiary.

| Name | State of Other Jurisdiction of Incorporation |
| --- | --- |
| Time Warner Cable Inc. (Registrant) | Delaware |
| Time Warner Cable LLC | Delaware |
| Time Warner Cable Information Services (Alabama), LLC | Delaware |
| Time Warner Cable Information Services (Georgia), LLC | Delaware |
| Time Warner Cable Information Services (New Hampshire), LLC | Delaware |
| Time Warner Cable Information Services (Oklahoma), LLC | Delaware |
| Time Warner Cable San Antonio, L.P. | Delaware |
| TW NY Cable Holding Inc. | Delaware (1) |
| Time Warner Cable West Virginia, LLC | Delaware |
| Time Warner Cable Information Services (West Virginia), LLC | Delaware |
| Time Warner NY Cable LLC | Delaware (1) |
| CAC Exchange I, LLC | Delaware |
| CAC Exchange II, LLC | Delaware |
| CAP Exchange I, LLC | Delaware |
| C-Native Exchange I, LLC | Delaware |
| C-Native Exchange II, L.P. | Delaware |
| C-Native Exchange IIA, L.P. | Delaware |
| C-Native Exchange III, L.P. | Delaware |
| Time Warner Cable Information Services (Arizona), LLC | Delaware |
| Time Warner Cable Information Services (Kentucky), LLC | Delaware |
| Time Warner Cable Information Services (Washington), LLC | Delaware |
| Time Warner Cable of Dallas, LP | Delaware |
| Time Warner Entertainment Company, L.P. | Delaware |
| Century Venture Corporation | Delaware |
| Erie Telecommunications, Inc. | Pennsylvania (1) |
| Queens Inner Unity Cable System | New York |
| Road Runner HoldCo LLC | Delaware |

.

.

.

| Name | State of Other Jurisdiction of Incorporation |
|------|----------------------------------------------|
| Staten Island Cable, LLC | Delaware |
| Time Warner Cable Information Services (Hawaii), LLC | Delaware |
| Time Warner Cable Information Services (Indiana), LLC | Delaware |
| Time Warner Cable Information Services (Maine), LLC | Delaware |
| Time Warner Cable Information Services (Mississippi), LLC | Delaware |
| Time Warner Cable Information Services (Ohio), LLC | Delaware |
| Time Warner Cable Information Services (Wisconsin), LLC | Delaware |
| Time Warner Cable of Maine, L.P. | Delaware |
| Time Warner Cable of Southeastern Wisconsin, L.P. | Delaware |
| Time Warner ResCom of New York LLC | Delaware |
| TWFanch-one Co. | Delaware |
| Time Warner Cable Information Services (New Jersey), LLC | Delaware |
| TWFanch-two Co. | Delaware |
| Time Warner Entertainment-Advance/Newhouse Partnership | New York (2) |
| CAT Holdings, LLC | Delaware |
| Time Warner Cable Information Services (California), LLC | Delaware |
| Time Warner Cable Information Services (International), LLC | Delaware |
| Time Warner Cable Information Services (Massachusetts), LLC | Delaware |
| Time Warner Cable Information Services (Nebraska), LLC | Delaware |
| Time Warner Cable Information Services (North Carolina), LLC | Delaware |
| Time Warner Cable Information Services (Pennsylvania), LLC | Delaware |
| Time Warner Cable Information Services (South Carolina), LLC | Delaware |
| Time Warner Cable Information Services (Texas), L.P. | Delaware |
| Texas and Kansas City Cable Partners, L.P. | Delaware (1) |
| KCCP Trust | Delaware (1) |
| Time Warner Cable Information Services (Kansas), LLC | Delaware |
| Time Warner Cable Information Services (Missouri), LLC | Delaware |

(1) Less than 100% owned

(2) Advance/Newhouse Partnership holds a minority general partnership interest representing 100% economic interest only in cable systems held by a subsidiary of Time Warner Entertainment-Advance/Newhouse Partnership

---

*Alternative Formats:*   Rich Text / Word (.rtf), Text (.txt), EDGAR (.sgml), XML (.xml), et al.

---

*Copyright © 2007 **Fran Finnegan & Company** All Rights Reserved.*
*www.secinfo.com - Tue, 30 Jan 2007 22:01:17.0 GMT - Help at SEC Info*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 2:06-CV-224 [TJW]** |
| | § | |
| **TIME WARNER CABLE, INC.,** | § | **JURY TRIAL REQUESTED** |
| | § | |
| **Defendant.** | § | |

**ORDER GRANTING MOTION FOR LEAVE TO AMEND**
**THE ORIGINAL COMPLAINT**

CAME ON TO BE CONSIDERED the Motion of Rembrandt Technologies, LP ("Rembrandt") for Leave to Amend the Original Complaint.  The Court hereby GRANTS this motion.

IT IS HEREBY ORDERED that the First Amended Complaint attached as "Exhibit A" to Rembrandt's Motion for Leave is hereby accepted for filing.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:06 CV 223 [TJW] |
| | § | |
| CHARTER COMMUNICATIONS, INC., | § | |
| CHARTER COMMUNICATIONS OPERATING, | § | |
| LLC, COX COMMUNICATIONS, INC., | § | |
| COXCOM, INC., COX ENTERPRISES, INC., | § | |
| CSC HOLDINGS, INC., and CABLEVISION | § | |
| SYSTEMS CORPORATION, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:06 CV 224 [TJW] |
| | § | |
| TIME WARNER CABLE INC., | § | |
| | § | |
| Defendant. | § | |

**DEFENDANTS' MOTION TO CONSOLIDATE
CASES FOR PRETRIAL PROCEEDINGS**

Charter Communications, Inc., CoxCom, Inc., Charter Communications Operating, LLC, and all other defendants in Case No. 2:06 CV 223 (collectively, "Charter")[1] and Time Warner Cable Inc. ("TWC"), the defendant in Case No. 2:06 CV 224, hereby move the Court, pursuant to Fed. R. Civ. P. 42(a), to consolidate these actions with Case No. 2:05 CV 443 (in which Comcast Corporation and its related entities (collectively, "Comcast") are the defendants) for all pretrial proceedings. As shown below, pretrial consolidation of these three cases, which involve identical infringement allegations regarding the same four patents, will promote efficiency, will conserve the resources of the Court and the parties, and will allow each of the similarly situated defendants to have a full opportunity to address this Court on critical pretrial matters such as patent claim construction.

## PROCEDURAL BACKGROUND

Plaintiff Rembrandt Technologies, LP ("Rembrandt") filed three separate, identical lawsuits in this Court. On September 16, 2005, Rembrandt filed suit against Comcast alleging that Comcast infringes four patents by virtue of its compliance with the DOCSIS and ATSC industry standards. On June 1, 2006, Rembrandt filed two new, separate complaints in this Court against Charter and TWC alleging infringement of the same four patents at issue in the *Comcast* litigation by virtue of Charter's and TWC's compliance with the exact same two industry standards. In all three complaints, compliance with the ATSC standard is alleged to infringe United States Patent No.

---

[1] Cox Communications, Inc. and Cox Enterprises, Inc. were dismissed from the 2:06cv223 action. CoxCom, Inc. has moved to dismiss the 2:06cv223 action because it believes this Court lacks personal jurisdiction over CoxCom. Nonetheless, without prejudice to its pending motion and in the event that the Court denied CoxCom's motion to dismiss, CoxCom believes that the Court should consolidate these matters for the reasons stated herein. In addition, although still listed in the caption for the 2:06cv223 action, Cablevision Systems Corporation and CSC Holdings, Inc. ("Cablevision") are no longer parties to this action. In an Order dated October 16, 2006, this Court granted Rembrandt's motion to dismiss its claims against Cablevision in this action. Rembrandt filed a separate action against Cablevision in the District of Delaware on October 13, 2006; that action is currently pending before Judge Sleet as case number 1:06cv635.

5,243,627, and compliance with the DOCSIS standard is alleged to infringe United States Patent

Nos. 5,852,631, 4,937,819, and 5,719,858.  *See Comcast* Complaint ¶¶ 11, 23, 29; *Charter*

Complaint ¶¶ 17, 29, 35; *TWC* Complaint ¶¶ 10, 22, 28.  Accordingly, based on the complaints,

the infringement, validity and enforceability issues raised by all three cases are identical.

On August 30, 2006, TWC filed a motion to disqualify Rembrandt's counsel in the *Comcast*

case, Fish & Richardson ("F&R"), after obtaining leave to intervene for the limited purpose of filing

that motion.  TWC argued that F&R had a conflict of interest because, *inter alia*, F&R would be

advancing positions on behalf of Rembrandt in the *Comcast* case that, if successful, would

undoubtedly be used by Rembrandt in its action against TWC.  (F&R also initially represented

Rembrandt in the *Charter* case, but voluntarily withdrew from that action after TWC objected to

F&R's participation.)

By Order dated February 8, 2007,  the Court granted TWC's motion and disqualified F&R.

The Court recognized that:

> The practical significance of Rembrandt's infringement theory is to indict for patent
> infringement all major cable companies who follow the industry standards.  A
> finding of infringement and an injunction issued by this court against a cable
> company for compliance with industry standards would have a significant practical
> effect on Time Warner.

Order at 6.  The Court further pointed out that:

> Rembrandt filed its cases in the same district.  Its case against Time Warner is
> pending before the same judge at roughly the same time as this case, but this case
> was filed first.  Although it is true that the claim construction rulings in this case
> would not be binding on Time Warner, there is a likelihood that the positions taken
> by F&R in this case could, as a practical matter, prejudice Time Warner in
> subsequent proceedings.

The parties to the Comcast action have fully briefed their claim construction positions, but the Court

has continued the *Markman* hearing in view of the F&R disqualification.[2]

## ARGUMENT

Fed. R. Civ. P. 42(a) empowers the Court to consolidate "any or all the matters in issue" in actions having "a common question of law or fact." These actions plainly satisfy the requirement of a "common question of law or fact," because Rembrandt is asserting the same patents against all of the defendants based on all of the defendants' use of the same industry-wide standards using equipment supplied by the same group of vendors.

The Fifth Circuit has recognized that Rule 42(a) "is a broad grant of authority" and "has been applied liberally." *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1013 (5th Cir. 1977). District Courts in the Fifth Circuit are encouraged to consolidate actions to promote efficiency. "In this Circuit, district judges have been 'urged to make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion.'" *Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. 1973) (citation omitted). *Accord, Attala Hydratane Gas, Inc. v. Lowry Tims Co*., 41 F.R.D. 164, 165 (N.D. Miss. 1966) (Rule 42(a) "is designed and intended to encourage the consolidation of actions").

This Court has consolidated actions involving claims based on the same patents. *See Epicrealm Licensing, LLC v. Autoflex Leasing, Inc*. Orders dated November 2 and 16, 2005, attached as Exhibit A. Similarly, in *3M Co. v. Moldex-Metric, Inc*., 2006 WL 3759758, at *2 (D. Minn. Dec. 21, 2006), the court recently consolidated patent infringement cases even though they were at "very different stages." That court explained that "much of the same discovery can be used" in both

---

[2] Movants also understand that the Court held a Case Management Conference in Case No. 2:06 CV 47 on February 20, 2006. In that action, Rembrandt accuses Sharp Corporation of infringing only U.S. Patent No. 5,243,627. The Court is currently scheduled to hold a claim construction hearing in that action on November 20, 2007.

actions; that "there would be overlap in the claim construction analysis"; that a revised scheduling order could be issued that would "lead to a quicker resolution of these actions than if they remained separate"; and that consolidation "would eliminate the risk of inconsistent results." *Id.* The same is true here.

Many other courts have consolidated actions involving claims by the same plaintiff based on the same patents. *See, e.g., Ovadia v. Top Ten Jewelry Corp.*, 2005 WL 1337792 (S.D.N.Y. June 6, 2005); *Paxonet Comm., Inc. v. Transwich Corp.*, 303 F. Supp. 2d 1027 (N.D. Cal. 2003); *Sage Products, Inc. v. Devon Industries, Inc.*, 148 F.R.D. 213, 215 (N.D. Ill. 1993) ("The enhanced efficiency of jointly handling the numerous, complex issues involved in these cases outweighs any possible inconvenience to the plaintiff"); *Magnavox Co. v. APF Electronics, Inc.*, 496 F. Supp. 29 (N.D. Ill. 1980). *See also Solaia Technology, Inc. v. Rockwell Automation, Inc.*, 2003 WL 22057092, at *2 (N.D. Ill. Sept. 2, 2003) (the possibility of consolidating the action with another patent case pending in another district supported transfer of the action).

In *Russo v. Alamosa Holdings, Inc.*, 2004 WL 579378, at *1 (N.D. Tex. Feb. 27, 2004), the court set forth the following factors that courts "should consider in determining if consolidation is proper":

> (1) the cases proposed for consolidation are pending either before the same court for all purposes or before two different courts within the same judicial district; (2) the cases involve a common party; (3) the cases involve common issues of law and/or fact; (4) there is no risk of prejudice or possible confusion if the cases are consolidated, or if there is any risk, it is outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately; (5) consolidation will not result in an unfair advantage; (6) consolidation will conserve judicial resources; (7) consolidation will reduce the time for resolving the cases when compared to separate trials; and (8) consolidation will reduce the expense of trying the cases separately.

All of those factors are fully satisfied here. These cases are all in the same court, were all filed by Rembrandt, and all involve common issues of law and fact. Plaintiff would not be

prejudiced by consolidation, and defendants will not obtain any unfair advantage thereby (indeed, as discussed below, defendants Charter and TWC will be prejudiced if the actions are not consolidated). Consolidation will also conserve judicial resources and save time and expense in the long run. Although the consolidated *Markman* hearing could not occur until Charter and TWC completed their claim construction-related discovery and briefed their own claim construction positions, all discovery relating to infringement, validity and enforceability could thereafter be coordinated. Rembrandt is also seeking extensive discovery from third parties[3] in the *Comcast* action, and this discovery would be consolidated as well, thereby significantly reducing the burden on non-parties. It is difficult to think of facts whereby consolidation could lead to more efficiencies than the facts presented here, where the identical patents are asserted in different actions against the same industry standards, such that the patentee is not relying on any differences between the operations of the different defendants.

Just as importantly, consolidation will avoid the prejudice to TWC and Charter that would result if the Court proceeds with a separate *Markman* hearing in the *Comcast* case in the first instance. TWC and Charter have not had the opportunity to take discovery on claim construction issues or to brief their own positions on those issues. As this Court recognized in its Order of February 8, 2007, "there is a likelihood" that the claim construction proceedings in the *Comcast* action "could, as a practical matter, prejudice Time Warner in subsequent proceedings" and that a finding of infringement in the *Comcast* case "would have a significant practical effect on Time Warner" (as well as on Charter). Defendants Charter and TWC are simply requesting an opportunity to meaningfully participate in proceedings critical to Rembrandt's actions against them. It is

---

[3] The vendors that have received third party discovery requests from Rembrandt include: Cisco, Scientific-Atlanta, Motorola, Arris, Thompson, Terayon and a number of other DOCSIS-compliant equipment suppliers. Each of these vendors sells to several, if not all, of the defendants.

respectfully suggested that absent undue delay, it is preferable for the Court to hear from all of the defendants on claim construction, and to then issue one claim construction order which accounts for positions taken by all of the implicated defendants.

Thus, while Rembrandt has informed the defendants that it is not presently prepared to consent to consolidation, any disadvantage to Rembrandt from continuing proceedings in the Comcast action until Charter and TWC complete their pre-*Markman* hearing activities (e.g. claim construction discovery, exchange of claim construction positions, claim construction briefing, etc.) is far outweighed by (i) the prejudice to TWC and Charter if consolidation is denied; and (ii) the efficiencies afforded by consolidated discovery and a single *Markman* hearing.

## **CONCLUSION**

For all of these reasons, this motion to consolidate should be granted. Thereafter, in order to expedite the consolidated proceedings, movants respectfully request that a Case Management Conference be scheduled in the consolidated action at the Court's earliest convenience.

Dated: March 2, 2007

Respectfully submitted,

/s/ Diane V. DeVasto
Michael E. Jones
Texas State Bar No. 10929400
mikejones@potterminton.com
Diane V. DeVasto
Texas State Bar No. 05784100
dianedevasto@potterminton.com
POTTER MINTON, P.C.
110 North College
500 Plaza Tower
Tyler, Texas 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

**ATTORNEYS FOR CHARTER
COMMUNICATIONS, INC., LLP,
CHARTER COMMUNICATIONS
OPERATING, LLC, COXCOM, INC.,
AND TIME WARNER CABLE INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 2, 2007. Any other counsel of record will be served by first class on this same date.

/s/ Diane V. DeVasto

## CERTIFICATE OF CONFERENCE

The undersigned certifies that Plaintiff is opposed to this Motion.

/s/ Diane V. DeVasto

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:06 CV 223 [TJW] |
| | § | |
| CHARTER COMMUNICATIONS, INC., | § | |
| CHARTER COMMUNICATIONS OPERATING, | § | |
| LLC, COX COMMUNICATIONS, INC., | § | |
| COXCOM, INC., COX ENTERPRISES, INC., | § | |
| CSC HOLDINGS, INC., and CABLEVISION | § | |
| SYSTEMS CORPORATION, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| REMBRANDT TECHNOLOGIES, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2:06 CV 224 [TJW] |
| | § | |
| TIME WARNER CABLE INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**ORDER GRANTING MOTION TO CONSOLIDATE CASES
FOR PRETRIAL PROCEEDINGS**

Pursuant to FED. R. CIV. P. 42(a), Defendants moved to consolidate Cause Nos. 2:06-cv-223

and 2:06-CV-224. Having considered the matter, the Court GRANTS the motion.

It is ORDERED that the action styled *Rembrandt Technologies, LP v. Time Warner Cable,

Inc.*, Cause No. 2:06-cv-224 (TJW) E.D. Tex. is hereby consolidated in *Rembrandt Technologies, LP

v. Charter Communications, Inc., et al.*, Cause No. 2:06-cv-223 (TJW) E.D. Tex. for all pretrial

proceedings.

✎ AO 456 (Rev. 5/85)  Notice

# UNITED STATES DISTRICT COURT

_____EASTERN_____ DISTRICT OF _____TEXAS_____

REMBRANDT TECHNOLOGIES, LP
V.
TIME WARNER CABLE INC.

**NOTICE**

CASE NUMBER:   2:06-CV-224(TJW)

TYPE OF CASE:

X   **CIVIL**            **CRIMINAL**

X  **TAKE NOTICE** that a proceeding in this case has been set for the place, date, and time set forth below:

| PLACE<br>United States District Court<br>100 E. Houston Street<br>**MARSHALL, TX 75670** | ROOM NO.<br>Judge T. John Ward's Courtroom |
| | DATE AND TIME<br>**April 3, 2007 @ 2:30 p.m.** |

TYPE OF PROCEEDING

**SCHEDULING  CONFERENCE**

    **TAKE NOTICE** that a proceeding in this case has been continued as indicated below:

| PLACE | DATE AND TIME PREVIOUSLY<br>SCHEDULED | CONTINUED TO DATE<br>AND TIME |
| --- | --- | --- |
| | | |

David J. Maland
US MAGISTRATE JUDGE OR CLERK OF COURT

March 8, 2007
DATE

Sonja H. Dupree
(BY) DEPUTY CLERK

TO:      ALL COUNSEL OF RECORD

__

**ACKNOWLEDGMENT**

   **NOTICE TO COUNSEL:**  Please sign in the space provided below and return to the court by facsimile, **(903) 935-2295**, within three (3) days of your receipt of the enclosed notice.

_____


   **I acknowledge receipt of the indicated notice on the date shown below.**



Case No. _____

Signature of Atty._____
                                                            Date
Print Name of Atty._____

Counsel for _____
            (Name of Party)


Type of Proceeding: _____
                    (e.g., Scheduling Conference)

Date of Proceeding: _____

Time of Proceeding: _____

Location of Proceeding: _____